UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL T. FLYNN,

      Plaintiff,

v.                                Case No. 8:23-cv-00485-MSS-CPT

UNITED STATES OF AMERICA,

      Defendant.

_____/

**DEFENDANT UNITED STATES OF AMERICA'S MOTION TO
TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)
AND SUPPORTING MEMORANDUM**

Defendant United States of America, by and through the undersigned counsel, and pursuant to 28 U.S.C. § 1404(a), respectfully moves to transfer this action to the United States District Court for the District of Columbia ("DDC") because ten of the eleven key non-party witnesses identified or alluded to in the Complaint are located within the subpoena power of the DDC, all of the acts and omissions that form the basis of Plaintiff's claims occurred within the DDC, and District of Columbia law applies to Plaintiff's claims. By contrast, the only connection this action has to this District is that Plaintiff moved to this District after all of the alleged acts and omissions occurred.

**BACKGROUND**

On March 3, 2023, Plaintiff filed the instant action in the United States District Court for the Middle District of Florida ("MDFL") asserting claims for

abuse of process and malicious prosecution against the United States pursuant to the Federal Tort Claims Act ("FTCA").  ECF No. 1.  The gravamen of Plaintiff's complaint is that agents or agencies of the United States, including the Department of Justice ("DOJ"), the Federal Bureau of Investigation ("FBI"), the Special Counsel's Office under Special Counsel Robert S. Mueller III ("SCO"), and the Executive Office of the President ("EOP") in prior administrations, improperly opened an investigation of Plaintiff, conducted an interview of Plaintiff after that investigation should have been closed, and caused criminal charges to be brought against him.  *Id.* ¶ 3.

More specifically, the Complaint alleges that, on or about August 16, 2016, the FBI opened an investigation into Plaintiff, who was serving as an advisor to the presidential campaign of Donald Trump (the "Trump Campaign") at the time, without a proper factual predicate and based upon political bias against Donald Trump.  *Id.* ¶¶ 54-55.  Plaintiff further alleges that the FBI improperly kept the investigation open upon learning about communications between Plaintiff and then-Russian Ambassador Sergey Kislyak following the 2016 election.  *Id.* ¶¶ 59-61.  According to the Complaint, on January 24, 2017, when Plaintiff was serving as the National Security Advisor in the Trump Administration, two FBI special agents interviewed Plaintiff at his office in the White House, without advising him that his statements could be used in a criminal prosecution and without showing him the transcripts of the communications between him and the Russian Ambassador, in an attempt to trap Plaintiff into making a misstatement or omission that they could use

as the basis to have him charged with making a false statement.  *Id.* ¶¶ 67, 94, 95, 100.

In November 2017, SCO filed a criminal information in the DDC charging Plaintiff with one count of making false statements in violation of 18 U.S.C. § 1001(a)(2) during the January 24, 2017 interview.  *Id.* ¶¶ 108, 110; *see also* Criminal Information, *United States of America v. Flynn*, No. 1:17-cr-00232-EGS (D.D.C. Nov. 30, 2017) (the "Criminal Case"), ECF No. 1.  Although Plaintiff initially pled guilty to the Criminal Information, he subsequently moved to withdraw his plea and Plaintiff and the government separately moved to dismiss the Criminal Case.  *See* Criminal Case, ECF Nos. 3-4, 151, 162, 198.  Before those motions were resolved, President Trump granted a pardon.  Plaintiff accepted the pardon and, as a result, the pending motions and the Criminal Case were dismissed as moot on December 8, 2020.  *See* Criminal Case, ECF Nos. 308, 310.

Plaintiff alleges in the instant action that SCO initiated the prosecution against him "despite knowing [Plaintiff] had not made false statements [during the January 24, 2017 interview], that even if he did make false statements, they were unintentional and were not material to the [FBI's] investigation" and thus SCO allegedly "had no reasonable belief that [Plaintiff] had committed the criminal offense and therefore had no probable cause to bring [the Criminal Information]" in the DDC.  ECF No. 1 ¶ 111.  Plaintiff further alleges that SCO willfully failed to disclose exculpatory evidence and threatened Plaintiff's son with prosecution unless Plaintiff pled guilty to a violation of 18 U.S.C. § 1001.  *Id.* ¶¶ 121, 126.

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of Section 1404(a) "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quotation omitted). "The decision to transfer a case to another district is left to the sound discretion of the trial court." *Brown v. Connecticut Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991).

