# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### Tampa Division

| | |
|---|---|
| MICHAEL T. FLYNN, | ) |
| | ) |
|      Plaintiff, | ) |
| | ) |
| v. | )   No. 8:23-cv-00485 (MSS/CPT) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|      Defendant. | ) |
| | ) |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION TO TRANSFER VENUE

BINNALL LAW GROUP, PLLC
Jason C. Greaves (admitted *pro hac vice*)
Matt M. Dummermuth (admitted *pro hac vice*)
Jared J. Roberts (Fl. Bar No. 1036550)
Shawn M. Flynn (Fl. Bar No. 1040911)
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone:  (703) 888-1943
Fax:      (703) 888-1930
Email:  jason@binnall.com
          matt@binnall.com
          jared@binnall.com
          shawn@binnall.com

*Counsel to Plaintiff Michael T. Flynn*

The federal government's motion to transfer venue is a transparent attempt to forum shop by moving this case to its home turf, the District of Columbia District Court. General Flynn's Complaint explains in detail how the Washington D.C. law enforcement, prosecutorial, and even judicial systems were wrongfully weaponized against him, for political purposes. It is unlikely that the same judicial system can now fairly adjudicate this case.

Indeed, it is not only the doing of justice that matters, but the public appearance that justice is being pursued and protected, if the American people are to have continued faith in our justice system. That cannot happen if this case is adjudicated in Washington, D.C. Moreover, the government has not met its burden to show that a transfer is warranted, let alone *clearly* warranted. The government has the means to fully defend its interests in any judicial district in the country, including ones where there is not a definitive bias against General Flynn.

The majority of the venue transfer factors weigh against transfer to DDC or are neutral. Accordingly, General Flynn respectfully requests that this Court deny Defendant's motion to transfer venue. General Flynn requests oral argument for this motion.

## BACKGROUND

For purposes of this motion, the Government's summary of the background of this case is sufficient, in addition to the Complaint. *See* Gov. Br. at 1-3; *see generally* Dkt. No. 1.

1

## STANDARD OF REVIEW

As Defendant concedes, it carries the burden of establishing that the Court should transfer venue. Dkt. No. 16 at 4. Courts, however, "should be somewhat restrictive in transferring actions." *American Aircraft Sales Intern., Inc. v. Airwarsaw, Inc.*, 55 F. Supp. 2d 1347, 1351 (M.D. Fla. 1999). This is because "plaintiff's choice of forum should not be disturbed unless it is *clearly* outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (emphasis added) (citing *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. 1981)).

"[W]hen a transfer of venue would merely shift the inconvenience from the defendant to the plaintiff, the plaintiff's choice of forum should not be disturbed." *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1328-29 (M.D. Fla. 2010) (citing *Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1361–62 (S.D. Fla. 2001)). Defendant must show that "the balance of convenience is '*strongly in favor*' of the transfer." *American Aircraft Sales Intern., Inc.*, 55 F. Supp. 2d at 1351 (emphasis added). "In the absence of a clear difference in convenience, the plaintiff's choice of forum is determinative." *Id.*

Determining whether to transfer venue is a two-step inquiry. *Nat'l Trust Ins. Co. v. Pennsylvania Nat'l Mutual Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1241 (M.D. Fla. 2016). The first step, determining whether venue is proper in the current district, has already been conceded by Defendant. Dkt. No. 16 at 5. The second, and

operative step in this case, is to consider the convenience of the parties and witnesses and whether transfer serves the interest of justice. *See id*.

**ARGUMENT**

As Defendant admits, the Middle District of Florida is an appropriate venue in this case. Gov. Br. At 5. ("Plaintiff's action thus could have been brought . . . in this district, where he resides[.]"). Accordingly, the first step of this Court's inquiry is satisfied.

Because the Middle District of Florida is General Flynn's choice of venue, it is entitled great deference. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). The Eleventh Circuit cemented the importance of this deference when it held a "plaintiff's choice of forum should not be disturbed unless it is *clearly* outweighed by other considerations." *Robinson*, 74 F.3d at 260 (emphasis added). In addition, General Flynn has "a great interest" in litigating in his home state. *Id*. at 259. *See also Lighting Sci. Grp. Corp. v. Sunoco Lighting, Inc.*, 2016 WL 7406660, at *2 (M.D. Fla. Oct. 20, 2016) (indicating that greater deference is afforded to a plaintiff's choice of forum when the plaintiff is at home).

