UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

|  |  |
|---|---|
| MICHAEL T. FLYNN, | |
| Plaintiff, | |
| v. | Case No. 8:23-cv-00485-MSS-CPT |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND SUPPORTING MEMORANDUM

The United States of America, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) moves to dismiss Plaintiff's Complaint.

## PRELIMINARY STATEMENT

On November 30, 2017, the United States filed a criminal information charging Plaintiff, Lieutenant General Michael T. Flynn, with lying to Federal agents during a January 24, 2017 interview in violation of 18 U.S.C. § 1001.  On that same day, Plaintiff entered into a plea agreement, pursuant to which Plaintiff agreed to plead guilty to the criminal information and cooperate with other ongoing investigations.  On the next day and again over a year later, Plaintiff testified under oath in open court that he was entering the plea of guilty voluntarily and of his own free will because he was, in fact, guilty.  Despite these admissions, Plaintiff now asserts claims for abuse of process and malicious prosecution pursuant to the Federal Tort Claims Act ("FTCA"), alleging that various Federal agencies and employees conspired to wrongfully investigate and prosecute Plaintiff based upon personal animus and political bias against Plaintiff and former president Donald J. Trump.

The Court should dismiss Plaintiff's claims for lack of jurisdiction and for failure to state a claim.  First, because the United States has waived its sovereign immunity only with respect to malicious prosecution and abuse of process claims that are based upon the acts or omissions of "investigative or law enforcement officers of the United States," 28 U.S.C. § 2680(h), the Court lacks subject matter jurisdiction over Plaintiff's claims to the extent they are based upon the acts and

omissions of federal employees, such as prosecutors, who are not law enforcement or investigative officers.  Second, Plaintiff has not stated a claim for malicious prosecution because he fails to plausibly allege that (1) the criminal prosecution was procured by investigative or law enforcement officers, (2) there was no probable cause to support the charges given Plaintiff's own admissions of guilt, or (3) the criminal prosecution terminated in Plaintiff's favor given that it was dismissed as moot in light of Plaintiff's acceptance of a presidential pardon.  Third, Plaintiff fails to state a claim for abuse of process because he fails to plausibly allege either that a law enforcement or investigative officer used "process" against him or, assuming that process was used, that it was improperly used after issuance.  Finally, even if Plaintiff had sufficiently pled a claim for abuse of process, it would be barred by the statute of limitations.  Accordingly, Plaintiff's claims must be dismissed.

## FACTUAL ALLEGATIONS[1]

### I.   BACKGROUND

#### A.  The FBI investigates Plaintiff's connections to the Russian government.

Following his retirement from the U.S. Army in 2014, Plaintiff opened an international consulting business with his son.  ECF No. 1 ¶ 27.  In March 2016,

---

[1]  For purposes of this motion, Defendant relies on the facts alleged in the Complaint, which are assumed to be true solely for the purposes of the motion to dismiss, and materials incorporated into the Complaint by reference or of which judicial notice may be taken.

Plaintiff became a foreign policy advisor to then-presidential candidate Donald J. Trump. *Id.* ¶¶ 27-28.

On July 31, 2016, the Federal Bureau of Investigation ("FBI") opened a counterintelligence investigation, known as "Crossfire Hurricane," to determine whether individuals associated with the Trump campaign were, wittingly or unwittingly, coordinating with the Russian Government to influence the 2016 presidential elections. *Id.* ¶¶ 29-30; OIG Report at 50-53.[2] Based upon initial analysis indicating potential links with Russia, the FBI opened sub-investigations to focus on four individuals connected to the Trump campaign: Plaintiff, Carter Page, George Papadopoulos, and Paul Manafort.[3] *See* ECF No. 1 ¶ 45; *see also* OIG Report at 1-2, 59. On August 16, 2016, the FBI initiated the sub-investigation into Plaintiff, known as "Crossfire Razor," to determine whether Plaintiff "was

---

[2] The Complaint expressly cites to—and derives numerous allegations from—a report issued by the DOJ Office of Inspector General, entitled, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* ("OIG Report"), available at https://www.oversight.gov/sites/default/files/oig-reports/o20012.pdf (issued on December 9, 2019). *See, e.g.*, ECF No. 1 ¶¶ 29, 30, 33, 34, 35, 38, 40, 41. Because the OIG Report is incorporated by reference in—and central to—the allegations in the Complaint and its authenticity cannot be questioned, the Court may consider it in resolving the motion to dismiss. *See infra* Argument, § I.

[3] A large portion of Plaintiff's complaint addresses alleged misconduct in connection with the sub-investigation of Carter Page, including four Foreign Intelligence Surveillance Act ("FISA") warrants obtained from the Foreign Intelligence Surveillance Court ("FISC") to surveil Carter Page, not Plaintiff. *See, e.g.*, ECF No. 1 ¶¶ 39-44; OIG Report at v-xiii (indicating that Carter Page was the target of the four FISC warrants); *id.* at vi (noting there was no indication FISA surveillance was considered for Plaintiff). The alleged misconduct with regard to Carter Page, who brought a separate lawsuit, thus appears irrelevant to Plaintiff's claims. *See Page v. Comey*, 628 F. Supp. 3d 103, 131-32 (D.D.C 2022) (dismissing Carter Page's FTCA abuse of process claim based upon four FISC warrants).

involved in activity on behalf of the Russian Federation which may constitute a threat to national security."  ECF No. 1 ¶ 32.

While the Crossfire Razor investigation was ongoing, Donald Trump won the 2016 Presidential election, and, in November 2016, Plaintiff accepted President-elect Trump's offer to be the National Security Advisor.  ECF No. 1 ¶ 67.  After the election, in December 2017, the FBI drafted, but did not implement, a case closing communication reflecting that the FBI's investigation had primarily checked known databases for derogatory information on Plaintiff but did not identify any.  ECF No. 1-6 at 1-3.  The draft case closing communication stated: "[Plaintiff] w[ould] not [be] interviewed as part of the case closing procedure." ECF No. 1-6 at 4.  The communication further noted that the FBI would consider reopening the investigation if new information was obtained regarding Plaintiff's activities.  *Id*.

Sometime prior to January 4, 2017, the FBI learned about and obtained transcripts of calls between Plaintiff and then-Russian Ambassador Sergey Kislyak from December 2016, during which Plaintiff sought to persuade Russia not to retaliate against the United States following President Obama's expulsion of Russian diplomats.  *See id*. ¶¶ 60, 63.  On January 4, 2017, FBI Deputy Assistant Director ("DAD") Peter Strzok inquired whether the Crossfire Razor investigation was still open and, if so, directed that it remain open.  *See* ECF No. 1 ¶ 62.

Subsequently, between January 5 and 10, 2017, FBI Director James Comey met with several Executive Office of the President ("EOP") Officials at the White House to discuss Plaintiff's calls with Ambassador Kislyak and the Crossfire Razor investigation. *Id*. ¶¶ 75-76, 78, 80. In particular, the parties discussed whether Plaintiff violated the Logan Act, 18 U.S.C. § 953, and whether he could be prosecuted under that statute. *Id*. ¶¶ 80, 82. Ultimately, Department of Justice ("DOJ") officials indicated that a prosecution under the Logan Act would be unlikely to succeed. *Id*. ¶ 82.

Around this same time, the Washington Post published an article addressing Plaintiff's calls with the Russian Ambassador. *Id*. ¶ 81. The article noted that the Trump transition team confirmed Plaintiff spoke with Ambassador Kislyak but indicated that the calls were made so Plaintiff could offer his condolences following several tragic accidents and insisted that the topic of sanctions was not addressed during the calls. *See* David Ignatius, *Why did Obama dawdle on Russia's hacking?*, Washington Post, January 12, 2017. Based on this and other articles addressing the calls, EOP, DOJ, and FBI officials had concerns about what information could be shared with the incoming Trump administration regarding Plaintiff's calls with the Russian Ambassador and the FBI sought to interview Plaintiff about the calls. *See* ECF No. 1 ¶¶ 77, 83-85.

On January 24, 2017, Deputy Director Andrew McCabe asked Plaintiff to participate in an "informal meeting" with FBI agents, "just to put the Kislyak calls being discussed in the press to bed." *Id.* ¶ 93; *see also id.* ¶¶ 94, 99. Deputy Director

McCabe informed Plaintiff that, if he wished to have anyone present, including White House Counsel, the issue would need to be raised with DOJ. *Id*. ¶ 93. Plaintiff voluntarily agreed to meet with FBI agents in his office at the White House that same day. *See id*. ¶¶ 93-94.

During the interview, DAD Strzok and FBI Supervisory Special Agent Joe Pientka, III, questioned Plaintiff about the content and purpose of the calls, but they did not confront Plaintiff with the transcripts of the calls. *Id*. Additionally, the agents did not inform Plaintiff that providing false statements to federal agents during the interview could lead to criminal charges. *See id*. ¶ 94. The agents' interview notes reflect that there were no obvious signs of deception and both agents had the impression that Plaintiff was not lying or did not think he was lying during the interview. *Id*. ¶¶ 105-06.