"Section 1404(a) is intended to provide for 'individualized, case-by-case consideration of convenience and fairness.'" *LLW Enter., LLC v. Ryan*, No. 8:19-cv-01641-MSS-AAS, 2020 WL 2630859, at *15 (M.D. Fla. May 4, 2020) (quoting *Van Dusen*, 376 U.S. at 622). "The movant has the burden of persuading the trial court that transfer is appropriate and should be granted." *Id.* (quotation omitted). Although "[t]he plaintiff's choice of forum should not be disturbed unless the movant can show that it is clearly outweighed by other considerations[,] . . . [t]he plaintiff's choice . . . is accorded less weight where the choice of forum lacks any significant connection to the underlying claim." *Sec. & Exch. Comm'n v. Lefkowitz*, No. 8:12-cv-01210-MSS-MAP, 2013 WL 12170295, at *3 (M.D. Fla. Sept. 17, 2013) (citations omitted).

## ARGUMENT

In determining whether to transfer a case pursuant to Section 1404(a), the Court makes a two-pronged inquiry.  *See LLW Enter., LLC*, 2020 WL 2630859, at *15; *Lefkowitz*, 2013 WL 12170295, at *3.  "First, the Court must find that the alternative venue is one in which the Plaintiffs could have originally brought the action."  *LLW Enter., LLC*, 2020 WL 2630859, at *15.  "Second, the court must determine . . . that transfer serves the interests of justice and significantly impacts the balance of convenience for the parties and witnesses."  *Id.*  The United States addresses each in turn.

### I.   Transfer to the DDC Is Appropriate Because the Action Could Originally Have Been Brought in That District

Both of Plaintiff's claims in the instant action are brought under the FTCA. ECF No. 1, at 47, 49.  Pursuant to 28 U.S.C. § 1402(b), "[a]ny civil action on a tort claim against the United States under [the FTCA] may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred."  Plaintiff's action thus could have been brought either in this district, where he resides,[1] or in the DDC, where the acts and omissions complained of occurred.

---

[1] For purposes of the instant Motion, the United States does not challenge Plaintiff's allegation that he resides "within this judicial district."  ECF No. 1 ¶ 4.

All of the alleged acts and omissions that form the basis of Plaintiff's claims occurred in the DDC. The FBI's investigation of Plaintiff was conducted out of the FBI headquarters in the DDC and the Washington, D.C. field office. *See, e.g.*, ECF No. 1 ¶¶ 12, 15-19; ECF No. 1-6 at 2. The FBI's interview of Plaintiff on January 24, 2017, was conducted in Plaintiff's office at the White House in the DDC. ECF No. 1 ¶ 94. Attorneys working for SCO, which was headquartered in the DDC, and attorneys in the United States Attorney's Office for the DDC prosecuted the Criminal Case against Plaintiff in the DDC.[2] ECF No. 1 ¶¶ 13, 21, 108, 110, 127; *see also* Criminal Case Dkt.

Accordingly, all of the acts and omissions that form the basis of Plaintiff's claims allegedly occurred within the DDC, and thus, Plaintiff originally could have brought the action in the DDC. 28 U.S.C. § 1402(b).

## II.   Transfer to the DDC Serves the Interests of Justice and the Convenience of the Parties and Witnesses

In determining whether the requested transfer serves the interests of justice and the balance of convenience for the parties and witnesses, courts generally consider the following nine factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and

---

[2] Plaintiff's Complaint also identifies the DOJ, headquartered in the DDC, and the Executive Office of the President, headquartered in the DDC, as alleged "wrongdoers on behalf of the United States." ECF No. 1, at 5.

(9) trial efficiency and the interests of justice, based on the totality of the
circumstances.

*LLW Enter., LLC*, 2020 WL 2630859, at \*15 (citing *Manuel v. Convergys Corp.*, 430

F.3d 1132, 1135 n.1 (11th Cir. 2005)).  "No single factor is dispositive."  *Wi-Lan*

*USA, Inc. v. Apple, Inc.*, No. 12-cv-24318, 2013 WL 1343535, \*2 (S.D. Fla. April 2,

2013).  As discussed below, the balance of these factors overwhelmingly supports

transfer.