When considering the second part of the inquiry, the Eleventh Circuit has identified nine factors for courts to consider: "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8)

3

the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). Cumulatively, these factors weigh decisively against transferring venue.

### 1. Convenience of the witnesses does not favor transfer.

Defendant's motion alleges that there are eleven non-party witnesses who acted to harm General Flynn and that these are the only key witnesses. Gov. Br. at 7. Therefore, according to Defendant, this factor weighs in favor of transfer because witnesses would have to travel a great distance to testify, which would be inconvenient. *Id.* at 11. Defendant, however, fails to acknowledge or address that there are many additional key witnesses as this is an incredibly complex case involving a multitude of government actors spanning a multi-year investigation and criminal prosecution. These additional key witnesses are located across the country, including in the MDFL.

"A witness is key if his or her testimony is likely to be significant enough that the witness's presence would be necessary at trial." *Ali v. Hudson Ins. Co.*, 2016 WL 1090018, at *2 (M.D. Fla. Mar. 21, 2016) (citing *Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1361–62 (S.D. Fla. 2001)). While DOJ is correct that persons directly named in General Flynn's Complaint fit this definition, there are many additional witnesses who also fit this definition that, based on public information, may be subject to the MDFL subpoena power, including but not limited to: James Rybicki, Robert Bell, Paul Gehrens, and Jared

Kushner. Further, General Flynn's damages witnesses are mostly located in the MDFL, including Michael G. Flynn, Jr., Lori Flynn, Joseph Flynn, and Mary O'Neill, who can attest not only to his personal damages but also his monetary damages.

In addition, Defendant has failed to even consider or proffer the location of many additional key witnesses that may or may not be within the subpoena power of either court, including but not limited to: William Barnett, Kevin Clinesmith, Christopher Wray, Bruce Ohr, Nellie Ohr, Rod Rosenstein, Sally Yates, Andrew Weissman, William Barr, John Durham, Jeff Jensen, Stephen Halper, Michael Horowitz, Michael Gaeta, John Gleeson, Joseph Mifsud, Carter Page, George Papadopolous, Glenn Simpson, Kashyap Patel, Devin Nunes, John Ratcliffe, and Richard Grenell. In addition to those named above, the entirety of the investigative teams for the Crossfire Hurricane and Crossfire Razor investigation, the Special Counsel's Office under Robert Mueller, U.S. Attorney Jeff Jensen's staff that investigated whether the DOJ should move to dismiss *U.S. v. Flynn*, the House Permanent Select Committee on Intelligence's staff investigating the Russian active measures campaign, and Special Counsel John Durham's staff investigating the initiation and conduct of the Crossfire Hurricane umbrella investigation are relevant, and almost assuredly, as key as the witnesses named by DOJ in its brief.

While Defendant may seek to portray this as a simple case involving only a few witnesses, it is not. As this Court is aware, the Complaint is required to plausibly state a claim for relief, not summarize all evidence that may be presented

at trial. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The details of the case that must ultimately be considered will be considerably more expansive than those in the Complaint. Defendant expended millions of dollars on investigations leading to the prosecution of General Flynn. The witnesses with insight into the conduct of that investigation and the prosecution will be absolutely critical to the questions before this court: Whether the United States abused process in the investigation and prosecution of General Flynn and whether that prosecution of General Flynn was malicious.

To the extent that there are key witnesses within the DDC subpoena power but not within the subpoena power of the MDFL, their testimony could be established through remote deposition or even a stipulation, thus avoiding the necessity of travel entirely. *See, e.g., In re Altera Corp.*, 494 F. App'x 52, 53 (Fed. Cir. 2012) (the availability of video depositions can be a consideration in analyzing a motion to transfer); *Anthem Leather, Inc. v. Kamino Intern. Transport, Inc.*, 2008 WL 516289, at *3 (N.D. Ga. Feb. 25, 2008) (party failed to show that videotape deposition would be inadequate); *James J. Flanagan Shipping Corp. v. Mediterranean Shipping Co.*, S.A., 2007 WL 2461817, at *4 (E.D. Tex. Aug. 27, 2007) ("With modern video deposition technology, the need for many witnesses to travel at all is reduced or eliminated."); *Citibank, N.A. v. Affinity Processing Corp.*, 248 F. Supp. 2d 172, 178 (E.D.N.Y. 2003) (the court did not find the inconvenience of the witnesses significant, even though many of the defendant's former

employees might not come voluntarily to the current forum, due to the option of videotaping the testimony of witnesses unwilling to travel); *Quezada v. Darden Restaurants, Inc.*, 139 F. Supp. 2d 666, 668 (W.D. Pa. 2001) (refusing transfer where the defendant had not demonstrated that videotaped depositions would be inadequate).