**B. The Special Counsel's Office charges Plaintiff with making false statements during the January 24, 2017 interview in violation of 18 U.S.C. § 1001(a)(2), and Plaintiff agrees to plead guilty to the charge.**

On May 17, 2017, Robert S. Mueller III was appointed to serve as Special Counsel to oversee the investigation into Russian interference in the 2016 election. *Id*. ¶ 108. As a result, the Special Counsel's Office ("SCO") assumed control of the Crossfire Hurricane investigation and all sub-investigations, including Crossfire Razor. *Id*.

On November 30, 2017, the SCO filed a criminal information in the District Court for the District of Columbia ("DDC") charging Plaintiff with one count of

making false statements, during the January 24, 2017 interview, in violation of 18 U.S.C. § 1001(a)(2).  *Id.* ¶¶ 108, 110-12; *see also United States of America v. Flynn*, No. 1:17-cr-00232-EGS (D.D.C.) (the "Criminal Case"), ECF No. 1.[4]  The criminal information charged Plaintiff with knowingly and willfully making materially false statements, during the January 24, 2017 interview, concerning his previous conversations with the Russian Ambassador.  Criminal Case, ECF No. 1 at 1-2; *see also* ECF No. 1 ¶ 110.

On the same day the criminal information was filed, Plaintiff, who was represented by counsel, signed a Plea Agreement and Statement of Offense in which he agreed to plead guilty to the charged offense and admitted under penalty of perjury to the factual basis for the 18 U.S.C. § 1001 violation.  *See* Criminal Case, ECF Nos. 3, 4.  Additionally, the Plea Agreement reflects that Plaintiff agreed to cooperate with law enforcement authorities "in any and all matters as to which [the Government] deems the cooperation relevant[,]" and to "testify fully, completely and

---

[4] The Court may take judicial notice of records from the Criminal Case because they are not subject to reasonable dispute and can be determined from the DDC electronic filing system—a source whose accuracy cannot reasonably be questioned.  *Grayson v. Warden, Comm'r, Alabama Doc*, 869 F.3d 1204, 1224-25 (11th Cir. 2017) (finding that court "may take judicial notice of an adjudicative fact that is both 'not subject to reasonable dispute' and either (1) 'generally known within the trial court's territorial jurisdiction' or (2) 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned'" (quoting Fed. R. Evid. 201(b)) (footnotes omitted)).  Defendant requests only that the Court take judicial notice of the filings and their contents, recognizing the Court "cannot take judicial notice of the factual findings of another court, or of the truth of the matters asserted in the filings."  *Hurry Fam. Revocable Tr. v. Frankel*, No. 8:18-CV-2869-CEH-CPT, 2023 WL 23805, at *4 (M.D. Fla. Jan. 3, 2023).

truthfully before . . . any and all trials of cases or other court proceedings" in which his testimony was deemed relevant.  Criminal Case, ECF No. 3 at 5.

On December 1, 2017, the judge in the Criminal Case conducted a Plea Hearing at which Plaintiff testified under oath that (1) the factual summary supporting a finding that Plaintiff violated 18 U.S.C. § 1001 during the January 24, 2017 interview was true and correct; (2) Plaintiff was entering a plea of guilty voluntarily and of his own free will; and (3) Plaintiff was, in fact, guilty of violating 18 U.S.C. § 1001.  *See* Criminal Case, ECF No. 16.  On December 18, 2018, the judge in the Criminal Case conducted an additional plea colloquy because Plaintiff's sentencing memorandum "raised issues that may affect or call into question his guilty plea."  Criminal Case, ECF No. 103 at 7.  During that colloquy, Plaintiff again testified under oath that he was pleading guilty to a violation of 18 U.S.C. § 1001 because he was, in fact, guilty of that offense.  *Id.* at 15:23-16:7.  The Court accepted Plaintiff's guilty plea but agreed to postpone sentencing to allow Plaintiff to continue cooperating with the Government in other matters.  *Id.* at 47-48.

On January 14, 2020, prior to being sentenced in the Criminal Case, Plaintiff filed a motion seeking leave to withdraw his guilty plea.  Criminal Case, ECF No. 151.  He then filed a motion, on January 29, 2020, to dismiss the Criminal Case for egregious government misconduct and in the interest of justice.  Criminal Case, ECF No. 162.  Plaintiff argued, among other things, that the OIG Report, released on December 9, 2019, proved that Plaintiff's investigation and prosecution were baseless and only resulted from political bias.  *See id.* at 5-16.

On May 7, 2020, then-United States Attorney for the District of Columbia Timothy Shea, who had not previously appeared in the case, filed a motion to dismiss the criminal information.[5]  ECF No. 1 ¶¶ 127, 129; ECF No. 1-7; Criminal Case, ECF No. 198.  U.S. Attorney Shea argued that dismissal was warranted because the Government believed it could not prove "to a jury beyond a reasonable doubt" that: (1) Plaintiff's false statements to FBI agents were "material" to any FBI investigation; and (2) Plaintiff knowingly and willfully made false statements during the interview.  *Id*. at 17-18.  U.S. District Court Judge Emmet Sullivan did not immediately grant the motion and, instead, on May 13, 2020, appointed an *amicus curiae* "to present arguments in opposition to the government's Motion to Dismiss."  Criminal Case, ECF No. 205 at 1; *see also* ECF No. 1 ¶ 139.

On November 25, 2020, prior to the court in the Criminal Case ruling on the motion to withdraw and motion to dismiss, President Trump granted Plaintiff a pardon.  The presidential pardon provided Plaintiff "a full and unconditional pardon" for the charge of making false statements to Federal investigators, as charged in the criminal information, and all possible offenses within the investigatory authority or jurisdiction of Special Counsel Mueller.  Criminal Case, ECF No. 308-1.  The text of the executive pardon did not indicate that the pardon was based on

---

[5]  On that same date, the SCO prosecutor who had primarily handled the Criminal Case up to that point, Brandon Van Grack, withdrew his appearance.  Criminal Case, ECF No. 197.

innocence.  *See id*.  The United States Attorney's Office filed notice of the executive pardon noting that Plaintiff had accepted the pardon.  Criminal Case, ECF No. 308.

As a result of the pardon, on December 8, 2020, Judge Sullivan issued an opinion dismissing the Criminal Case as moot.  Criminal Case, ECF No. 311.  In doing so, Judge Sullivan addressed the arguments for dismissal raised in the still pending motion to dismiss filed by U.S. Attorney Shea.  Criminal Case, ECF No. 311 at 30-40.  Judge Sullivan first stated that the motion to dismiss appeared pretextual given the surrounding circumstances, including Plaintiff's prior position as an advisor to President Trump and the President's continued interest in the criminal case.  *Id*. at 28-29.  Judge Sullivan then commented that the motion to dismiss relied upon a new, "more circumscribed" definition of "materiality," without offering any comprehensible reasoning for shifting to the "highly-constrained interpretation of materiality."  *Id*. at 30, 32.  Judge Sullivan then reviewed the record evidence and found the motion to dismiss did not undertake "a considered judgment" when determining that "falsity" could not be proven beyond a reasonable doubt.  *Id*. at 38.  Judge Sullivan thus suggested that the motion to dismiss "present[ed] a close question," but refrained from ruling on the merits and denied the motion as moot "in view of the President's decision to pardon" Plaintiff and Plaintiff's acceptance of the pardon.  *Id*. at 38.

## II.     CURRENT PROCEEDINGS

Plaintiff submitted an administrative claim, dated February 24, 2022, to DOJ.[6]  ECF No. 1 ¶ 152.  On March 3, 2023, Plaintiff filed the instant action asserting claims for abuse of process and malicious prosecution against the United States pursuant to the FTCA, 28 U.S.C. § 1346, *et. seq*.  ECF No. 1.  The gravamen of Plaintiff's complaint is that agents or agencies of the United States improperly opened the Crossfire Razor investigation; conducted an interview of Plaintiff after that investigation should have been closed; and brought criminal charges against him despite "knowing [Plaintiff] had not made false statements [and], that even if he did make false statements, they were unintentional and were not material to the [FBI's] investigation."  ECF No. 1 ¶¶ 3, 111.  Additionally, Plaintiff alleges the SCO threatened Plaintiff's son with prosecution unless Plaintiff pled guilty to a violation of 18 U.S.C. § 1001 and sought to coerce Plaintiff into testifying against other members of the Trump campaign or administration.  *Id*. ¶¶ 121, 126, 159.

In the Complaint, Plaintiff identifies the following entities and/or agents as alleged "wrongdoers" on behalf of the United States: DOJ, FBI, the SCO, the EOP; former FBI Director Comey; former FBI Deputy Director Andrew McCabe; former

---

[6] Although Plaintiff alleges that he "presented" his administrative claim in a letter dated February 24, 2022, the claim is not "deemed to have been presented" under the FTCA until the Federal agency "*receives* written notification . . . accompanied by a claim for money damages."  28 C.F.R. § 14.2(a) (emphasis added).  Plaintiff fails to allege the specific date on which his administrative claim was received by DOJ, but the specific date is not determinative of any of the arguments made herein.  Thus, for purposes of the instant motion only, the United States accepts Plaintiff's allegation that the claim was presented on February 24, 2022.