### A.   The Availability of Process to Compel the Attendance of Witnesses and the Convenience of the Witnesses Weigh Heavily in Favor of Transfer to the DDC

The availability of process to compel the attendance of key witnesses and the

convenience of the key witnesses both weigh heavily in favor of transfer.[3]  Based

upon Plaintiff's own allegations, if this matter survived a motion to dismiss, there

would appear to be eleven key non-party witnesses in this matter.  All but one of

these non-party witnesses are located within the subpoena power of the DDC and

none are within the subpoena power of the MDFL.

Plaintiff's Complaint identifies seven individuals as alleged "wrongdoers on

behalf of the United States," and the allegations expressly name or allude to seven

additional individuals—all who potentially may be key witnesses if the case proceeds

---

[3] "When considering the availability and convenience of witnesses, the court
focuses on the convenience of key witnesses and not the litany of possible witnesses
located in various districts."  *Lefkowitz*, 2013 WL 12170295, at \*4.

to discovery.[4]  Eleven of those fourteen key witnesses—including six of the seven alleged "wrongdoers"—are non-party witnesses, *i.e.*, witnesses who are neither a named party nor a current employee of a named party.[5]  Defendant focuses its analysis of the availability of process and convenience of the witnesses factors on these eleven non-party witnesses, because the convenience to party witnesses is less significant and their attendance likely can be obtained regardless of the availability of

---

[4] The individuals alleged to be "wrongdoers on behalf of the United States" in the Complaint include:  (1) James Comey, the former Director of the FBI, (2) Andrew McCabe, the former Deputy Director of the FBI, (3) Peter Strzok, a former FBI Special Agent, (4) Lisa Page, a former FBI attorney, (5) Joe Pientka, III, an FBI Special Agent during the relevant period, (6) Robert S. Mueller, III, the former Special Counsel, and (7) Brandon Van Grack, a former Senior Assistant Counsel in the SCO.  *See* ECF No. 1 ¶¶ 15-21.  The Complaint identifies three additional individuals by name:  (1) Plaintiff, (2) E. W. ("Bill") Priestap, a former Assistant Deputy Director at the FBI who allegedly was involved in the investigation of Plaintiff, *id.* ¶¶ 29, 89, and (3) Timothy Shea, the former United States Attorney for the DDC who filed the motion to dismiss the Criminal Case against Plaintiff, *id.* ¶¶ 1, 127.  In addition, if Plaintiff's claims survive a motion to dismiss, it appears that the following four attorneys who were involved in the Criminal Case at the time the charges were filed and Plaintiff entered a guilty plea may have relevant information:  (1) Robert Kelner, defense counsel for Plaintiff, (2) Stephen Anthony, defense counsel for Plaintiff, (3) Zainab Naeem Ahmad, a former Senior Assistant Counsel in the SCO, and (4) Jocelyn S. Ballantine, an Assistant United States Attorney in the DDC.  *See* Criminal Case Docket.

[5] The eleven non-party witnesses include:  Mr. Comey, Mr. McCabe, Mr. Strzok, Ms. Page, Mr. Mueller, Mr. Van Grack, Mr. Priestap, Mr. Shea, Mr. Kelner, Mr. Anthony, and Ms. Ahmad.  Because, as former employees, the United States does not have the ability to make the witnesses available to testify at deposition or trial, the United States identifies former employees of the United States as non-party witnesses for purposes of the instant Motion.  *See Botha v. Sony Music Ent.*, No. 818CV01145T33JSS, 2018 WL 7252938, at *3 (M.D. Fla. July 30, 2018) (finding that ability to compel witnesses and convenience factors favored transfer where "potential non-party witnesses (including former employees of the Moving Defendants) are . . . most likely to be found in and around [the transferee district]").

process.[6] *See Kitzel v. Tunnell Gov't Servs. Inc.*, No. 8:22-CV-2733-VMC-AAS, 2023 WL 2330669, at *6 (M.D. Fla. Mar. 2, 2023) ("The critical determination . . . is the convenience of the forum to key non-party witnesses on a defendant's liability" (quotation omitted)); *Poertner v. Gillette Co.*, No. 612CV803ORL31DAB, 2012 WL 12898875, at *3 (M.D. Fla. July 9, 2012) ("[I]t is not so much the convenience of the witnesses but the possibility of having their testimony at trial that is important." (quotation omitted)).