Further, "The party seeking the transfer must support its motion by clearly specifying the key witnesses to be called and particularly stating the significance of their testimony." *Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1361–62 (S.D. Fla. 2001) (citing *McEvily v. Sunbeam-oster Co., Inc.,* 878 F.Supp. 337, 345 (D.R.I. 1994); *J.I. Kislak Mortgage Corp. v. Connecticut Bank & Trust Co.,* 604 F.Supp. 346, 348 (S.D.Fla.1985). Defendant has not presented any argument why in-person testimony from any of the witnesses it identified is important to this case or what its contents would be.

Moreover, as an FTCA action, this case will not be presented to a jury but rather will be presented entirely to a judge reducing the normal issues with remote or recorded testimony being played to a jury. 28 U.S.C. § 2402. The simple truth of this complex case—with witnesses across America and throughout the world— is that there will be many witnesses outside of the subpoena power of either court and much testimony will be presented remotely or by *de bene esse* deposition.

The inconvenience that would attend to the key Florida witnesses in this case, including General Flynn and many of his damages witnesses, including his family members who also suffered from Defendant's abuse, is not clearly

7

outweighed by the inconvenience of Defendant's DDC witnesses. Defendant is attempting to shift the inconvenience and cannot show that the factors in transferring venue *clearly* outweigh Gen. Flynn's choice of venue. *See Sec. Capital Holdings, Inc. v. Money Source, Inc.*, 2013 WL 5566071, at *5 (M.D. Fla. Oct. 8, 2013).

Given Defendant's failure to specifically outline the inconvenience, expected testimony, why the testimony could not be provided in another manner, or include any analysis of all the expected witnesses and testimony needed in this case, the first factor weighs against transfer or, at worst, is neutral because it would mainly serve to shift the burden of convenience from Defendant's witnesses, mostly former government employees that caused the underlying harm to General Flynn, to General Flynn's witnesses, particularly his damages witnesses, all innocent parties. "Neutral factors ultimately weigh against transfer when the presumption for the plaintiff's choice of forum is applied." *Sterling v. Provident Life & Accident Ins. Co.*, 519 F. Supp. 2d 1195, 1208 (M.D. Fla. 2007).

**2. Location of documents and access to sources of proof are neutral and, therefore, weigh against transfer.**

"This factor examines the location of sources of documentary proof and other tangible materials, and the ease with which the parties can transport them to trial." *Trinity Christian Ctr. of Santa Ana, Inc.*, 761 F. Supp. 2d at 1328. Given technological advances, however, this factor is no longer heavily weighted. *Nat'l Trust Ins. Co.*, 223 F. Supp. 3d at 1243-44. This is even truer when a movant does

not demonstrate the documents will be more difficult to produce in one forum rather than another. *Id.* at 1244.

Here, Defendant admits that modern technology largely neutralizes this factor. Further, Defendant has not made any showing that it would be difficult to present this evidence in Florida. In contrast to Defendant, which has an office in every judicial district and can share all the digitized files or easily transport physical files between offices with its nearly limitless resources, it is more difficult for General Flynn and his Florida-based witnesses to collect documents and bring them to the DDC than vice versa. Accordingly, this factor weighs slightly in favor of General Flynn, but it is, at worst, neutral and a neutral factor does not favor transfer. *Sterling*, 519 F. Supp. 2d at 1208.

### 3. Convenience of the parties weighs against transfer.

The logical starting point for convenience of the parties is residence. *Delorenzo v. HP Enter. Serv., LLC*, 79 F. Supp. 3d 1277, 1283 (M.D. Fla. 2015). Here, General Flynn resides within the Middle District of Florida. Further, General Flynn spends the majority of his time within this district.