DAD Strzok; former FBI attorney, Lisa Page; Special Agent Pientka; former Special Counsel Mueller; and former SCO prosecutor Van Grack.  ECF No. 1 ¶¶ 11-21.  As relief for his claims, Plaintiff requests over $50 million in compensatory damages, attorney fees, and any other relief the Court deems appropriate.  *Id.* ¶ 161.

## ARGUMENT

### I.   LEGAL STANDARDS

In any suit in which the United States is a defendant, there must be a waiver of sovereign immunity, a fundamental prerequisite to the Court's subject matter jurisdiction.  *See United States v. Mitchell,* 463 U.S. 206, 212 (1983).  The plaintiff bears the burden of establishing jurisdiction and, thus, an explicit waiver of sovereign immunity.  *Ishler v. IRS*, 237 F. App'x 394, 398 (11th Cir. 2007) (citing *Sweet Pea Marine, Ltd. V. APJ Marine, Inc.*, 411 F.3d 1242, 1248 n.2 (11th Cir. 2005)).

Motions challenging subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) come in two forms: a "facial attack" and a "factual attack."  *Aldabbagh v. Sec'y of State*, No. 6:21-cv-532-GAP-EJK, 2021 WL 6298664, at *1 (M.D. Fla. Oct. 5, 2021) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).  Where, as here, defendant makes a facial challenge, the court considers whether the allegations in the complaint sufficiently allege a basis for subject-matter jurisdiction.  *Id.* (citing *Lawrence*, 919 F.2d at 1529).  In considering a facial attack, the Court may consider material that is part of the pleadings, subject to judicial

notice, or included in any affidavits or attachments to the pleadings.  *See Mulhall v. UNITE HERE Loc. 355*, 618 F.3d 1279, 1289 n.10 (11th Cir. 2010).

A court may also dismiss a claim as insufficient to state a claim for relief. *See* Fed. R. Civ. P. 12(b)(6).  In ruling on a motion to dismiss under Rule 12(b)(6), the Court considers only "the complaint, its attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Hanshaw v. Veterans & Medicaid Plan. Grp., PLLC*, No. 5:17-CV-410-OC-41PRL, 2019 WL 3854986, at *1 (M.D. Fla. Mar. 28, 2019) (quoting *Tellabs, Inc.*, *v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007)).  "[T]he court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). Nonetheless, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).  A plaintiff's obligation to provide the grounds for entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

While a plaintiff's failure to state a claim under Rule 12(b)(6) does not usually deprive a federal court of subject matter jurisdiction—"in the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional."  *Brownback v.*

*King*, 141 S. Ct. 740, 749 (2021).  Thus, if a plaintiff fails to plausibly allege the elements of an FTCA claim under 28 U.S.C. § 1346(b)(1), it constitutes both a failure to state a claim under Rule 12(b)(6) and also deprives the court of subject matter jurisdiction over the claim.  *Id.*

## II.   PLAINTIFF'S CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY INSOFAR AS THEY ARE BASED ON THE CONDUCT OF INDIVIDUALS WHO ARE NOT "INVESTIGATIVE OR LAW ENFORCEMENT OFFICERS OF THE UNITED STATES."

Absent an express and unequivocal waiver, sovereign immunity shields the United States from suit.  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  "Sovereign immunity is jurisdictional in nature," and the terms of the United States' consent to be sued define the Court's jurisdiction to entertain the suit.  *Id.*  Here, Plaintiff brings his claims pursuant to the FTCA, which provides a limited waiver of sovereign immunity for certain tort claims "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b); *United States v. Kubrick*, 444 U.S. 111, 117-18 (1979).  The waiver, however, is subject to certain exceptions set forth in 28 U.S.C. § 2680.  *See, e.g.*, *Bramwell v. U.S. Bureau of Prisons*, 348 F.3d 804, 806 (9th Cir. 2003) (noting the FTCA's waiver of sovereign immunity is subject to thirteen exceptions under 28 U.S.C. § 2680(a)-(n)).

One such exception is for certain enumerated torts.  *See* 28 U.S.C. § 2680(h).  Section 2680(h) provides that the FTCA does not waive sovereign immunity for claims arising out of "assault, battery, false imprisonment, false arrest, malicious

prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contract rights." 28 U.S.C. § 2680(h). Under the so-called "law enforcement proviso," however, sovereign immunity is waived as to claims against the United States arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, and abuse of process when the claim is based on the "acts or omissions of investigative or law enforcement officers of the United States Government." *Id.* The proviso defines "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h).

Thus, while the government retains sovereign immunity as to most intentional torts, its sovereign immunity is waived with respect to claims for malicious prosecution and abuse of process if, but only if, the tort was committed by "investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h). As the Eleventh Circuit has explained, "[t]he law enforcement proviso is by its terms limited to 'acts or omissions of investigative or law enforcement officers.'" *Metz v. United States*, 788 F.2d 1528, 1532 (11th Cir. 1986).

Here, Plaintiff identifies the Special Counsel, SCO prosecutors, EOP Officials, and Lisa Page as "wrongdoers" in the Complaint. *See, e.g.*, ECF No. 1 ¶¶ 111 ("the SCO initiated prosecution despite knowing [Plaintiff] had not made false statements); 73 (stating the EOP conspired to investigate, entrap, and prosecute Plaintiff); 18 (identifying Ms. Page as a wrongdoer and noting only that she is a former attorney at the FBI). Plaintiff, however, fails to establish these alleged

"wrongdoers" are law enforcement or investigative officers pursuant to the FTCA and thus any intentional tort claim arising from their alleged conduct is barred by sovereign immunity.  *See Metz*, 788 F.2d at 1532; *see also Moore v. United States*, 213 F.3d 705, 708-10, 713 n.7 (D.C. Cir. 2000) (finding claims for abuse of process and malicious prosecution can only arise from the conduct of law enforcement or investigative officers).  Plaintiff's lone overbroad allegation that the "named wrongdoers . . .  are investigative or law enforcement officers within the meaning of 28 U.S.C. § 2680(h)," ECF No. 1 ¶154, is merely a legal conclusion—wholly unsupported by facts—and thus is not entitled to the assumption of truth and must be disregarded.  *See McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (providing that conclusory allegations are not entitled to an assumption of truth and should be disregarded).

With respect to the Special Counsel and SCO prosecutors, the law is well established that the FTCA does not waive sovereign immunity for claims of malicious prosecution or abuse of process based on the acts or omissions prosecutors because prosecutors are not considered "investigative of law enforcement officers" within the FTCA's definition.  Prosecutors cannot execute a search, seize evidence, or make arrests.  *See, e.g., Moore*, 213 F. 3d at 708-10, 713 n.7; *Corsi v. Mueller*, 422 F. Supp. 3d 51, 74 (D.D.C. 2019) (the "law is clear that [the Special Counsel] is not an investigative officer as defined by § 2680(h)"); *Yacubian v. United States*, 750 F.3d 100, 108 (1st Cir. 2014) ("It is undisputed here that the acts of federal prosecutors are outside of the ambit of §

2680(h) and are accordingly immune from this type of suit under the FTCA");

*Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994) (finding Government prosecutors are not law enforcement or investigative officers under the FTCA);

*Bonilla v. United States*, 652 Fed. App'x. 885, 890 (11th Cir. 2016) (unpublished) (noting prosecutors do not qualify as investigative or law enforcement officers under the FTCA because they are not empowered to execute searches, seize evidence, or make arrests).

Similarly, any claim based upon the conduct of EOP Officials is barred by the intentional tort exception because the Complaint is devoid of facts suggesting the EOP Officials are "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). Nor does Plaintiff point to any constitutional, statutory, or regulatory provision enabling one to reasonably infer that the EOP Officials have such authority. *See generally* ECF No. 1.

Plaintiff also fails to set forth any non-conclusory factual allegations indicating that Lisa Page, then an FBI attorney, qualified as a law enforcement or investigative officer under the FTCA. *See generally* ECF No. 1. There is very little mention of Ms. Page throughout the Complaint, and the allegations that refer to her come nowhere close to establishing that she possessed the authority to execute searches, seize evidence, or make arrests in her role as a legal advisor to Deputy Director McCabe. *See* ECF No. 1¶ 62 (reflecting Ms. Page was the Special Counsel to Deputy Director McCabe). Plaintiff also fails to cite any legal

provision allowing one to make such an inference and the governing statutes refute any such argument.  *See* 18 U.S.C. § 3052 (providing that only the FBI Director, Associate Director, Assistant to the Director, Assistant Directors, inspectors, and agents may carry firearms, serve warrants, and make arrests); 18 U.S.C. § 3107 (providing that only the FBI Director, Associate Director, Assistant Directors, inspectors, and agents are empowered to seize evidence).[7]

Because Plaintiff fails to plausibly allege that the Special Counsel, the SCO prosecutors, the EOP Officials, or Lisa Page are law enforcement or investigative officers, as that term is defined by 28 U.S.C. § 2680(h), any intentional tort claim arising from their alleged conduct is barred by sovereign immunity.  Moreover, to the extent Plaintiff attempts to base his malicious prosecution or abuse of process claims on allegations that these alleged "wrongdoers" used investigative or law enforcement officers to carry out a tort, the Eleventh Circuit has expressly rejected this theory of liability, holding that the law enforcement proviso "cannot be expanded to include governmental actors who procure law enforcement actions, but who are themselves not law enforcement officers."  *Metz*, 788 F.2d at 1532.