Federal Rule of Civil Procedure 45(c)(1) provides, in relevant part, that "a subpoena may command a person to attend a trial, hearing, or deposition only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed or regularly transacts business in person . . . ." Upon information and

---

[6] To the extent the Court finds that "[t]he convenience of both the party and non-party witnesses [should be] considered," *Steinberg v. Luedtke Trucking, Inc.*, No. 2:16-cv-00452-SPC-MRM, 2017 WL 11482172, at *2 (M.D. Fla. Feb. 8, 2017) (quoting *Ford v. United States*, No. 13-80273-CIV, 2013 WL 6046008, at *2 (S.D. Fla. Nov. 14, 2013)), the convenience of the witnesses factor still weighs heavily in favor of transfer as eleven of the fourteen key witnesses and all of the current representatives of the agencies named in the Complaint are located in close proximity to the DDC, whereas only Plaintiff is located in the MDFL. *See, e.g., Sessions v. Atl. Recording Corp.*, No. 6:10-cv-01568-JA-GJK, 2011 WL 3754601, at *4 (M.D. Fla. Aug. 11, 2011) (finding convenience factor to "strongly favor" transfer where defendants identified nineteen potential witnesses who would have to travel from Miami to Orlando for trial and plaintiff was the only witness located in the MDFL), *report and recommendation adopted*, 2011 WL 3809774 (M.D. Fla. Aug. 25, 2011); *Response Reward Sys., L.C. v. Meijer, Inc.*, 189 F. Supp. 2d 1332, 1340 (M.D. Fla. 2002) (finding convenience factor to favor transfer where plaintiff was the only witness located in Florida, whereas the defendant "show[ed] that most, if not all, of its witnesses reside[d] in Michigan, or in states that are in close proximity" thereto).

belief, ten of the eleven key non-party witnesses—including six of the seven individuals Plaintiff identifies in the complaint as alleged "wrongdoers"—are within the subpoena power of the DDC, whereas none of the key non-party witnesses are located within the subpoena power of the MDFL.[7]  Transfer to the DDC thus is essential to ensure that key non-party witnesses—including the individuals alleged of "wrongdoing"—can be compelled to testify if this matter goes to trial and the availability of process factor heavily weighs in favor of transfer.[8]  *See Ford v. United States*, No. 13-80273-CIV, 2013 WL 6046008, at *2 (S.D. Fla. Nov. 14, 2013) (finding availability of process factor to "weigh[ ] strongly in favor of transfer" where only transferee court would be able "to compel the agents who allegedly engaged in the wrongful conduct to testify at trial").

Because ten of the eleven key non-party witnesses are within the subpoena power of the DDC—*i.e.*, live and/or work in close proximity to the DDC, the non-party key witnesses would be significantly less inconvenienced by a trial in the DDC as compared to having to travel approximately one thousand miles to testify at a trial

---

[7] Based upon information and belief after a search of publicly-available information, the ten key non-party witnesses within the subpoena power of the DDC are:  Mr. Comey, Mr. McCabe, Mr. Strzok, Ms. Page, Mr. Mueller, Mr. Van Grack, Mr. Priestap, Mr. Shea, Mr. Kelner, and Mr. Anthony.

[8] Because "live testimony is preferred over other means of presenting evidence," that the parties may be able to "depose witnesses wherever those witnesses may be found . . . is not a fact that weighs against transfer."  *Liberty Nat. Life Ins. Co. v. Suntrust Bank*, No. 2:11-CV-00820-SLB, 2012 WL 3849615, at *8 (N.D. Ala. Sept. 5, 2012) (quotation omitted).

in the MDFL.[9]  *See, e.g.*, *Pferdmenges v. Bindra*, No. 12-CV-22681-KMM, 2012 WL 12867831, at *3 (S.D. Fla. Nov. 20, 2012) (finding convenience of witnesses favored transfer where "the vast majority, if not all, of the non-party witnesses would have to travel over a thousand miles for trial"); *Microspherix LLC v. Biocompatibles, Inc.*, No. 9:11-CV-80813-KMM, 2012 WL 243764, at *3 (S.D. Fla. Jan. 25, 2012) (finding that, even though plaintiff agreed to depose witnesses in their home state, "they would still have to travel nearly 1300 miles for trial"); *Carroll v. Texas Instruments, Inc.*, 910 F. Supp. 2d 1331, 1336 (M.D. Ala. 2012) (finding that non-party witnesses that were "almost 800 miles away" from the proposed transferee court "would almost certainly [be] require[d] . . . to fly and most likely stay over night even for a one-day trip").  The convenience of the parties, which is "[t]he most important factor in passing on a motion to transfer under [Section] 1404(a)," thus weighs heavily in favor of transfer here.  *Kitzel*, 2023 WL 2330669, at *6 (quotation omitted).