Defendant's convenience in this matter should be afforded no or minimal weight. Defendant is the United States government; there are United States Attorney's Offices in every judicial district in the country, including this district, and the venue statute for FTCA claims specifically allows a Plaintiff to bring their claim in the judicial district in which they *currently* reside. Moreover, the government has almost unlimited resources to participate in this litigation

anywhere in the country. *See Coyoy v. United States*, 526 F. Supp. 3d 30, 45 (D.N.J. 2021).

Even if this Court finds that the United States would be slightly inconvenienced in litigating this case in Florida, "when a transfer of venue would merely shift the inconvenience from the defendant to the plaintiff, the plaintiff's choice of forum should not be disturbed." *Trinity Christian Ctr. of Santa Ana, Inc.*, 761 F. Supp. 2d at 1328–29. Accordingly, this factor weighs against transfer, or, at worst, is neutral, which still weighs against transfer. *Sterling*, 519 F. Supp. 2d at 1208.

### 4. The locus of operative facts is immaterial.

While the locus of operative facts may have occurred in the District of Columbia, given the other factors, this factor is immaterial to this Court's overall analysis, especially in light of the alleged acts underlying General Flynn's claims involving the wrongful conduct of former and current employees of Main Justice, the government office litigating this case, the FBI's leadership in Washington, DC, and the Special Counsel's Office's prosecution under Robert Mueller, which was overseen by a judge that readily injected his own personal animus into the management of the case. This Court must consider these facts in determining the weight of this factor as a transfer to the DDC would necessarily place this case before the district where a judge was openly hostile towards General Flynn during the litigation, going so far as to become an interested party to the litigation and

appealing the order to dismiss the case. As discussed in more detail below, this would create an appearance of impropriety that would loom over this case.

Notably, this district recently found in an unpublished opinion in *Milbauer*, that the locus of operative facts was not determinative to the motion to transfer venue outcome. *See generally*, *Milbauer v. United States*, No. 2:11-cv-149, Dkt. No. 18 (M.D. Fla. Dec. 8, 2011) ("*Milbauer* Order"). Further, in *Mason,* the court determined*,* while the locus of operative facts may have occurred elsewhere, "a plaintiff's choice of forum must be afforded considerable deference, where, as here, the plaintiff has elected to bring suit in the district in which he resides." *Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1361–62 (S.D. Fla. 2001). The court explained that this is true despite the locus of operative facts occurring elsewhere, especially in cases where some or all of the damages are felt in the district where the suit is brought. *Id.* Here, while General Flynn was damaged by the federal government's abuse of process and malicious prosecution while it was occurring, the effects continue to be felt to this day and evolve in new and unpredictable ways.

**5. Availability of process to compel the attendance of unwilling witnesses weighs against transfer.**

Defendant spends significant time discussing the subpoena power of DDC, but it has not presented any argument or evidence that the witnesses it identified would be unwilling to travel to the Middle District of Florida to testify. The Middle District of Florida has found, "the general allegation that some witnesses may be unwilling to testify is not sufficient to support a transfer." *Garay v. BRK Elecs.*, 755

F. Supp. 1010, 1012 (M.D. Fla. 1991); *see also Milbauer* Order, at 6 (requiring a movant to "show that the witnesses would be unwilling to testify and that compulsory process would be necessary.") (citing *Mason*, 146 F. Supp. 2d at 1361–62). Here, Defendant has not even made the required general allegation.

Moreover, the Defendant has made "no showing that the witnesses cannot be effectively presented by depositions, and there has been no specific identification of the substance of their testimony." *Garay v. BRK Elecs.*, 755 F. Supp. 1010, 1012 (M.D. Fla. 1991). Rather, Defendant simply moved to transfer on the bare allegation that witnesses *may* be unwilling to travel to sunny Florida to testify in a case of national importance, especially at a time when the misfeasance and malfeasance of the FBI and DOJ have been forefront in the national spotlight. Many witnesses will likely be eager for the chance to present their side of the story on this important issue in Florida.

DOJ also argues that in-person testimony is preferred based on a case out of the Northern District of Alabama. Gov. Br. at 10 n. 8. Out-of-district citation aside, in-person testimony is less of a factor here because this is a bench trial by law. The judge deciding this case will be better able than a jury to evaluate credibility through remote and *de bene esse* testimony reducing any force behind this argument. Moreover, as discussed above, there will be remote and *de bene esse* testimony required regardless of the location of this trial.