---

[7] Director Comey, Deputy Director McCabe, DAD Strzok, Special Agent Pientka, and other unnamed FBI agents assigned to the Crossfire Hurricane and Razor investigations (collectively referred to herein as the "FBI agents") are the only persons named in the Complaint that are authorized to conduct searches, seize evidence, and make arrests.  *See* 18 U.S.C. § 3052; 18 U.S.C. § 3107.  Thus, these are the only alleged "wrongdoers" that qualify as investigative or law enforcement officers pursuant to the FTCA.  *See* 28 U.S.C. § 2680(h)

### III.   PLAINTIFF FAILS TO STATE CLAIMS FOR ABUSE OF PROCESS AND MALICIOUS PROSECUTION AND THUS FAILS TO ESTABLISH SUBJECT MATTER JURISDICTION

Pursuant to the FTCA, the United States, subject to certain exceptions and limitations, waived its sovereign immunity for personal injury claims "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b). Here, because all of the alleged acts or omissions occurred in the District of Columbia, Plaintiff thus must plausibly allege that the United States, if a private person, would be liable for abuse of process and/or malicious prosecution under District of Columbia law.  *See, e.g., Richards v. United States*, 369 U.S. 1, 10 (1962) (rejecting argument that law of place where injury or death occurred should control FTCA action, and concluding that "Congress has, in the Tort Claims Act, enacted a rule which requires federal courts, in multistate tort actions, to look in the first instance to the law of the place where the acts . . . took place").

As explained more fully below, the Complaint fails to plausibly allege either claim under District of Columbia law and thus Plaintiff's claims should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).  *See Brownback*, 141 S. Ct. at 746, 749 (explaining that a failure to plausibly allege and FTCA claim constitutes not only a failure to state a claim, but also a lack of subject matter jurisdiction).

### A.  Plaintiff fails to state a claim for malicious prosecution.

Plaintiff asserts a claim for malicious prosecution based upon the allegation that the United States "maliciously investigated and prosecuted [Plaintiff] by initiating and continuing a baseless counterintelligence investigation and by filing a criminal information lacking probable cause."  ECF No. 1 ¶ 155.  Under District of Columbia law, "four elements make up the tort of malicious prosecution: (1) the defendant's initiation or procurement of a criminal proceeding against the plaintiff; (2) absence of probable cause for the proceeding; (3) malicious intent on the part of the defendant; and (4) termination of the proceeding in favor of the plaintiff."  *Moore*, 213 F.3d at 710 (citing *Davis v. Giles*, 769 F.2d 813, 814-15 (D.C. Cir.1985)).  Here, as explained below, Plaintiff's Complaint fails to plausibly plead at least three of these elements—the initiation or procurement of a criminal proceeding, the absence of probable cause, and the termination of the proceeding in favor of Plaintiff.[8]

### 1.  Plaintiff fails to plausibly allege a law enforcement or investigative officer procured a criminal proceeding against him.

As demonstrated above, the United States' sovereign immunity for malicious prosecution claims is waived only for the acts or omissions of investigative or law enforcement officers.  *See* 28 U.S.C. § 2680(h); *Moore*, 213

_____

[8] Given the procedural posture of this case, for purposes of the instant Motion only, the United States does not concede, but is not challenging the sufficiency of Plaintiff's allegations of malicious intent.

F.3d at 710.  Plaintiff's malicious prosecution claim thus cannot be premised upon the initiation of the criminal proceedings against Plaintiff by SCO prosecutors.[9]  *See, e.g.,* ECF No. 1 ¶ 111 (alleging "SCO initiated the prosecution" against Plaintiff); *see also supra* Argument, § II.  Accordingly, to successfully bring a malicious prosecution claim, Plaintiff must allege that the FBI agents—the only investigative or law enforcement officers identified in the Complaint—"procured" the criminal proceeding against Plaintiff.[10]

To plausibly allege that "a defendant procured a prosecution, the plaintiff must [allege] 'a chain of causation' linking the defendant's actions with the initiation of criminal proceedings."  *Moore*, 213 F.3d at 710 (quoting *Dellums v. Powell*, 566 F.2d 167, 192 (D.C. Cir.1977)).  "The relevant question, therefore, is whether [law enforcement's] involvement in triggering the filing of [criminal

---

[9] Even outside the context of the FTCA, "prosecutors are entitled to absolute immunity from causes of action based on the common law tort of malicious prosecution." *Gray v. Bell*, 542 F. Supp. 927, 932 (D.D.C. 1982).  As a result, "those who procure malicious prosecutions are usually the only potential defendants" for a malicious prosecution claim.  *Moore*, 213 F.3d at 710.

[10] To the extent Plaintiff's malicious prosecution claim is based upon the FBI allegedly "initiating and continuing a baseless counterintelligence investigation . . . lacking probable cause," ECF No. 1 ¶ 155, it fails as a matter of law because the mere investigation of a crime is not sufficient to support a claim for malicious prosecution under District of Columbia law.  As courts have explained, the tort of malicious prosecution "is primarily intended to compensate individuals for infringement of their 'interest in freedom from unjustifiable and unreasonable litigation,'" and thus law enforcement conduct that "does not . . . subject an individual to the burdens of *litigation*" is legally insufficient to support a claim for malicious prosecution. *Jackson v. District of Columbia*, 710 F. Supp. 13, 15 (D.D.C. 1989) (emphasis in original) (quoting *Dellums,*556 F.2d 167, 192 (D.C. Cir. 1977)).  The FBI's initiation and maintenance of a counterintelligence investigation, even if lacking probable cause, thus is insufficient to support a claim for malicious prosecution.

charges] is of such a nature that the presumption of independent action by [the prosecutor] is overborne and a chain of causation can accordingly be traced to [law enforcement]." *Dellums*, 566 F.2d at 192. "The law is clear that the chain of causation between [law enforcement] and the filing of [criminal charges] is broken thereby defeating tort liability if the decision made by [the prosecutor] was independent of any pressure or influence exerted by [law enforcement] and of any knowing misstatements which [law enforcement] may have made." *Dellums*, 566 F.2d at 192-93; *see also* Restatement (Second) of Torts § 653 (1977) (noting that procurement requires showing that plaintiff's involvement was "determining factor" in decision to prosecute or that prosecutor acted upon information provided by the individual that they knew to be false).

Here, Plaintiff has not alleged that the criminal information was filed against Plaintiff by the SCO either (1) in response to influence or pressure asserted by the FBI agents or (2) based upon any knowing misstatements made by the FBI agents.[11] To the contrary, the Complaint makes clear that the SCO exercised its independent judgment to file the criminal information against

---

[11] Plaintiff's allegations that FBI Director Comey "assisted in the decision to prosecute General Flynn" and that DAD Strzok "was involved in the decision to . . . initiate the prosecution of [Plaintiff]," ECF No. 1 ¶¶ 15, 17, are conclusory and contradicted by the more specific allegations establishing the independent role the SCO played in initiating the prosecution against Plaintiff. The allegations thus are clearly insufficient to plausibly allege that the FBI procured the prosecution. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) (finding that court's "duty to accept the facts in the complaint as true does not require [it] to ignore specific factual details of the pleading in favor of general or conclusory allegations").

Plaintiff based upon the evidence obtained by the FBI and SCO during their investigation.  *See generally* ECF No. 1.

Far from alleging that the FBI "procured" the criminal proceeding by providing false information to the SCO, Plaintiff expressly alleges that the FBI provided the SCO complete and accurate information about the FBI's investigation, including the January 24, 2017 interview, and that, despite this information, the SCO still filed the criminal information.  *See, e.g.*, ECF No. 1 ¶¶ 3 (alleging that the SCO "knew or should have known of the lack of basis for the . . . charge before the criminal information was ever filed"), 111 (alleging that the "SCO initiated the prosecution despite knowing [Plaintiff] had not made false statements, that even if he did make false statements, they were unintentional and were not material to the Crossfire Razor investigation"); 113 (alleging that SCO was in possession of FBI notes from a meeting describing Plaintiff's calls with the Russian ambassador as "legit"), 115 (alleging that, at the time the criminal information was filed, SCO "knew that General Flynn was innocent of . . . any material misstatements to the FBI"), 138 (alleging that "the information available to the DOJ and the SCO at the time it chose to file the criminal information indicated that there was . . . no probable cause to support their claim").  Indeed, Plaintiff expressly alleges: "At the time . . . SCO . . . filed the information, it was aware that [DAD] Strzok and [Special Agent] Pientka wrote, in their interview notes, they did not believe [Plaintiff] had lied during their January 24, 2017, interrogation" and "that the FBI only kept the Crossfire Razor

investigation . . . open to investigate the Flynn-Kislyak calls, which were not within the scope of the Crossfire Razor investigation."  *Id.* at ¶ 112.