### B.   The Locus of Operative Facts, Forum's Familiarity with the Governing Law, and Location of Sources of Proof All Weigh in Favor of Transfer

As discussed in more detail above, all of the operative facts regarding Plaintiff's claims took place in the DDC, where the investigation and prosecution of

---

[9] Upon information and belief, the eleventh key non-party witness, Ms. Ahmad, is located in the New York metropolitan area and thus also likely would be significantly less inconvenienced by a trial in the DDC as compared to the MDFL.

Plaintiff were conducted.  None of the operative facts took place in the MDFL.[10] The locus of operative facts factor thus weighs heavily in favor of transfer to the DDC.  *See, e.g., Ford*, 2013 WL 6046008, at *3 (finding in FTCA case that "[t]he locus of operative facts weighs heavily in favor of transfer because the incident occurred in [the transferee district]"); *U.S. ex rel. Elder v. DRS Techs., Inc.*, No. 2:11-CV-02097-RDP, 2013 WL 3151171, at *5 (N.D. Ala. June 14, 2013) (finding that locus of operative facts "weigh[ed] heavily in favor of a transfer because Plaintiff's chosen forum [was] unrelated to the conduct that forms the basis of the allegations in th[e] action" except that plaintiff lived there (quotation omitted)); *Adkins v. United States*, No. 8:05-CV-1851-T-24, 2006 WL 398400, at *2 (M.D. Fla. Feb. 16, 2006) (finding support for transfer where "besides the fact that Plaintiff resides in Florida, the Middle District of Florida has no connection to th[e] case, since all of the actions complained of occurred in Alaska").

The locus of operative facts also determines the governing law, because the FTCA "requires that the 'whole law of the State where the act or omission occurred[,]' including its choice of law rules, be applied."  *Gonzalez-Jiminez De Ruiz v.*

---

[10] Indeed, upon information and belief, Plaintiff did not relocate to the MDFL until April 2021—several months after the criminal prosecution that forms the basis of his claims was dismissed as moot.  Accordingly, the instant action "has almost no . . . connection to [Florida], except for [Plaintiff's] decisions to move here . . . and to file suit here."  *AFC Enterprises, Inc. v. Diversified Foods & Seasonings, Inc.*, No. 1:09-CV-0416-WSD, 2009 WL 10679989, at *5 (N.D. Ga. May 7, 2009); *see also Carucel Invs., L.P. v. Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219, 1226 (S.D. Fla. 2016) (according little weight to plaintiff's presence in Florida, because "[a]lthough Plaintiff itself ha[d] ties to Florida, they [were] of a recent vintage").

*United States*, 378 F.3d 1229, 1230 n.1 (11th Cir. 2004) (quoting *Richards v. United States*, 369 U.S. 1, 11 (1962)); *see also* 28 U.S.C. § 1346(b).  The law of the District of Columbia thus governs Plaintiff's claims.  Although this Court is often called upon to apply the law of other jurisdictions and clearly is able to do so, because the federal judges in the DDC have more familiarity with District of Columbia law, this factor weighs in favor of transfer.[11]  *See Healthe, Inc. v. High Energy Ozone LLC*, 533 F. Supp. 3d 1120, 1127 (M.D. Fla. 2021) (finding that familiarity factor weighed in favor of venue in MDFL, because "this Court is far more familiar with . . . Florida common law than a court sitting in New Hampshire"); *Ford*, 2013 WL 6046008, at *3 (finding in FTCA case that "[a]ssuming New York negligence law applies, this fact slightly favor[ed] transfer" to a New York district court).

Because the FBI investigation and criminal prosecution that form the basis of Plaintiff's claims took place in the District of Columbia, the vast majority, if not all, of the original documents and sources of proof related to Plaintiff's claims are located in the DDC.  This factor thus also slightly weighs in favor of transfer.[12]  *See,*

---

[11] In addressing the Section 1404(a) factors, Plaintiff recently argued in unrelated litigation that, although federal courts are capable of applying the law of other jurisdictions, "it would be best to have a Florida court determining Florida law."  *See Flynn v. Stern*, No. 8:22-cv-01250-TPB-AAS, ECF No. 28, at 18 (M.D. Fla. Sept. 28, 2023).  Applying that reasoning to the facts here, it would seem that the DDC should determine DC law.