Further, there are many witnesses—and likely will be more as discovery progresses—that are within Defendant's employ. A request to "transfer may be

denied when the witnesses, although in another district, are employees of a party and their presence can be obtained by that party." *Mason,* 146 F. Supp 2d at 1361.

Additionally, there are witnesses located within Florida who the court could compel to testify. And given that Defendant failed to show that witnesses outside of Florida would be unwilling to testify, this factor is, at worst, neutral. *Sterling*, 519 F. Supp. 2d at 1208.

### 6. Relative means of the parties does not support transfer.

Defendant argues that the relative means of the parties is a neutral factor. Gov. Br. 16-18. Setting aside the fact that a neutral factor weighs against transfer, this argument suggests that the relative means of the United States government to litigate this case, including the unlimited resources of the federal government and the entire DOJ, is roughly equivalent to General Flynn's. This is obviously false, exemplified by the *millions* of dollars that the government poured into the Crossfire Hurricane investigation and the SCO under Special Counsel Mueller underlying this case. Accordingly, this factor does not warrant transfer.

### 7. This Court's familiarity with the law is neutral.

Even if this Court were to apply District of Columbia law, a "Florida court is fully competent to apply foreign law," and this factor remains neutral. *Valentino v. Eli Lilly and Co.*, 2015 WL 4352321, at *8 (M.D. Fla. Jul. 14, 2015) (citing *Sterling v. Provident Life & Accident Ins. Co.*, 519 F. Supp. at 1208). "[D]istrict courts often have little trouble applying the law[s] of other states." *Trans Am. Worldwide, LLC v. JP Superior Sols., LLC*, 2018 WL 3090394, at *10 (N.D. Fla. Apr. 30, 2018) (citations omitted); *see also Medytox Diagnostics, Inc. v. Samuels*, 2014 WL

12606310, at *7 (S.D. Fla. July 18, 2014) (same). This is true even if the alternative forum would be more familiar with the subject law. *See Estate of Brooks v. United States*, 2020 WL 4923639, at *8 (S.D. Fla. Jan. 22, 2020). Accordingly, this factor remains neutral and weighs against transfer.

### 8. Plaintiff's choice of forum weighs against transfer.

In this case, Defendant seeks to forum shop to a more favorable venue. As extensively briefed, a "plaintiff's choice of forum should not be disturbed unless it is *clearly* outweighed by other considerations." *Robinson*, 74 F.3d at 260 (emphasis added). Defendant must show that "the balance of convenience is '*strongly in favor*' of transfer." *American Aircraft Sales Intern., Inc.*, 55 F. Supp. 2d at 1351 (emphasis added). "In the absence of a clear difference in convenience, the plaintiff's choice of forum is determinative." *Id.*

Defendant has alleged that General Flynn's choice of forum is not entitled to great deference because he did not move to MDFL until after the operative facts occurred. Gov. Br. 19. In support of this position, Defendant offers a handful of citations to cases that are factually distinct. In this case, General Flynn was under criminal prosecution in DDC until shortly before he moved to MDFL. Defendant seeks to take advantage of its own malicious actions against Defendant that kept him in DDC to force him to litigate this case in a forum that is, as described in detail below, severely unfavorable to General Flynn.

Even if Defendant's arguments are correct, this factor should weigh against transfer and Defendant has not met its burden to show that General Flynn's choice

of forum is *strongly* outweighed by other considerations. In fact, the totality of the factors show that the Middle District of Florida is the fairer and more convenient forum.

### 9. The interests of justice weighs *heavily* against transfer.

In all likelihood, General Flynn cannot and will not receive a fair trial in the DDC. The DDC is where General Flynn was subject to a malicious and abusive process based on improper claims against him, which the DDC oversaw and District Court Judge Emmett Sullivan prolonged by refusing to dismiss the case when DOJ moved for dismissal and after being ordered to do so by the D.C. Circuit.

The unfortunate fact is that the DDC has become, and is seen, as a highly partisan tribunal. As the Eleventh Circuit has held in a case involving *forum non conveniens*, "extreme amounts of partiality or inefficiency may render the alternative forum inadequate" *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1312 (11th Cir. 2001); *see also Drake v. State Farm Mutual Automobile Ins. Co.*, 2021 WL 3191694, at *2 (N.D. Ga. Jul. 27, 2021) (indicating that a court may consider allegations that the alternative forum is biased). In the DDC, multiple judges have expressed extreme emotions that have called into question their supposed impartiality in cases involving persons who support President Trump.