Because Plaintiff fails to plausibly allege that any investigative or law enforcement officer "procured" the SCO's criminal prosecution of Plaintiff, his malicious prosecution claim should be dismissed.  *See Pitt v.District of Columbia*, 491 F.3d 494, 505 (D.C. Cir. 2007) (finding evidence of "routine investigatory duties" insufficient to establish law enforcement officer procured criminal prosecution).

### 2. Plaintiff fails to plausibly allege the absence of probable cause for the Criminal Case.

Plaintiff's malicious prosecution claim also fails because Plaintiff has not plausibly alleged that the United States lacked probable cause to initiate the criminal proceedings against Plaintiff.  Under District of Columbia law, "probable cause is defined as the existence of 'facts and circumstances as will warrant a cautious man in the belief that his action and the means taken in prosecuting it are legally just and proper.'"  *Katz v. District of Columbia*, 285 A.3d 1289, 1311 (D.C. 2022) (quoting *Pitt*, 491 F.3d at 501-02).  "One need not be certain of the outcome of a proceeding to have reasonable grounds for instituting it."  *Ammerman v. Newman*, 384 A.2d 637, 640 (D.C. 1978).

Here, there can be no dispute that there was probable cause for the United States to file the criminal information because Plaintiff had already agreed to plead guilty to the charge at the time it was filed.  *See* Criminal Case, ECF No. 3

(plea agreement with Plaintiff's signature dated November 30, 2017), ECF No.
154 (describing exchange of plea documents in days prior to the United States
filing the criminal information).  Plaintiff's plea agreement expressly states that
Plaintiff is entering the plea "voluntarily and of [his] own free will," after having
discussed the plea with his attorneys, because he is "in fact guilty of the offense."
Criminal Case, ECF No. 3 at 10.  In connection with the plea, Plaintiff also
signed, under penalty of perjury, a "Statement of the Offense," which set forth
the factual predicate for his guilty plea.  Criminal Case, ECF No. 4.  In the
Statement of the Offense, Plaintiff expressly stipulated and agreed that
"[Plaintiff's] false statements and omissions impeded and otherwise had a
material impact on the FBI's ongoing investigation into the existence of any links
or coordination between individuals with the [Trump] Campaign and Russia's
efforts to interfere with the 2016 presidential election." *Id.* at ¶ 1-2.
Subsequently, Plaintiff twice affirmed, under oath, in open court that he was
pleading guilty—not based upon any threats or promises but—because he was, in
fact, guilty of the offense charged.  *See* ECF Nos. 16, 103.

Plaintiff's own agreement to plead guilty to the criminal information
conclusively establishes that there were "reasonable grounds"—*i.e.*, probable
cause—for the United States to institute the criminal charges against Plaintiff.
Indeed, numerous courts have held that a guilty plea "conclusively establishes
that probable cause existed."  *Cuellar v. Love*, No. 11-CV-3632 NSR, 2014 WL
1486458, at *5 (S.D.N.Y. Apr. 11, 2014) (collecting cases); *see also Walker v.*

*Clearfield Cnty. Dist. Att'y*, 413 F. App'x 481, 483 (3d Cir. 2011) (concluding "that a guilty plea—even one for a lesser offense—does not permit a later assertion of no probable cause"); *Morrison v. Vine*, No. 17-CV-996-LJV-HBS, 2021 WL 1229558, at *3 (W.D.N.Y. Feb. 25, 2021) (collecting cases for proposition that "guilty plea established probable cause for his criminal prosecution"), *report and recommendation adopted*, 2021 WL 1226446 (W.D.N.Y. Mar. 31, 2021). Plaintiff's guilty plea thus "establishes probable cause for commencing the proceeding against him and therefore serves as an absolute defense to the malicious prosecution claim." *Cintron v. Shield*, No. 18-CV-1619 (RA), 2019 WL 4194429, at *3 (S.D.N.Y. Sept. 3, 2019).

Although some courts have allowed plaintiffs to rebut the general rule that a guilty plea conclusively establishes probable cause where they have asserted that their guilty pleas "were obtained by fraud, perjury, undue influence, or some other corrupt means," here, Plaintiff has not plausibly alleged that his plea agreement was obtained through fraud or other corrupt means.[12] *Basile v. Twp. of Smith*, 752 F. Supp. 2d 643, 655 (W.D. Pa. 2010) (collecting cases); *see also Killian v. Fuller*, 412 N.W.2d 698, 700 (Mich. App. 1987) ("The general rule is

---

[12] To the extent Plaintiff alleges that his plea agreement was obtained through "fraud or mistake," such allegations are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that "a party must state with particularity the circumstances constituting fraud or mistake." "[P]ursuant to Rule 9(b), a plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [plaintiff]; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (quotation omitted).

that a guilty plea is conclusive evidence of probable cause unless that plea was induced by fraud or unfair means").  The Complaint alleges only that unspecified government agents allegedly "attempted to utilize their ability to bring process against [Plaintiff's] son to coerce [Plaintiff] into pleading guilty."  ECF No. 1 ¶ 159; *see also id.* at ¶ 144 (alleging that the United States "elicit[ed] a plea bargain through threatening family members").  Plaintiff's allegation is totally devoid of supporting factual allegations regarding the alleged threat—such as what process was threatened against his son, who allegedly made the threat or when the threat was made.  Plaintiff's threadbare allegation of coercion is insufficient to overcome the presumption established by Plaintiff's guilty plea.  *See Briscoe v. United States*, 268 F. Supp. 3d 1, 18 (D.D.C. 2017) (rejecting argument that plaintiffs were "induced to plead guilty" based on misstatements about evidence, because each plaintiff had "affirmed that he was pleading guilty 'because [he was] in fact guilty'"); *Iqbal*, 556 U.S. at 681 (noting allegations that are unsupported by well-pleaded facts are conclusory and not entitled to an assumption of truth).

In addition to the plea agreement, Plaintiff also attested under penalty of perjury—in the Statement of Offense and subsequently at two plea colloquies— that he was, in fact, guilty of the offense charged and that his admission of guilt was not based upon any threats or undue influence.  Criminal Case, ECF Nos. 4, 16, 103.  As the Supreme Court has made clear, "[s]olemn declarations in open court carry a strong presumption of verity" and "[t]he subsequent presentation of

conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the colloquy are true.").[13]  The Complaint fails to include any allegations, let alone allegations "supported by specifics," that would support such a finding.

In light of Plaintiff's guilty plea and his repeated statements under oath admitting both his guilt and the voluntariness of his plea, Plaintiff's Complaint does not plausibly allege that the United States lacked probable cause to initiate criminal proceedings against him and thus Plaintiff's malicious prosecution claim should be dismissed.

### 3. Plaintiff fails to plausibly allege that the Criminal Case terminated in his favor.

"[T]o prevail in a claim of malicious prosecution, [a] plaintiff must plead and prove [that] the underlying suit terminated in plaintiff's favor." *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980).  To satisfy this requirement under District of Columbia law, the termination of the prior suit must be "of such a nature as to indicate the innocence of the accused" and "reflect on the merits of

---

[13] *See also United States v. Sidell*, 553 F. App'x 619, 624 (7th Cir. 2014) ("A defendant's admission in a plea agreement, during the plea colloquy, or even at sentencing can remove a fact from dispute since an admission is even better than a jury's finding beyond a reasonable doubt." (quotation omitted)).

the underlying action."[14]  *Brown v. Carr*, 503 A.2d 1241, 1246 (D.C. 1986)

(quoting *Lackner v. LaCroix*, 602 P.2d 393, 394 (Cal. 1979)); *see also Rauh v. Coyne*,