[12] The United States acknowledges that "this factor is usually insignificant, as [m]odern technology largely neutralizes traditional obstacles to providing relevant documents and access to proof," and thus only slightly weighs in favor of transfer.  *PainTEQ, LLC v. Omnia Med., LLC*, No. 8:20-CV-2805-VMC-AAS, 2021 WL 1193259, at *8 (M.D. Fla. Mar. 30, 2021); *see also Lefkowitz*, 2013 WL 12170295, at

*e.g.*, *Ford*, 2013 WL 6046008, at *3 (finding source of proof factor to favor transfer, "because any paperwork generated pursuant to the detention and confiscation [of the plaintiff] is presumably with the government offices in New York"); *DRS Techs., Inc.*, 2013 WL 3151171, at *4 ("[T]hat access to some sources of proof presents a lesser inconvenience now that it might have absent recent developments does not render this factor superfluous." (quotation omitted)).

## C.   The Interests of Justice Weigh in Favor of Transfer

In determining whether transfer would be in the interest of justice, the Court "evaluat[es]:  (1) a court's interest in applying the laws of its own state; (2) the local community's interest in hearing localized controversies; (3) the burden of jury duty on people of the community; and (4) the congestion of the courts' respective dockets."[13]  *Odem v. Centex Homes, Inc.*, No. 8:08-CV-166-T-27MAP, 2008 WL 11427941, at *3 (M.D. Fla. July 8, 2008).  Here, the interests of justice would be served by transferring this matter to the DDC, because, as explained above, all of the acts and omissions underlying Plaintiff's claims occurred in the DDC, ten of the eleven key non-party witnesses are located within the subpoena power of the DDC, and District of Columbia law governs Plaintiff's claims.  *See, e.g.*, Charles Alan

---

*4 ("In the modern world of computerization and electronic transfer of information, courts have generally found that this factor alone does not warrant transfer of the case.").

[13] The third factor—the burden of jury duty—is irrelevant here as Plaintiff's FTCA claims "shall be tried by the court without a jury."  28 U.S.C. § 2402.

Wright & Arthur R. Miller, 15 Fed. Prac. & Proc. Juris. § 3854 (4th ed.) ("[T]he administration of justice is better served when the action is litigated in the forum that encompasses the locus of operative facts and thus may have a particular interest in the proper resolution of the dispute."); *Ford*, 2013 WL 6046008, at *4 (finding that interests of justice factor "weighs slightly in favor of transfer because the majority of the witnesses are located in the [transferee district] and holding trial there will be more efficient").

Transfer to the DDC at this early stage of the case would not result in a duplication of efforts between courts or result in unnecessary delay.  Nor does the congestion of the courts' respective dockets counsel against transfer.  To the contrary, according to the Federal Court Management Statistics for the period ending December 31, 2022,[14] the docket of each judge within the MDFL appears more congested than that of their colleagues in the DDC,[15] as follows:

---

[14] The Federal Court Management Statistics Reports are available on the U.S. Courts website, available at https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-december-2022.

[15]  The United States acknowledges, however, that "[t]hese statistics are not perfect indicators of court congestion as they may be influenced by additional factors" and "[d]epending on which metric a Court chooses to assess relative congestion, the weighing of this factor [may] point[ ] in different directions." *Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 337 (D.D.C. 2020).  For example, according to the Statistics Reports, despite the MDFL's seemingly more congested docket, the median time from filing to trial in civil cases is shorter in the MDFL compared to the DDC.  To the extent the Court finds the congestion of the courts' dockets to be neutral, the interests of justice factor still weighs in favor of transfer given the DDC's superior connection to Plaintiff's claims.

15

|  | MDFL | DDC |
|---|---|---|
| Total Filings per Judgeship | 674 | 298 |
| Total Civil Filings per Judgeship | 574 | 262 |
| Total Weighted Filings per Judgeship | 602 | 282 |
| Total Pending Cases per Judgeship | 543 | 401 |

The interests of justice factor thus weighs in favor of transferring this matter to the DDC.

### D. The Convenience of the Parties Factor Weighs in Favor of Transfer and the Relative Means Factor is Neutral

Litigation of the instant matter in the DDC would be more convenient for Defendant than litigating in the MDFL. Eleven of the fourteen key witnesses and all of the current representatives of the agencies named by Plaintiff in the Complaint as "wrongdoers" are located in, or near, the DDC. In addition to ensuring the parties' ability to compel key witnesses to testify at trial, litigation of Plaintiff's claims in the DDC thus would be significantly more convenient, more efficient, and less expensive for the United States than litigation in the MDFL.