In December 2018, DDC Judge Emmet Sullivan stated, in open court, "Arguably, that undermines everything this flag over here stands for. Arguably, you (General Flynn) sold your country out. The court's going to consider all of that." *United States v. Flynn*, No. 17-cr-232, Hr'g Tr., at 33, 36 (D.D.C. Dec. 18, 2018).

As if this was not enough evidence of a judicial bias, during this same hearing, Judge Sullivan expressed his belief that General Flynn had committed treason and asked the government whether it had considered charging Flynn with a much more serious offense. The government admitted it hadn't considered charging General Flynn with treason, but Sullivan pressed on: "All right. Hypothetically, could he have been charged with treason?" *Id.*

Despite the government's decision to dismiss the case against General Flynn, Judge Sullivan continued to treat him as if he was a criminal, rather than applying any semblance of the presumption of innocence. And context is important here: the alleged offense that caused Judge Sullivan such *disgust* was a (manufactured) process crime—an alleged misstatement to the FBI—which in his mind made General Flynn a traitor to the United States.

In June 2020, after DOJ moved to drop the charges against General Flynn, Judge Sullivan appointed a retired judge to argue against General Flynn and DOJ's position, and even ordered him to opine on whether General Flynn could be further charged with perjury. *United States v. Flynn*, No. 17-cr-232, Br. For Court-Appointed *Amicus Curiae*, Dkt. No. 223-2, at 3 (D.D.C. Jun. 10, 2020). Judge Sullivan openly questioned DOJ's motive for dropping the charges against General Flynn. In a filing that Judge Sullivan made on his own to the D.C. Circuit, he expressed partisan concern for "the unusual developments in this case [that] provide at least a plausible reason to question 'the bona fides' of the government's motion." *United States v. Flynn*, No. 20-5143, Br. For Judge Emmet G. Sullivan,

ECF No. 1845144 (D.C. Cir. Jun. 1, 2020). Judge Sullivan, ignoring the separation of powers of the United States Constitution, interfered with the Executive Branch's prosecutorial discretion, based on a conspiracy theory of "corrupt motives," betraying his utter partisanship against General Flynn and the Trump administration. The context, again, is important: the "unusual developments" that attended the DOJ's request for dismissal was the release of *Brady* material that had been improperly withheld by the government for years and was not only devastating to the government's case against General Flynn, supporting his innocence, but also demonstrated the corruption and partisanship of the underlying investigation and charge.

In July 2020, after the D.C. Circuit Court of Appeals ordered Judge Sullivan to dismiss the case against Flynn, he took the unprecedented and extraordinary step of petitioning the *en banc* Court to rehear the case—becoming an *interested party* to the case over which he presided.[1] In August 2020, after the D.C. Circuit granted Judge Sullivan's request for a rehearing, Judge Sullivan's lawyer argued against General Flynn's position that the case should be dismissed. *See generally*, *In re Flynn*, 973 F.3d 74 (D.C. Cir. 2020). Yet despite litigating the case against General Flynn, Judge Sullivan refused to recuse himself.

Judge Sullivan got his wish. Despite the extensive record of Judge Sullivan's problematic statements and conduct, the majority of the D.C. Court of Appeals

---

[1] Andrew Harrer, *Judge in Michael Flynn case wants full appeals court to rehear dismissal of charges,* NBC News (Jul. 9, 2020, at 4:21 PM), https://www.nbcnews.com/politics/justice-department/judge-michael-flynn-case-wants-full-appeals-court-rehear-dismissal-n1233366.

*denied* the request to reassign the case to a different judge and remanded the case back to Judge Sullivan. While it expressly admonished him to act quickly, he stubbornly failed to do. *In re Flynn*, 973 F.3d at 78.