744 F. Supp. 1186, 1193 (D.D.C. 1990) ("To show a termination in one's favor,

the plaintiff must prove that a court passed on the merits of the charge against

him in such circumstances as to show plaintiff's innocence").  "It is not enough

that the terminations are *consistent* with innocence; they must *tend to show*

innocence."  *O'Quinn v. District of Columbia*, No. CIV.A. 87-0074 (RLC), 1988

---

[14] The Supreme Court recently held that "a Fourth Amendment claim under [42 U.S.C.] § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence," because "the American tort-law consensus as of 1871" did not require a plaintiff to make such a showing. *Thompson v. Clark*, 142 S. Ct. 1332, 1340-41 (2022).  Because the District of Columbia's common law malicious prosecution claim is not defined according to the American tort-law consensus as of 1871, the *Thompson* holding is irrelevant to Plaintiff's malicious prosecution claim here.  *See, e.g.*, *Davis*, 769 F.2d at 814-15 (citing Restatement (Second) of Torts § 653 (1977) when defining the elements of a malicious prosecution claim); *cf. Thompson*, 142 S. Ct. at 1340 (rejecting Restatement as a source for defining the Section 1983 malicious prosecution claim).  Section 1983 malicious prosecution claims and malicious prosecution claims under District of Columbia law thus "proceed[ ] under a different standard."  *Kenley v. District of Columbia*, 83 F. Supp. 3d 20, 43 (D.D.C. 2015); *see also Turpin v. Ray*, 613 F. Supp. 3d 186, 209 n.23 (D.D.C. 2020) (finding that Section 1983 malicious prosecution claim "is governed by a distinct standard" from malicious prosecution claim under District of Columbia law).  Although no court applying District of Columbia law has yet considered the issue, numerous courts have found that *Thompson*'s interpretation of the favorable termination requirement for Section 1983 malicious prosecution claims does not apply to common law malicious prosecution claims.  *See, e.g.*, *Caskey v. Fenton*, No. 22-3100, 2022 WL 16964963, at *12 (6th Cir. Nov. 16, 2022) (recognizing that standard for "favorable termination" under Ohio law, even after *Thompson*, requires an "indicat[ion] that the accused is innocent"); *Mynatt v. Nat'l Treasury Emps. Union, Chapter 39*, No. M2020-01285, 2023 WL 3243237, at *8 (Tenn. May 4, 2023) (holding, after *Thompson*, that Tennessee law requires that termination of the underlying criminal proceeding "reflect[ ] on the merits of the case and [be] due to the innocence of the accused").  The *Thompson* decision thus does not disturb the clearly established law in the District of Columbia that a malicious prosecution claim requires that the termination of the prior suit be "of such a nature as to indicate the innocence of the accused." *Brown*, 503 A.2d at 1246.

WL 23244, at *2 (D.D.C. Mar. 4, 1988) (emphasis in original).  Because the favorable termination requirement "is part of plaintiff's *prima facie* case, it is [the plaintiff's] burden to demonstrate that the termination was favorable."  *Cruz-Roldan v. Nagurka*, 246 F. Supp. 3d 155, 159 (D.D.C. 2017).

Here, Plaintiff has not alleged that the criminal prosecution terminated in a way that established his innocence.  Instead, Plaintiff alleges only that the Criminal Case was "ultimately dismissed by Judge Sullivan after [Plaintiff] received a full presidential pardon."[15]  ECF No. 1 ¶ 142; *see also id.* at ¶ 140 (alleging that Criminal Case was "dismissed . . . in its entirety" after Plaintiff accepted a pardon).  Plaintiff does not allege that the dismissal by Judge Sullivan was "of such a nature as to indicate [his] innocence"—and nor could he.  *Brown*, 503 A.2d at 1246; *see also Kenley*, 83 F. Supp. 3d at 42 ("Merely alleging that criminal charges were dismissed is . . . insufficient to plead that the underlying case was favorably terminated").  To the contrary, Judge Sullivan dismissed the Criminal Case as moot based solely on Plaintiff's acceptance of the presidential pardon and expressly observed that "the pardon 'does not, standing alone, render

---

[15] Although Plaintiff alleges that U.S. Attorney Shea, on behalf of the government, moved to dismiss the criminal complaint, ECF No. 1 ¶127, Plaintiff acknowledges that Judge Sullivan "refused to approve the DOJ's dismissal of its prosecution" and ultimately dismissed the case only "after [Plaintiff] received a full presidential pardon," *id.* at ¶¶ 139, 142.  In his Opinion addressing dismissal, Judge Sullivan expressed concerns about the merits of U.S. Attorney Shea's motion and noted that the facts presented "a close question" regarding whether the court should defer to the prosecutor's discretion to dismiss the charges but refrained from resolving that question in light of Plaintiff's acceptance of the pardon.  Criminal Case, ECF No. 311 at 38.

[Plaintiff] innocent of the alleged violation' of 18 U.S.C. § 1001(a)(2)."  Criminal Case, ECF No. 311 at 42 (quoting *United States v. Schaffer*, 240 F.3d 35, 38 (D.C. Cir. 2001)).[16]

The dismissal by Judge Sullivan was not "of such a nature as to indicate [Plaintiff's] innocence."  *Brown*, 503 A.2d at 1246.  Rather, the dismissal was based solely upon the court's lack of jurisdiction and, as a result, necessarily, did not address the merits—*e.g.*, Plaintiff's guilt or innocence.  *See Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies."); *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (finding that "dismissal for lack of subject matter jurisdiction is not a judgment on the merits").  Such a dismissal is insufficient to satisfy the favorable termination requirement for a malicious prosecution claim.  *See Feld Ent. Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 331 (D.D.C. 2012) (finding that "[c]ourts have consistently dismissed malicious prosecution claims when the prior suit was dismissed for lack of jurisdiction or standing, as opposed to on the merits of the plaintiff's claims").

---

[16] Because Judge Sullivan's opinion is referenced in—and central to—Plaintiff's Complaint, it may be considered by the Court in resolving this motion to dismiss.  *See Hodge v. Orlando Utilities Comm'n*, No. 609-CV-1059-ORL-19DAB, 2009 WL 5067758, at *3 (M.D. Fla. Dec. 15, 2009) ("A document not attached to the Complaint, however, may be considered by the Court . . . if that document is (1) central to the plaintiff's claims and (2) undisputed, meaning that the authenticity of the document is not challenged").

Nor does the fact that Plaintiff accepted a full pardon from former President Trump indicate Plaintiff's innocence.[17]  To the contrary, the Supreme Court has observed that a pardon "carries an imputation of guilt" and the "acceptance [of a pardon] a confession of it."[18]  *Burdick v. United States*, 236 U.S. 79, 94 (1915).  The D.C. Circuit similarly has acknowledged that "acceptance of a pardon may imply a confession of guilt." *Schaffer*, 240 F.3d at 38.  Similar to the pardon accepted by Plaintiff, the pardon at issue in *Schaffer* was a full and unconditional presidential pardon that did not indicate that it was issued based upon the pardoned individual's innocence.  *Id.*  The D.C. Circuit concluded that the pardon "act[ed] on the [pardoned individual's] conviction, without purporting to address [his] innocence or guilt."  *Id.*  Finally, regardless of whether, as indicated in *Burdick*, Plaintiff's acceptance of the presidential pardon

---

[17] Notably, nothing in the pardon granted to Plaintiff indicates that it was based upon Plaintiff's innocence.  *See* Criminal Case, ECF No. 308-1.

[18] In a prior decision, the Supreme Court had observed that "when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence." *Ex parte Garland*, 71 U.S. 333, 380 (1866).  As the D.C. Circuit has explained, however, the language in *Garland* about a pardon "blotting out guilt" and implying innocence was dictum, which "was implicitly rejected" in *Burdick*.  *In re North*, 62 F.3d 1434, 1437 (D.C. Cir. 1994); *see also United States v. Castellana*, 433 F. Supp. 1309, 1315 (M.D. Fla. 1977) (finding that "more recent authorities have questioned the breadth of the *Garland* description" of the effect of a presidential pardon).  As a result, "federal courts now agree that a pardon does not 'blot out guilt or expunge a judgment of conviction.'"  *Lorance v. Commandant, U.S. Disciplinary Barracks*, 13 F.4th 1150, 1154-55 n.5, 1157 (10th Cir. 2021) (quoting *In re North*, 62 F.3d at 1437) (finding that "not every acceptance of a pardon constitutes a confession of guilt" but citing with approval cases finding that, under *Burdick*, "acceptance of a pardon does *not* erase guilt" (emphasis in original)).

itself implies his guilt, it is clear that the presidential pardon in no way "indicate[s] [Plaintiff's] innocence" and thus the pardon does not satisfy the favorable termination requirement. *Brown*, 503 A.2d at 1246; *Richards v. United States*, 192 F.2d 602, 607 (D.C. Cir. 1951) (finding that "a pardon does not 'blot out guilt' in any literal or uncritical sense"); *In re North*, 62 F.3d at 1437 (holding that "a pardon does not blot out probable cause of guilt").

Accordingly, Plaintiff does not—and cannot—plausibly allege that the criminal prosecution terminated in his favor and the malicious prosecution claim should be dismissed.

### B. Plaintiff fails to state a claim for abuse of process.

Under District of Columbia law, a Plaintiff must plead two elements for an abuse of process claim: "(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." *Hall v. Hollywood Credit Clothing Co.*, 147 A.2d 866, 868 (D.C. 1959). Here, Plaintiff's abuse of process claim must be dismissed because he fails to plausibly allege the second element of an abuse of process claim for two reasons.[19] First, Plaintiff fails to sufficiently allege that investigative or law enforcement officers used process—*i.e.*, the judicial machinery—against him. Second, even assuming

---

[19] Given the procedural posture of this case, for purposes of the instant Motion only, the United States does not concede, but is not challenging the sufficiency of Plaintiff's allegations regarding an ulterior motive.

Plaintiff had adequately alleged a use of process, he fails to plausibly allege that any such process was used for an improper purpose after issuance.