With regard to Plaintiff, it is not entirely clear that the MDFL is the most convenient forum. Although the United States accepts Plaintiff's representation that he is currently a citizen of Florida, ECF No. 1 ¶ 9, upon information and belief, Plaintiff also maintains a residence in Rhode Island and regularly travels the country.[16] It thus appears that Plaintiff is regularly absent from the MDFL such that

---

[16] *See* Michelle R. Smith, Michael Flynn: From government insider to holy warrior, AP News, Sept. 7, 2022, https://apnews.com/article/michael-flynn-christian-nationalism-investigation-50fa5dcff7f99cf93409fcd6c1357bee (noting that "[t]hroughout 2021 and 2022, [Plaintiff] made more than 60 in-person speeches in 24 states").

venue in the DDC may not be significantly less convenient to Plaintiff than venue in the MDFL.[17]  *See, e.g., Amburn v. Specialized Bicycle Components, Inc.*, No. 1:08-CV-0761-BBM, 2008 WL 11417285, at *2 (N.D. Ga. Sept. 29, 2008) (finding neither district more convenient for plaintiff with multiple residences, because "[t]here is no way of predicting when it will be necessary, if ever, for [the plaintiff] to travel to the courthouse for trial"); *Clark v. DocuSign, Inc.*, No. 21-CV-1007 (DLF), 2022 WL 16985185, at *4 (D.D.C. Nov. 15, 2022) (rejecting plaintiff's argument that he would be inconvenienced by the need to travel to the transferee court because he "frequently" traveled there for work).

The convenience of the parties factor thus appears to weigh in favor of transfer to the DDC.[18]  Although litigation of this matter in the MDFL likely would be more

---

[17] Although the convenience of the parties' counsel is not relevant to the determination of transfer, courts have considered the inconvenience and additional cost that a party may incur if they are required to obtain new counsel as a result of the proposed transfer.  *See Morgan v. Cap. All. Grp.*, No. 618CV1746ORL40TBS, 2018 WL 11466957, at *5 (M.D. Fla. Dec. 26, 2018) ("The convenience or location of counsel is not a factor to be considered under § 1404(a), except to the extent a transfer will financially burden one of the parties who must obtain new counsel in the transferee forum when its existing counsel litigated the original matter." (quotation omitted)).  Given that Plaintiff's counsel are both based in the District of Columbia metropolitan area, Plaintiff will not incur additional cost or be inconvenienced to obtain new counsel in the DDC.

[18] To the extent Plaintiff is able to demonstrate that litigation in the MDFL is more convenient for him than litigation in the DDC, this factor is, at most, neutral, and would not tip the balance in favor of keeping the action in the MDFL.  *See Frybarger v. Salemme*, No. 22-61437-CIV, 2022 WL 18530012, at *11 (S.D. Fla. Dec. 28, 2022) (finding that "[i]n general, the convenience of the parties factor is neutral where a transfer would merely shift the inconvenience from one party to another" (quotation omitted)).

expensive and less efficient than litigation in the DDC for both Plaintiff and

Defendant, the relative means of the parties factor is neutral because both parties

appear to have sufficient means to incur these costs.[19]

### E.    Plaintiff's Choice of Forum Is Outweighed by Other Considerations

"[W]here the operative facts underlying the cause of action did not occur

within the forum chosen by the Plaintiff, the choice of forum is entitled to less

consideration." *Lefkowitz*, 2013 WL 12170295, at *6 (quotation omitted).  "This is

especially true where an action is connected to a plaintiff's home forum solely by

way of the plaintiff's relocation there after the bulk of the operative facts occurred

elsewhere." *Seal Shield, LLC v. Otter Prod., LLC*, No. 6:13-cv-00967-RBD-DAB, 2013

WL 6017330, at *3 (M.D. Fla. Nov. 13, 2013).  As explained above, all of the

relevant acts and omissions alleged in the Complaint occurred in the DDC and, upon

information and belief, Plaintiff did not move to the MDFL until several months

after the underlying criminal prosecution in the DDC had been dismissed as moot.

Plaintiff thus "is unable to point to any facts, events, witnesses, or anything else in

this case which has any connection to the [MDFL] other than [his] residence."