In addition to Judge Sullivan, several other DDC judges have also expressed a bias against President Trump, his supporters, and his administration and campaign, and have inserted political rhetoric into their comments and decisions from the bench. At least nine federal judges, including seven judges in the DDC, have blamed President Trump for the events of January 6, 2021, despite ongoing litigation on this exact issue.[2]

On February 7, 2022, before the *Thompson* Order on President Trump's motion to dismiss was even decided, Judge Contreras stated during a sentencing hearing: "The events of January 6th involved the rather unprecedented confluence of events spurred by then President Trump and a number of his prominent allies who bear much responsibility for what occurred on that day." Tr. of Sentencing at 38, *United States of America v. Nicole Prado,* No. 1:21-cr-00403-RC (D.D.C. Feb. 7, 2022).

Judge Walton took it a step further, openly insulting President Trump and his supporters:

> You know, I think our democracy is in trouble. Because unfortunately, we have charlatans like our former president, who doesn't in my view really care about democracy, but only about power. And as a result of that, it's tearing this country apart. I have a concern that we have, unfortunately,

---

[2] Nine Different Federal Judges have blamed Trump for January 6, CREW, (May 18, 2023), https://www.citizensforethics.org/reports-investigations/crew-investigations/nine-different-federal-judges-have-blamed-trump-for-january-6th/.

> American citizens who were so gullible that they were willing to accept what
> was being said without any proof that the allegations about the election had
> any merit whatsoever.

*United States v. Thompson*, 21-cr-161 (D.D.C. Apr. 14, 2022). In addition to the above, Judges Colleen Kollar-Kotelly, Beryl Howell, John D. Bates, and Amy Berman Jackson have laid blame at President Trump's feet without any evidence other than their own beliefs.[3] Given the clearly expressed hostility of multiple DDC Judges towards President Trump and his supporters, it would not be in the interests of justice to have this case before a DDC judge.

As the Eleventh Circuit has held in the context of choosing an appropriate forum, extreme partiality is sufficient to render an alternative forum inadequate. *Leon v. Millon Air, Inc.*, 251 F.3d at 1312. This case should be decided on the merits, the facts, and the law, not politics. That cannot happen in the DDC, but it could in the Middle District of Florida. Thus, in the interests of justice, and receiving a fair trial, this case *cannot* be moved to the DDC.

Beyond this, MDFL and the Eleventh Circuit generally process cases more expeditiously than the DDC and the D.C. Circuit. In a 12-month period ending March 31, 2023, the median time from filing a civil case to trial in the DDC was 53.5 months. In MDFL, the median was only 34.4 months.[4] During this same

---

[3] *Id.*

[4] United States District Courts—National Judicial Caseload Profile, available at: https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2023.pdf.

period, the time to disposition for an appeal in the Eleventh Circuit was 9.8 months compared to 11.7 months in the D.C. Circuit.[5]

The simple fact is, the Middle District of Florida would adjudicate this case more efficiently and less expensively than the DDC, despite the fact that the DDC judges have less cases at any given time. Moreover, the government's suggestion that the DDC has a lesser caseload than this district ignores the reality that the DDC is overburdened with criminal cases, especially the numerous trials of January 6 defendants who have speedy trial rights. Gov. Br. at 15–18. A civil plaintiff's right to a quick, just, and efficient adjudication of his claim is a foundation of our nation's judicial system, but it does not trump a criminal defendant's speedy trial rights. Nonetheless, justice delayed is justice denied, and General Flynn's interest in a just and speedy determination of his rights weighs heavily against transfer.

## CONCLUSION

Defendant had the burden of clearly showing that transfer serves the interests of justice and significantly impacts the balance of convenience for the parties and witnesses. It has failed to do so. To the contrary, a transfer of venue in this case would severely prejudice General Flynn's ability to receive a fair trial and to even be seen as receiving a fair trial. Accordingly, General Flynn respectfully requests that this Court deny Defendant's Motion to Transfer Venue.

Dated: May 30, 2023                              Respectfully, submitted,

---

[5] *Id.*

/s/ *Jason C. Greaves*
Jason C. Greaves
(admitted *pro hac vice*)
Jared J. Roberts
(Fl. Bar No. 1036550)
Shawn M. Flynn
(Fl. Bar No. 1040911)
Matt M. Dummermuth
(admitted *pro hac vice*)
Binnall Law Group, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
Email: jason@binnall.com
        jared@binnall.com
        shawn@binnall.com
        matt@binnall.com

*Counsel for Plaintiff*

21

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of May, 2023, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ *Jason C. Greaves*
Jason C. Greaves
*Counsel for Plaintiff*