### 1. Plaintiff fails to plausibly allege a law enforcement or investigative officer used "process" against him.

In the District of Columbia, to establish an abuse of process, the plaintiff must allege the improper use "of the judicial machinery." *Thorp v. District of Columbia*, 319 F. Supp. 3d 1, 22 (D.D.C. 2018) (quoting *Barquis v. Merchants Collection Ass'n*, 7 Cal. 3d 94, 104 n.4 (Cal. 1972)); *see also Bown v. Hamilton*, 601 A.2d 1074, 1079 (D.C. 1992) (noting an abuse of process tort "lies where the *legal system* has been used to accomplish some end which is without the regular purview of the process") (emphasis added); *Spiller v. District of Columbia*, 362 F. Supp.3d 1, 7 (D.D.C. 2019) (noting the tort of abuse of process covers use of the judicial process).  "[W]arrantless arrests and detentions effectuated entirely *independent* of the judicial process do not support an abuse of process tort." *Spiller*, 362 F. Supp. 3d at 7 (citing *McCarthy v. Kleindienst*, 741 F.2d 1406, 1414 n.9 (D.C. Cir. 1984)).  Therefore, to plausibly allege an abuse of process claim, Plaintiff must allege that the FBI agents—the only law enforcement or investigative officers identified in the Complaint—utilized the "judicial machinery" against him.  *Thorp*, 319 F. Supp. 3d at 22; *see also supra* Argument, § II (noting that, pursuant to the law enforcement proviso, sovereign immunity is waived for an abuse of process claim only to the extent the claim is based on the acts or omissions of investigative or law enforcement officers).

Plaintiff comes nowhere close to meeting this threshold.  The Complaint references only two instances in which the judicial machinery was utilized, and neither can serve as the basis for his claim.[20]  First, the Complaint references Plaintiff's criminal prosecution.  *See, e.g.*, ECF No. 1 ¶ 110.  But these legal proceedings were handled by SCO prosecutors whose conduct cannot serve as the basis for an abuse of process charge.  *See, e.g.,* ECF No. 1 ¶¶ 110 (stating the SCO filed a criminal information against Plaintiff); 123 (stating that "[t]he SCO prosecuted [Plaintiff]"); *see also Moore*, 213 F. 3d at 708, 713 n.7 (finding conduct of a Federal prosecutor cannot serve as basis for an abuse of process claim).  While the Complaint vaguely suggests the FBI agents participated in Plaintiff's prosecution, the allegations are wholly conclusory and are not supported by any factual detail.  *See* ECF No. 1 ¶¶ 120, 126; *see also Iqbal*, 556 U.S. at 681 (noting conclusory allegations are not entitled to an assumption of truth).  The Complaint provides no insight into how the individuals were involved in the prosecution and it does not allege that the FBI agents exercised any control over prosecutorial acts such as filing charges or negotiating Plaintiff's plea bargain.  *See generally* ECF No. 1.  One cannot reasonably infer that the FBI agents used

---

[20] Plaintiff's abuse of process claim fails to identify either (1) the alleged "wrongdoers" whose conduct is at issue, or (2) the specific "process" that serves as the basis for the claim.  He avers only that "Defendant attempted to utilize their [*sic*] ability to bring process against [Plaintiff's] son to coerce [Plaintiff] into pleading guilty to a Section 1001 charge" and "further sought to use process against [Plaintiff] to coerce [Plaintiff] into testifying against other members of the Trump administration or the Trump campaign . . . despite the process . . . having no legitimate basis."  ECF No. 1 ¶ 159.

process against Plaintiff through the filing of the criminal information or guilty plea proceedings.  Thus, this "process" cannot serve as a basis for Plaintiff's claim because it was handled entirely by prosecutors.

The only other allegations addressing use of the "judicial machinery" are those involving the FISC's issuance of four FISA warrants during the Crossfire Hurricane investigation.  *See, e.g.,* ECF No. 1 at ¶ 33.  While these allegations arguably involve the conduct of law enforcement or investigative officers, the FISA warrants cannot serve as a basis for Plaintiff's claim because there is no indication the "process" was used against Plaintiff.  *See Scott v. District of Columbia,* 101 F.3d 748, 755-76 (D.C. Cir. 1996) (noting an abuse of process claim exists where the defendant compels the party against whom the process is used to do some collateral thing).  On this point, the Complaint claims only that the warrants were procured to surveil "persons in the Trump presidential campaign." ECF No. 1 ¶ 33.   But this vague allegation does not allow one to reasonably conclude the warrants were procured to surveil Plaintiff or that the warrants were used against Plaintiff in any manner.  *See generally* ECF No. 1.  This is especially true given that the OIG Report reflects that the FISA warrants targeted Carter Page and there was no information indicating FISA surveillance was considered for Plaintiff.  *See* OIG Report at v-xii.  Because Plaintiff does not plausibly allege the FISA warrants were initiated for use against him, they cannot serve as the "process" in his abuse of process claim.

Finally, to the extent Plaintiff attempts to argue the opening of the Crossfire Hurricane and Razor investigations as well as the FBI's acts during those investigations (including acts during the January 24, 2017 interview) constitute process, he is incorrect.  Acts effectuated "entirely independent of the judicial process do not support an abuse of process claim." *Spiller*, 362 F. Supp. 3d at 7 (citing *McCarthy*, 741 F.2d 1414 n.9).  "The rationale for that rule is self-evident: [t]he abuse of process tort covers the improper use of the judicial machinery." *Spiller*, 362 F. Supp. 3d at 7 (internal quotations omitted).  Here, other than the two instances noted above—which cannot serve as the basis for Plaintiff's claim—Plaintiff has not alleged any further use of the judicial process.

Because Plaintiff fails to plausibly allege that law enforcement or investigative officers used process against him, Plaintiff fails to state a claim for abuse of process and the claim should be dismissed outright.

### 2. Plaintiff fails to plausibly allege the judicial process was used to accomplish an end not intended by law.

Even assuming Plaintiff adequately alleges that investigative or law enforcement officers used process against him, the claim fails because Plaintiff does not plausibly allege the unspecified "wrongdoers" used the legal system to accomplish an end outside the "regular purview of the process." *Scott,* 101 F.3d at 755.

Distinct from a malicious prosecution claim, this cause of action "lies in the improper use after issuance." *Hall*, 147 A.2d at 868.  "[T]he fact that a person

acts spitefully, maliciously, or with an ulterior motive in instituting a legal proceeding is insufficient to establish abuse of process." *Scott,* 101 F.3d at 755. Rather, the tort also requires "a 'perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge.'" *Scott*, 101 F.3d at 755 (quoting *Bown*, 601 A.2d at 1080); *see also Rockwell Capital Partners, Inc. v. CD Int'l Enters., Inc.*, 311 F. Supp. 3d 52, 56 (D.D.C. 2018) (noting the perversion of the judicial process must actually be achieved).  For instance, "[t]he usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it." *Scott*, 101 F.3d at 755-56 (internal quotations omitted).

Plaintiff's abuse of process claim sets forth two affirmative acts that he alleges constitute an abuse of process.  *See* ECF No. 1 ¶ 159.  He first alleges that unspecified "wrongdoers" abused process by attempting "to utilize their ability to bring process against [Plaintiff's] son to coerce [Plaintiff] into pleading guilty to a Section 1001 charge." ECF No. 1 at ¶ 159.  As an initial matter, this allegation is insufficient to support an abuse of process claim because it is entirely conclusory and unsupported by any well-pleaded facts, such as who made the alleged threat and what specifically was threatened.  *See Iqbal*, 556 U.S. at 681 (noting allegations that are unsupported by well-pleaded facts are conclusory and not entitled to an assumption of truth).  Moreover, even if Plaintiff's unsubstantiated allegation is accepted as true, it is legally insufficient to establish a claim for abuse of process because a threat of process does not constitute actual "use of the judicial

machinery." *Thorp*, 319 F. Supp. 3d at 22.  Also, any such threat necessarily was made prior to—and not after—the use of any "process" against Plaintiff as he alleges the threat was used in an attempt to compel his guilty plea.  *See* Criminal Case, ECF Nos. 1, 3-4 (indicating that the Criminal Information—the first use of "process" alleged—was filed on November 30, 2017, and that the Plea Agreement was signed the same day); *see also Kopff v. World Rsch. Grp.*, LLC, 519 F. Supp. 2d 97, 99 (D.D.C. 2007) (noting "the gist of the action lies in the improper use [of process] after issuance" and not before) (quoting *Hall*, 147 A.2d at 868).

Plaintiff next alleges that unspecified "wrongdoers" sought to use process to coerce Plaintiff into testifying against other members of the Trump campaign or the Trump administration.  *See id.* At ¶ 159.  This allegation fails for two reasons.  First, the allegation is impermissibly vague and conclusory.  *See Iqbal*, 556 U.S. at 678.  Plaintiff provides no details on the alleged process at issue; who allegedly engaged in the coercive conduct; when the alleged conduct took place; or whether Plaintiff testified against other members of the Trump campaign after the "issuance of process."[21]  *See* ECF No. 1 ¶ 159.  Nor can one glean this information from the remainder of the Complaint.  *See generally* ECF No. 1. Given this lack of factual detail, one cannot conclude that the unspecified

---

[21] In the Criminal Case, Plaintiff moved to extend the sentencing proceedings to provide Plaintiff with the opportunity to complete his cooperation in the matter of *United States v. Rafiekian*, Case No. 1:18-cr-00457-AJT (E.D. Va. 2018).  This matter did not involve other members of the Trump campaign and Plaintiff ultimately did not testify at the trial. *See* Criminal Case, ECF No. 151 at 11.