*Austin v. Invs. Title Ins. Co.*, No. 5:08-CV-484-OC-10GRJ, 2009 WL 10670798, at *4

(M.D. Fla. June 24, 2009).  "As such, the importance of Plaintiff's choice of forum is

---

[19] In unrelated litigation in this District, Plaintiff recently acknowledged that, if that litigation were transferred from the MDFL to the Eastern District of Pennsylvania, he would "ha[ve] the means to travel, if necessary."  *See Flynn v. Stern*, No. 8:22-cv-01250-TPB-AAS, ECF No. 28 at 16 (M.D. Fla. Sept. 28, 2023).

not a compelling factor in deciding whether venue should be transferred." *Id.*

The choice of venue factor thus is neutral or, at most, slightly weighs against transfer. *See, e.g.*, *Rodriguez v. Miami Dade Cnty.*, No. 8:15-cv-01621-AAS, 2016 WL 11589780, at *3 (M.D. Fla. Mar. 10, 2016) (finding plaintiff's choice of venue "neutral" where "the operative facts primarily occurred in the [transferee district]"); *Ford*, 2013 WL 6046008, at *4 (same); *Fike v. JetBlue Airways Corp.*, No. 2:13-CV-706-FTM-38, 2014 WL 582877, at *4 (M.D. Fla. Feb. 13, 2014) (same); *Clark v. Crews*, No. 8:13-cv-02642-JSM-MAP, 2014 WL 667825, at *3 (M.D. Fla. Feb. 20, 2014) (finding plaintiff's choice of venue "mostly neutral"); *NP 301, LLC v. Liberty Mut. Ins. Co.*, No. 1:20-CV-02298-LMM, 2020 WL 10622591, at *7 (N.D. Ga. Aug. 7, 2020) (finding that plaintiff's choice of venue "weigh[ed] only slightly against transfer" where plaintiff resided in chosen forum but none of the conduct at issue occurred in the forum selected).

## F.    Summary of Factors

Because all of the acts and omissions underlying Plaintiff's claims occurred in the District of Columbia and ten of the eleven key non-party witnesses are located within the subpoena power of the District of Columbia, the availability of process to compel witnesses, the convenience of the witnesses, the locus of operative facts, the forum's familiarity with the governing law, the location of sources of proof, and the interests of justice factors all weigh in favor of transfer to the DDC.  Given the relative means of the parties factor is neutral and, upon information and belief, Plaintiff is often absent from the MDFL, the convenience of the parties factor also

favors transfer.  The only factor that possibly weighs against transfer is Plaintiff's choice of venue, but that factor is entitled to less consideration in this case given that none of the acts or omissions giving rise to Plaintiff's claims occurred in the MDFL and Plaintiff did not even move to the MDFL until after the operative facts had occurred.  If, under these circumstances, "the initial selection of the forum was the deciding factor in the Court's consideration[,] . . . courts would never need to take into account the other interests and factors necessary to an informed decision regarding whether an action should be transferred." *Austin*, 2009 WL 10670798, at *4.  The United States thus respectfully submits that the Plaintiff's choice of forum is clearly outweighed by the other equitable factors the Court must consider and this action should be transferred to the DDC.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests an Order transferring this case to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1404(a).

## LOCAL RULE 3.01(g) CERTIFICATION

On May 1, 2023, undersigned counsel conferred by telephone with counsel for Plaintiff, and counsel advised that Plaintiff opposes the relief sought herein.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JAMES G. TOUHEY, JR.
Director, Torts Branch

By: /s/Herman J. Hoying
HERMAN J. HOYING
KRISTIN B. MCGRORY (Lead Counsel)
Trial Attorneys
U.S. Department of Justice
Civil Division, Torts Branch
P.O. Box 888 Ben Franklin Station
Washington, DC 20044
Phone: 202-880-0141
Email: Herman.J.Hoying@usdoj.gov
Attorneys for Defendant United States of
America


LACY R. HARWELL, JR.
Assistant United States Attorney
Florida Bar No. 0714623
Office of the United States Attorney
For the Middle District of Florida
400 N. Tampa St., Suite 3200
Tampa, Florida 33602
Tel. (813) 274-6000
Fax (813) 274-6200
Email: Randy.Harwell@usdoj.gov
Attorney for Defendant United States of
America

21

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 1, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic notice of filing to all parties of record.

/s/Herman J. Hoying
Herman J. Hoying
Trial Attorney
Attorney for Defendant United States of
America