"wrongdoers" completed a perversion of the judicial process or achieved some illegitimate ends after process was issued.  *See Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1213 (11th Cir. 2020) (noting a complaint must provide more than conclusory allegations unsupported by well-pleaded facts).

Second, even if the Court credits Plaintiff's unsupported allegation that process was used to coerce him into testifying against members of the Trump campaign or administration, such testimony is not outside the "regular purview of" a criminal prosecution and plea agreement (the only "process" initiated against Plaintiff in the Complaint).[22]  *Bown*, 601 A.2d at 1079.  To the contrary, as this Court is undoubtedly aware, requiring a criminal defendant to testify truthfully against others as part of a plea bargain is common practice in criminal proceedings.  *See, e.g.*, *United States v. Hall*, 945 F.3d 507, 513 (D.C. Cir. 2019) (finding trial judge did not err when he allowed witnesses to be cross-examined on plea agreements with the government that provided for reduced charges in exchange for testimony); *Woods v. United States*, 987 A.2d 451, 454 (D.C. 2010) (noting D.C. courts have found that a witness may be questioned on direct examination about a plea agreement containing a promise to testify truthfully); *Felder v. United States*, 595 A.2d 974, 979 (D.C. 1991) (recognizing that a typical plea bargain includes one in which an accomplice agrees to testify in exchange

---

[22] As part of the plea agreement, the United States agreed not to charge Plaintiff with additional offenses stemming from Plaintiff's violation of the Foreign Agents Registration Act, 18 U.S.C. § 951.  *See* Criminal Case, ECF Nos. 3,4.

for a promise of a reduced sentence).  Indeed, in the Criminal Case, the parties recognized that sentencing is often delayed so that a criminal defendant may complete cooperation with the prosecution in other matters.  *See* Criminal Case, ECF No. 311 at 8 (noting the court's usual practice is to impose a sentence only after the completion of a defendant's cooperation).

Requiring one to provide truthful testimony as part of a plea agreement is not the kind of perversion of the judicial process that gives rise to an abuse of process claim.  *See Nader v. Democratic Nat.l Comm.*, 555 F. Supp. 2d 137, 161 (D.D.C. 2008) (finding no abuse of process where the act is a natural consequence of a lawsuit and too generic to serve as the predicate for an abuse of process claim).

To the extent Plaintiff alleges acquisition of the FISA warrants constitutes a basis for his claim (and it is not clear he does), these allegations similarly fail because Plaintiff has not alleged that the unspecified "wrongdoers" "used the warrants wrongfully, 'to accomplish some end which the process was not intended by law to accomplish.'" *Page,* 628 F. Supp. 3d at 132 (quoting *Hall v. Field Enters, Inc.,* 94 A.2d 479, 481 (D.C. 1953).  In fact, Carter Page—the target of the FISA warrants— previously asserted a claim for abuse of process based upon the same FISA warrants, and the DDC rejected the claim outright on a motion to dismiss finding that, like Plaintiff, Mr. Page's allegations primarily involved alleged conduct that occurred prior to the issuance of the warrants and thus could not serve as a basis for an abuse of process claim.  *See Page*, 628 F. Supp. 3d at 132; *see also* ECF No. 1 ¶¶ 30-44. Additionally, the DDC found that the remaining allegations—that the warrants

were used to surveil Mr. Page and the Trump campaign—could not suffice for an abuse of process claim because surveillance is the "ordinary purpose" of a FISA warrant and there was no indication the warrants were used unlawfully after issuance. *Page*, 628 F. Supp. 3d at 132. The same is true here. Plaintiff fails to plausibly allege any improper use of the FISA warrants "after issuance." *Hall*, 147 A.2d at 868.

For these reasons, Plaintiff has failed to state a claim for abuse of process under District of Columbia law and the abuse of process claim should be dismissed.

## IV.  PLAINTIFF'S ABUSE OF PROCESS CLAIM IS TIME-BARRED UNDER 28 U.S.C. § 2401(b)

Even if the Court finds that Plaintiff's Complaint has stated a valid claim for abuse of process, the claim is time-barred because Plaintiff presented it to the DOJ more than two years after it accrued.

Pursuant to the FTCA, a claim is untimely "unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). Generally, a cause of action accrues under the FTCA when a plaintiff becomes aware that he has suffered an injury and has sufficient information to know its cause. *Kubrick*, 444 U.S. at 120. Here, Plaintiff alleges that he submitted his administrative claim to DOJ on February 24, 2022, ECF No. 1 ¶ 152; therefore, Plaintiff's abuse of process claim is untimely if it accrued prior to February 24, 2020.

With respect to Plaintiff's allegations that unspecified "wrongdoers" threatened to bring process against his son, *see* ECF No. 1 ¶ 159, although the

Complaint provides no factual details regarding when the alleged threat occurred, it must have occurred prior to Plaintiff's guilty plea on December 1, 2017, as the threat allegedly was made to coerce Plaintiff into pleading guilty.  *See* Criminal Case, ECF No. 3 (indicating Plaintiff entered his plea of guilty on December 1, 2017).  Plaintiff cannot argue that he was unaware of the alleged threat prior to the plea because he contends that the threat of process was the catalyst for his guilty plea.  *See* ECF No. 1 ¶¶ 144, 159.  Yet, despite being aware of both the alleged harm and its cause in December 2017, Plaintiff did not bring his abuse of process claim until February 2022—over four years after the claim accrued.  Plaintiff provides no explanation for this delay.  As such, any abuse of process claim based on a threat of process to Plaintiff's son is time-barred.

With regard to Plaintiff's allegation that unspecified "wrongdoers" sought to use process to coerce Plaintiff into testifying against other members of the campaign, ECF No. 1 ¶ 159, it is clear that any such abuse of process claim accrued prior to August 30, 2019.  On that date, Plaintiff and the United States filed a Joint Status Report in the Criminal Case, in which Plaintiff acknowledged that his "cooperation is complete," and the United States agreed that Plaintiff's "cooperation ha[d] ended."  Criminal Case, ECF No. 107 at 2, 4.  Thus, any alleged attempts to coerce testimony had concluded by August 30, 2019, and Plaintiff was fully aware of the injury he allegedly sustained as a result.  Nonetheless, Plaintiff waited over two years to submit an administrative claim alleging an abuse of process and, thus, the claim is barred.

Any claim based on the FISA process is also time-barred.  Again, the Complaint provides little insight on when any alleged wrongdoing took place, but Plaintiff's own filings in the Criminal Case indicate that he was well aware of any alleged harm stemming from the FISA process by January 29, 2020.  On that date, Plaintiff filed a lengthy motion to dismiss the Criminal Case against him for egregious Government misconduct.  *See* Criminal Case, ECF No. 162.  Notably, Plaintiff argued that dismissal was appropriate based upon information contained in the OIG Report, which identified various mistakes in the Government's acquisition of FISA warrants targeting Carter Page during the Crossfire Hurricane investigation.  *See id.* at 6-16.  Because it is apparent from Plaintiff's own filings that he was aware of any alleged harm stemming from the FISA applications by January 29, 2020, at the latest, he was required to file his administrative claim before January 29, 2022.  He did not do so, and, thus, his claim is time-barred.

Accordingly, even if Plaintiff has plausibly alleged an abuse of process claim, it is time-barred pursuant to 28 U.S.C. § 2401(b) and must be dismissed.

## CONCLUSION

WHEREFORE, the United States respectfully requests that the Court grant this motion and dismiss the Complaint for failure to state a claim and/or lack of subject-matter jurisdiction.

## Local Rule 3.01(g) Certification

On July 5, 2023, the undersigned certifies that she conferred with counsel for Plaintiff by telephone regarding this motion, and counsel advised that Plaintiff opposes the relief requested in this motion.

Respectfully submitted,


BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JAMES G. TOUHEY, JR.
Director, Torts Branch

By: /s/Kristin McGrory
KRISTIN B. MCGRORY
HERMAN J. HOYING
Trial Attorneys
U.S. Department of Justice
Civil Division, Torts Branch
P.O. Box 888 Ben Franklin Station
Washington, DC 20044
Phone: 202-616-4206
Email: kristin.b.mcgrory@usdoj.gov
Attorneys for Defendant United States of
America

LACY R. HARWELL, JR.
Assistant United States Attorney
Florida Bar No. 0714623
Office of the United States Attorney
For the Middle District of Florida
400 N. Tampa St., Suite 3200
Tampa, Florida 33602
Tel. (813) 274-6000
Email: Randy.Harwell@usdoj.gov
Attorney for Defendant United States of
America

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 7, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notice of the filing to all parties of record.

<u>/s/Kristin McGrory</u>
Kristin B. McGrory
Trial Attorney