UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL T. FLYNN,

        Plaintiff,

v.

        Case No. 8:23-cv-00485-MSS-CPT

UNITED STATES OF AMERICA,

        Defendant.

**DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION
AND SUPPORTING MEMORANDUM**

The United States of America, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), moves to dismiss Plaintiff's Amended Complaint.

## PRELIMINARY STATEMENT

On November 30, 2017, the United States filed a criminal information charging Plaintiff, Lieutenant General Michael T. Flynn, with lying to federal agents during a January 24, 2017 interview in violation of 18 U.S.C. § 1001. On that same day, Plaintiff entered into a plea agreement, pursuant to which Plaintiff agreed to plead guilty to the criminal information and cooperate with other ongoing investigations. On the next day and again over a year later, Plaintiff testified under oath in open court that he was entering the plea of guilty voluntarily and of his own free will because he was, in fact, guilty. Despite these admissions, Plaintiff now asserts claims for abuse of process and malicious prosecution pursuant to the Federal Tort Claims Act ("FTCA"), alleging that various federal agencies and employees conspired to wrongfully investigate and prosecute Plaintiff based upon personal animus and political bias against Plaintiff and former president Donald J. Trump.

The Court should dismiss Plaintiff's claims for lack of jurisdiction and for failure to state a claim. First, because the United States has waived its sovereign immunity only with respect to malicious prosecution and abuse of process claims that are based upon the acts or omissions of "investigative or law enforcement officers of the United States," 28 U.S.C. § 2680(h), the Court lacks subject matter jurisdiction over Plaintiff's claims to the extent they are based upon the conduct of

the government as a whole or upon the acts and omissions of individual federal employees, such as prosecutors, who are not law enforcement or investigative officers.  Second, Plaintiff has not stated a claim for malicious prosecution because he fails to plausibly allege that (1) the criminal prosecution was procured by investigative or law enforcement officers, (2) there was no probable cause to support the charges given Plaintiff's own admissions of guilt, or (3) the criminal prosecution terminated in Plaintiff's favor given that it was dismissed as moot in light of Plaintiff's acceptance of a presidential pardon.  Third, Plaintiff fails to state a claim for abuse of process because he fails to plausibly allege either that a law enforcement or investigative officer used "process" against him or, assuming that process was used, that it was improperly used after issuance.  Finally, even if Plaintiff had sufficiently pled a claim for abuse of process, it would be barred by the statute of limitations.  Accordingly, Plaintiff's claims must be dismissed.

## CURRENT PROCEEDINGS

On March 3, 2023, Plaintiff filed the instant action asserting claims for abuse of process and malicious prosecution against the United States pursuant to the FTCA, 28 U.S.C. § 1346(b).  ECF No. 1.[1]  On July 7, 2023, the United States filed a motion to dismiss the complaint in its entirety because Plaintiff failed to plausibly allege an abuse of process or malicious prosecution claim under the FTCA—and thus the United States did not waive its sovereign immunity for either of those

_____
[1] Plaintiff submitted an administrative tort claim, which was received by the Department of Justice on March 3, 2022.  ECF No. 34 ¶ 177.

claims.  *See* ECF No. 29.  In response to the motion to dismiss, on July 28, 2023, Plaintiff filed an amended complaint modifying the allegations but continuing to assert claims for malicious prosecution and abuse of process.  *See generally* ECF No. 34.

The gravamen of Plaintiff's Amended Complaint is that agents and agencies of the United States improperly opened a counterintelligence investigation into him; conducted an interview of Plaintiff after that investigation should have been closed; and brought criminal charges against him based upon allegedly false statements made during that interview despite "knowing [Plaintiff] had not made false statements [and], that even if he did make false statements, they were unintentional and were not material to the . . . investigation."  ECF No. 34 ¶¶ 3, 129.  Plaintiff alleges that he agreed to plead guilty to a violation of 18 U.S.C. § 1001, "because [the Special Counsel's Office ("SCO")] had threatened his son with prosecution, and he was told that SCO would let his son go if he cooperated."  *Id*. ¶ 128.  Additionally, Plaintiff alleges the SCO sought to coerce Plaintiff into testifying against other members of the Trump campaign or administration.  *Id.* ¶184.

In the Amended Complaint, Plaintiff identifies the following entities and/or agents as alleged "primary wrongdoers" on behalf of the United States: the Department of Justice ("DOJ"); the Federal Bureau of Investigation ("FBI"); the SCO; former FBI Director James Comey; former FBI Deputy Director Andrew McCabe; former FBI Deputy Assistant Director ("DAD") Peter Strzok; FBI Supervisory Special Agent Joe Pientka III; and former Special Counsel Robert S.

Mueller III.  *Id*. ¶¶ 11-18.  Plaintiff requests over $50 million in compensatory damages, attorney fees, and any other relief the Court deems appropriate.  *Id*. ¶ 187.

**FACTUAL ALLEGATIONS[2]**

I.      **The FBI investigates Plaintiff's connections to the Russian government.**

Following his retirement from the U.S. Army in 2014, Plaintiff opened an international consulting business, the Flynn Intel Group, with his son.  ECF No. 34 ¶¶ 24, 125.  In February 2016, Plaintiff became a foreign policy advisor to then-presidential candidate Donald J. Trump.  *Id*. ¶ 25.

On July 31, 2016, the FBI opened a counterintelligence investigation, known as "Crossfire Hurricane," to determine whether individuals associated with the Trump campaign were, wittingly or unwittingly, coordinating with the Russian Government to influence the 2016 presidential elections.  *Id*. ¶ 26; OIG Report at 50-53.[3]  Based upon initial analysis indicating potential links with Russia, the FBI opened sub-investigations to focus on four individuals connected to the

---

[2]  For purposes of this motion, the United States relies on the facts alleged in the Amended Complaint, which are assumed to be true solely for the purposes of the motion to dismiss, and materials incorporated into the Amended Complaint by reference or of which judicial notice may be taken.

[3]  The Amended Complaint expressly cites to—and derives numerous allegations from—a report issued by the Department of Justice's Office of Inspector General, entitled, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* ("OIG Report"), available at https://www.oversight.gov/sites/default/files/oig-reports/o20012.pdf (issued on December 9, 2019).  *See, e.g.*, ECF No. 34 ¶¶ 26-27, 33-35, 38, 40, 41.  Because the OIG Report is incorporated by reference in—and central to—the allegations in the Amended Complaint and its authenticity cannot be questioned, the Court may consider it in resolving the motion to dismiss.  *See infra* Argument, § I.

4 of 52

Trump campaign: Plaintiff, Carter Page, George Papadopoulos, and Paul Manafort.[4] *See* ECF No. 34 ¶¶ 32, 45; *see also* OIG Report at 1-2, 59. On August 16, 2016, the FBI initiated the sub-investigation into Plaintiff, known as "Crossfire Razor," to determine whether Plaintiff "was involved in activity on behalf of the Russian Federation which may constitute a threat to national security." ECF No. 34 ¶ 32.

While the Crossfire Razor investigation was ongoing, Donald Trump won the 2016 Presidential election, and, in November 2016, Plaintiff accepted President-elect Trump's offer to be the National Security Advisor. *See id*. ¶¶ 69-70.

According to the Amended Complaint, as early as November 8, 2016, some of the FBI agents assigned to Crossfire Razor were eager to close the investigation and the Amended Complaint specifically alleges that the lead FBI agent on the investigation was unable to find any evidence of criminal activity and repeatedly requested permission to interview Plaintiff and close the Crossfire Razor investigation if no derogatory information was obtained. *Id*. ¶¶ 57-58. According to the Amended Complaint, in late December 2016, the lead agent

---

[4] A large portion of Plaintiff's Amended Complaint addresses alleged misconduct in connection with the sub-investigation of Carter Page, including four Foreign Intelligence Surveillance Act ("FISA") warrants obtained from the Foreign Intelligence Surveillance Court ("FISC") to surveil Mr. Page, not Plaintiff. *See, e.g.*, ECF No. 34 ¶¶ 39-43; OIG Report at v-xiii (indicating Mr. Page was the target of the four FISC warrants); *id*. at vi (noting there was no indication FISA surveillance was considered for Plaintiff). The alleged misconduct with regard to Mr. Page, who brought a separate lawsuit, thus appears irrelevant to Plaintiff's claims. *See Page v. Comey*, 628 F. Supp. 3d 103, 131-32 (D.D.C. 2022) (dismissing Carter Page's FTCA abuse of process claim based upon four FISC warrants).

was given permission to draft a case closing communication without conducting an interview of Plaintiff.  *Id.* ¶¶ 58, 60.  The draft case closing communication indicated that the FBI's investigation had primarily checked known databases for derogatory information on Plaintiff but did not identify any.  ECF No. 34-3 at 1-3.  The communication further noted that the FBI would consider reopening the investigation if new information was obtained regarding Plaintiff's activities.  *Id.*

Sometime prior to January 4, 2017, at a time when the case closing communication had been drafted but not yet implemented, FBI senior staff obtained a transcript of a December 28, 2016 call between Plaintiff and then-Russian Ambassador Sergey Kislyak, during which Plaintiff sought to persuade Russia not to retaliate against the United States following President Obama's expulsion of Russian diplomats.  ECF No. 34 ¶¶ 62, 66.  Plaintiff alleges that, although it is unclear how the FBI obtained the transcript, the FBI knew or should have known that Plaintiff's communications with the Russian Ambassador were legitimate.  *Id.* ¶¶ 62, 63.  On January 4, 2017, upon determining that the draft closing communication had not yet been implemented, DAD Strzok directed that the Crossfire Razor investigation should remain open.  *Id.* ¶¶ 65, 68.

Subsequently, between January 5 and 10, 2017, FBI Director Comey met with several Executive Office of the President ("EOP") and DOJ officials at the White House to discuss Plaintiff's calls with Ambassador Kislyak and the Crossfire Razor investigation.  *Id.* ¶¶ 80-81, 83, 87.  In particular, the parties

discussed whether Plaintiff violated the Logan Act, 18 U.S.C. § 953, and whether he could be prosecuted under that statute. *Id.* ¶¶ 87, 89. Ultimately, DOJ officials indicated that a prosecution under the Logan Act would be unlikely to succeed. *Id.* ¶ 89.

Around this same time, the Washington Post published an article addressing Plaintiff's calls with Ambassador Kislyak. *Id.* ¶ 88. The article noted that the Trump transition team confirmed Plaintiff spoke with the Ambassador but indicated that the calls were made so Plaintiff could offer his condolences following several tragic accidents and insisted that the topic of sanctions was not addressed during the calls. *See* David Ignatius, *Why did Obama dawdle on Russia's hacking?*, Washington Post, January 12, 2017. Based on this and other articles, EOP, DOJ, and FBI officials had concerns about what information could be shared with the incoming Trump administration regarding Plaintiff's calls with the Russian Ambassador and the FBI sought to interview Plaintiff about the calls. *See* ECF No. 34 ¶¶ 82, 90-92.

According to the Amended Complaint, FBI Director Comey determined that the FBI would interview Plaintiff without notifying either DOJ leadership or the White House Counsel's Office as it usually would do. *Id.* ¶¶ 93, 99. On January 24, 2017, Deputy Director McCabe asked Plaintiff to participate in an "informal meeting" with FBI agents, "just to put the Kislyak calls being discussed in the press to bed." *Id.* ¶ 100. Deputy Director McCabe informed Plaintiff that, if he wished to have anyone present, including White House Counsel, the issue would need to be

raised with DOJ.  *Id.*  Plaintiff voluntarily agreed to meet with FBI agents in his office at the White House that same day.  *See id.* ¶¶ 100-01.

During the interview, DAD Strzok and Special Agent Pientka, questioned Plaintiff about the content and purpose of the calls, but did not confront Plaintiff with the transcripts or inform Plaintiff that providing false statements during the interview could lead to criminal charges.  *See id.* ¶ 100-01, 103, 107.  The agents' interview notes reflect that there were no obvious signs of deception and both agents had the impression that Plaintiff was not lying or did not think he was lying during the interview.  *Id.* ¶¶ 112-13.  According to the Complaint, the White House was briefed on supposed misstatements Plaintiff made to the FBI during the January 24 interview and, as a result, on February 13, 2017, Plaintiff was forced to resign from his position as the National Security Advisor.  *Id.* ¶ 110.

## II.    The Special Counsel's Office charges Plaintiff with making false statements during the January 24, 2017 interview in violation of 18 U.S.C. § 1001(a)(2), and Plaintiff agrees to plead guilty to the charge.

On May 17, 2017, Robert S. Mueller III was appointed to serve as Special Counsel to oversee the investigation into Russian interference in the 2016 election.  *Id.* ¶ 116.  As a result, the SCO "assumed the investigation and took over the DOJ's role in working with the FBI investigative teams assigned to the relevant investigations," including Crossfire Razor.[5]  *Id.* ¶¶ 116, 119.  According

---

[5]  In addition, the SCO took over responsibility for a case involving Plaintiff's filing of paperwork on behalf of the Flynn Intel Group pursuant to the Foreign Agent Registration Act ("FARA").  ECF No. 34. ¶¶ 125, 127.

to the Amended Complaint, from the beginning of the SCO's investigation, the lead FBI agent provided his assessment that he did not believe there was evidence of a crime. *Id.* ¶119.

On November 30, 2017, the SCO filed a criminal information in the District Court for the District of Columbia ("DDC") charging Plaintiff with knowingly and willfully making materially false statements concerning his telephone calls with the Russian Ambassador during the January 24, 2017 interview in violation of 18 U.S.C. § 1001(a)(2). *Id.* ¶ 124; *see also United States of America v. Flynn*, No. 1:17-cr-00232-EGS (D.D.C.) (the "Criminal Case"), ECF No. 1.[6]  On the same day the criminal information was filed, Plaintiff, who was represented by counsel, signed a Plea Agreement and Statement of Offense in which he agreed to plead guilty to the charged offense and admitted under penalty of perjury to the factual basis for the 18 U.S.C. § 1001 violation. *See* Criminal Case, ECF Nos. 3, 4.  As part of the plea agreement, the United States agreed not to charge Plaintiff with additional offenses stemming from Plaintiff's violation of the FARA, 18 U.S.C. § 951. *See* Criminal

---

[6] The Court may take judicial notice of records from the Criminal Case because they are not subject to reasonable dispute and can be determined from the DDC electronic filing system—a source whose accuracy cannot reasonably be questioned. *Grayson v. Warden, Comm'r, Alabama Doc*, 869 F.3d 1204, 1224-25 (11th Cir. 2017) (finding that court "may take judicial notice of an adjudicative fact that is both 'not subject to reasonable dispute' and . . . 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned'" (quoting Fed. R. Evid. 201(b)) (footnotes omitted)).  The United States requests only that the Court take judicial notice of the filings and their contents, recognizing the Court "cannot take judicial notice of the factual findings of another court, or of the truth of the matters asserted in the filings." *Hurry Fam. Revocable Tr. v. Frankel*, No. 8:18-CV-2869-CEH-CPT, 2023 WL 23805, at *4 (M.D. Fla. Jan. 3, 2023).

Case, ECF Nos. 3,4. Additionally, the plea agreement reflects that Plaintiff agreed to cooperate with law enforcement authorities "in any and all matters as to which [the Government] deems the cooperation relevant[,]" and to "testify fully, completely and truthfully . . . [in any] other court proceedings" in which his testimony was deemed relevant. Criminal Case, ECF No. 3 at 5.

On December 1, 2017, the judge in the Criminal Case conducted a Plea Hearing at which Plaintiff testified under oath that (1) the factual summary supporting a finding that Plaintiff violated 18 U.S.C. § 1001 during the January 24, 2017 interview was true and correct; (2) Plaintiff was entering a plea of guilty voluntarily and of his own free will; and (3) Plaintiff was, in fact, guilty of violating 18 U.S.C. § 1001. *See* Criminal Case, ECF No. 16. On December 18, 2018, the judge in the Criminal Case conducted an additional plea colloquy because Plaintiff's sentencing memorandum "raised issues that may affect or call into question his guilty plea." Criminal Case, ECF No. 103 at 7. During that colloquy, Plaintiff again testified under oath that he was pleading guilty to a violation of 18 U.S.C. § 1001 because he was, in fact, guilty of that offense. *Id.* at 15:23-16:7. The Court accepted Plaintiff's guilty plea but agreed to postpone sentencing to allow Plaintiff to continue cooperating with the Government in other matters. *Id.* at 47-48.

On January 14, 2020, prior to being sentenced in the Criminal Case, Plaintiff filed a motion seeking leave to withdraw his guilty plea. Criminal Case, ECF No. 151. He then filed a motion, on January 29, 2020, to dismiss the Criminal Case for egregious government misconduct and in the interest of justice. Criminal Case, ECF

No. 162.  Plaintiff argued, among other things, that the OIG Report, released on December 9, 2019, proved that Plaintiff's investigation and prosecution were baseless and only resulted from political bias.  *See id*. at 6-16.

In or around February 2020, then-Attorney General William Barr appointed several prosecutors to review the Criminal Case, and, at the conclusion of their review, they recommended dismissal of the Criminal Case against Plaintiff.  ECF No. 34. ¶¶ 147-48.  On May 7, 2020, then-United States Attorney for the District of Columbia, Timothy Shea, who had not previously appeared in the case, moved to dismiss the criminal information.  *Id.* ¶¶ 148, 151; ECF No. 34-4; Criminal Case, ECF No. 198.  U.S. Attorney Shea argued that dismissal was warranted because the Government believed it could not prove "to a jury beyond a reasonable doubt" that: (1) Plaintiff's false statements to FBI agents were "material" to any FBI investigation; and (2) Plaintiff knowingly and willfully made false statements during the interview.  ECF 34-4 at 17-18.  U.S. District Court Judge Emmet Sullivan did not immediately grant the motion and, instead, on May 13, 2020, appointed an *amicus curiae* "to present arguments in opposition to the government's Motion to Dismiss." Criminal Case, ECF No. 205 at 1; *see also* ECF No. 34 ¶ 162.

On November 25, 2020, prior to Judge Sullivan ruling on the motion to withdraw and motion to dismiss, President Trump granted Plaintiff a pardon.  The presidential pardon provided Plaintiff "a full and unconditional pardon" for the charge of making false statements to federal investigators, as charged in the criminal information, and all possible offenses within the investigatory authority or

jurisdiction of Special Counsel Mueller.  Criminal Case, ECF No. 308-1.  On the same day the pardon was issued, the White House Press Secretary released a statement addressing the pardon, stating that Plaintiff "should not require a pardon [because h]e is an innocent man."  ECF No. 34 ¶ 163.[7]  However, the text of the executive pardon did not indicate that the pardon was based on innocence.  *See* Criminal Case, ECF No. 308-1.

On November 30, 2020, the United States Attorney's Office filed a notice of the executive pardon and consent motion to dismiss, arguing that the Criminal Case was moot due to Plaintiff's acceptance of the pardon.  Criminal Case, ECF No. 308.  On December 8, 2020, Judge Sullivan issued an opinion dismissing the Criminal Case as moot.  Criminal Case, ECF No. 311.[8]  In doing so, Judge Sullivan addressed the arguments for dismissal raised in the still pending motion to dismiss filed by U.S. Attorney Shea.  *Id.* at 28-40.  Judge Sullivan first stated that the motion to dismiss appeared pretextual given the surrounding circumstances, including Plaintiff's prior position as an advisor to President Trump and President Trump's continued interest in the criminal case.  *Id*. at 28-29.  Judge Sullivan then commented that the motion to

---

[7] *See* Statement from the Press Secretary Regarding Executive Grant of Clemency for General Michael T. Flynn (Nov. 25, 2020), *available at* https://trumpwhitehouse.archives.gov/briefings-statements/statement-press-secretary-regarding-executive-grant-clemency-general-michael-t-flynn/.

[8] Because Judge Sullivan's opinion is referenced in—and central to—Plaintiff's Amended Complaint, ECF No. 34 ¶¶ 165-67, it may be considered by the Court in resolving this motion to dismiss.  *See Hodge v. Orlando Utilities Comm'n*, No. 609-CV-1059-ORL-19DAB, 2009 WL 5067758, at *3 (M.D. Fla. Dec. 15, 2009); *infra* Argument, § I.

dismiss relied upon a new, "more circumscribed" definition of "materiality," without offering any comprehensible reasoning for shifting to the "highly-constrained interpretation of materiality." *Id.* at 30, 32. Judge Sullivan then reviewed the record evidence and found the motion to dismiss did not undertake "a considered judgment" when determining that "falsity" could not be proven beyond a reasonable doubt. *Id.* at 38. Judge Sullivan thus suggested that the motion to dismiss "present[ed] a close question," but refrained from ruling on the merits and denied the motion as moot "in view of the President's decision to pardon" Plaintiff and Plaintiff's acceptance of the pardon. *Id.* at 38.

## ARGUMENT

### I.   LEGAL STANDARDS

In any suit in which the United States is a defendant, there must be a waiver of sovereign immunity, a fundamental prerequisite to the Court's subject matter jurisdiction. *See United States v. Mitchell,* 463 U.S. 206, 212 (1983). The plaintiff bears the burden of establishing jurisdiction and, thus, an explicit waiver of sovereign immunity. *Ishler v. IRS*, 237 F. App'x 394, 398 (11th Cir. 2007) (citing *Sweet Pea Marine, Ltd. V. APJ Marine, Inc.*, 411 F.3d 1242, 1248 n.2 (11th Cir. 2005)).

Motions challenging subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) come in two forms: a "facial attack" and a "factual attack." *Aldabbagh v. Sec'y of State*, No. 6:21-cv-532-GAP-EJK, 2021 WL 6298664, at *1 (M.D. Fla. Oct. 5, 2021) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.

1990)).  Where, as here, a defendant makes a facial challenge, the court considers whether the allegations in the complaint sufficiently allege a basis for subject matter jurisdiction.  *Id.* (citing *Lawrence*, 919 F.2d at 1529).  In considering a facial attack, the Court may consider material that is part of the pleadings, subject to judicial notice, or included in any affidavits or attachments to the pleadings.  *See Mulhall v. UNITE HERE Loc.* 355, 618 F.3d 1279, 1289 n.10 (11th Cir. 2010).

A court may also dismiss a claim as insufficient to state a claim for relief. *See* Fed. R. Civ. P. 12(b)(6).  In ruling on a motion under Rule 12(b)(6), the Court considers only "the complaint, its attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Hanshaw v. Veterans & Medicaid Plan. Grp., PLLC*, No. 5:17-CV-410-OC-41PRL, 2019 WL 3854986, at *1 (M.D. Fla. Mar. 28, 2019) (quoting *Tellabs, Inc.*, *v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007)).  "[T]he court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff."  *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). Nonetheless, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).  A plaintiff's obligation to provide the grounds for entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 680

(2009).

While a plaintiff's failure to state a claim under Rule 12(b)(6) does not usually deprive a federal court of subject matter jurisdiction—"in the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional." *Brownback v. King*, 141 S. Ct. 740, 749 (2021). Thus, if a plaintiff fails to plausibly allege the elements of an FTCA claim under 28 U.S.C. § 1346(b)(1), it constitutes both a failure to state a claim under Rule 12(b)(6) and also deprives the court of subject matter jurisdiction over the claim. *Id.*

## II. PLAINTIFF'S CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY INSOFAR AS THEY ARE BASED ON THE CONDUCT OF ENTITIES OR INDIVIDUAL EMPLOYEES WHO ARE NOT "INVESTIGATIVE OR LAW ENFORCEMENT OFFICERS."

Absent an express and unequivocal waiver, sovereign immunity shields the United States from suit. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "Sovereign immunity is jurisdictional in nature" and the terms of the United States' consent to be sued define the Court's jurisdiction to entertain the suit. *Id.* Here, Plaintiff brings his claims pursuant to the FTCA, which provides a limited waiver of sovereign immunity for certain tort claims "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The waiver, however, is subject to certain exceptions set forth in 28 U.S.C. § 2680.

One such exception is for certain enumerated torts. *See* 28 U.S.C. § 2680(h). Section 2680(h) provides that the FTCA does not waive sovereign immunity for

claims arising out of "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contract rights." 28 U.S.C. § 2680(h). Under the so-called "law enforcement proviso," however, sovereign immunity is waived as to claims arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, and abuse of process when the claim is based on the "acts or omissions of investigative or law enforcement officers of the United States Government." *Id.* The proviso defines "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.* Thus, while the government retains sovereign immunity as to most intentional torts, its sovereign immunity is waived with respect to claims for malicious prosecution and abuse of process if, but only if, the tort was committed by "investigative or law enforcement officers of the United States Government." *Id.* As the Eleventh Circuit has explained, "[t]he law enforcement proviso is by its terms limited to 'acts or omissions of investigative or law enforcement officers.'" *Metz v. United States*, 788 F.2d 1528, 1532 (11th Cir. 1986) (quoting 28 U.S.C. § 2680(h)); *see also Moore v. United States*, 213 F.3d 705, 708, 710, 713 n.7 (D.C. Cir. 2000) (finding abuse of process and malicious prosecution claims can only arise from conduct of law enforcement or investigative officers).

Here, Plaintiff identifies FBI, DOJ, the SCO, and Special Counsel Mueller as "primary wrongdoers" in the Amended Complaint, but he fails to plausibly allege that these alleged wrongdoers are investigative or law enforcement officers whose

conduct may serve as the basis for his claims.[9]  ECF No. 34 ¶¶ 11, 12, 13, 18.

Although the Amended Complaint contends that FBI, DOJ, and the SCO are

"investigative and law enforcement bod[ies]" because they allegedly have "the

power to execute search warrants, seize evidence, and make arrests for violations

of federal law," *id.* ¶¶ 11-13, liability under the FTCA must be premised upon the

conduct of specific employees and may not be premised upon the conduct of the

government (or one of its agencies) as a whole.  *See* 28 U.S.C. § 1346(b)(1)

(providing jurisdiction for injuries "caused by the negligent or wrongful act or

omission of any *employee* . . . under circumstances where the United States, if a

private *person*, would be liable") (emphasis added).  Because "the FTCA's

sovereign immunity waiver applies only to the negligent acts or omissions of

*individuals*, not to artificial entities . . . , a cognizable FTCA claim must be

predicated on the tortious misconduct of individual government employees,

rather than on alleged wrongdoing by the United States or its agencies writ

large."  *F.R. v. United States*, No. CV-21-00339-PHX-DLR, 2022 WL 2905040, at

---

[9] Plaintiff also identifies FBI Director Comey, FBI Deputy Director McCabe, FBI DAD Strzok, and FBI Special Agent Pientka (collectively referred to herein as the "FBI agents") as "primary wrongdoers."  ECF No. 34 ¶¶ 14-17.  The FBI agents are the only "primary wrongdoers" identified in the Amended Complaint who are authorized to conduct searches, seize evidence, and/or make arrests.  *See* 18 U.S.C. §§ 3052, 3107.  Thus, these are the only alleged "primary wrongdoers" who qualify as investigative or law enforcement officers pursuant to the FTCA and the only individuals whose acts and omissions may serve as the basis for Plaintiff's malicious prosecution and abuse of process claims.  *See* 28 U.S.C. § 2680(h); *Metz*, 788 F.2d at 1532.  However, for the reasons explained below, Plaintiff's claims premised upon the conduct of the FBI agents fail because Plaintiff does not plausibly allege that his criminal prosecution was procured by the FBI Agents or that the FBI Agents used the "judicial machinery" against him.  *See infra* Argument, §§ II.A.1, II.B.1.

*2 (D. Ariz. July 22, 2022) (emphasis in original); *see also Means v. United States*, 176 F.3d 1376, 1379 (11th Cir. 1999) ("The alleged tortfeasor's status as an 'employee of the government' is the *sine qua non* of liability under the FTCA."). The law enforcement proviso thus waives the United States' sovereign immunity only for the "acts or omissions of investigative or law enforcement *officers*"—not for "investigative or law enforcement *bodies"* as alleged in the Amended Complaint.

Accordingly, to plausibly allege an abuse of process or malicious prosecution claim under the law enforcement proviso, Plaintiff must allege the acts or omissions of identifiable investigative or law enforcement officers.  *See Bonilla v. United States*, 652 F. App'x 885, 890 (11th Cir. 2016) (affirming dismissal where complaint "alleg[ed] misconduct by [a federal prosecutor] and the United States in general, but contain[ed] very few allegations concerning the actual conduct of . . . federal law enforcement officers" and refusing to "speculate that [the] allegations concerning the 'United States' and 'U.S. authorities' refer to the actions of . . . federal law enforcement officials").[10]  With the exception of the FBI agents and Special Counsel Mueller, Plaintiff fails to

---

[10] *See also Urmancheev v. Immigr. & Customs Enf't Health Servs. Corps*, No. 22CV0762-CAB (MSB), 2022 WL 17541026, at *4 (S.D. Cal. Dec. 8, 2022) (finding that "FTCA does not apply to . . . generalized theories of negligence brought against the employees of an institution as a whole"); *Carrero v. Farrelly*, No. JKB-16-3939, 2018 WL 1761957 at *4-5 (D. Md. Apr. 12, 2018) (finding allegations insufficient where plaintiff "summarily refer[red] to DHS officials as 'law enforcement officials'" but failed to support that "conclusory allegation"  with "any specific facts indicating why [they] qualify as 'investigative or law enforcement officers'").

Case 8:23-cv-00485-MSS-CPT   Document 38   Filed 09/15/23   Page 20 of 53 PageID 388

identify any employees within FBI, DOJ, or the SCO who are alleged to be wrongdoers.

Instead, Plaintiff contends that "[r]eferences to any actions taken by [FBI/DOJ/the SCO] . . . encompass [their] officials, appointees, employees, agents, and/or contractors, both known and unknown to Plaintiff."  ECF No. 34 ¶¶ 11-13.  Such an overbroad allegation—capturing the conduct of all employees and agents regardless of job position—clearly is insufficient to plausibly allege that the responsible FBI, DOJ and/or SCO employees were investigative or law enforcement officers.  Indeed, the allegation expressly encompasses the actions of contractors, whose actions and omissions cannot serve as the basis for FTCA liability even outside of the context of the law enforcement proviso.  *See* 28 U.S.C. § 2671 (defining "federal agency" for purposes of the FTCA to exclude "any contractor with the United States"); *Phillips v. United States*, 956 F.2d 1071, 1077 (11th Cir. 1992) (finding that "the United States may not be held derivatively or vicariously liable for the acts of independent contractors").

To the extent Plaintiff's claims are—as they appear to be—premised upon the conduct of DOJ and SCO prosecutors, including Special Counsel Mueller,[11] Plaintiff does not (and cannot) plausibly allege that such prosecutors are investigative or law

---

[11] *See, e.g.*, ECF No. 34 ¶¶ 18 (alleging that Special Counsel Mueller was "responsible for . . . overseeing and approving the filing of the criminal information against [Plaintiff]"); 119 (alleging that SCO prosecutor Jean Rhee dismissed innocuous explanations of the evidence and had "an agenda"); 120 (alleging that SCO attorneys "push[ed] for legal process").

enforcement officers—*i.e.*, that they are "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). The law is well established that federal prosecutors, including the Special Counsel, are not "investigative of law enforcement officers" within the meaning of the law enforcement proviso and thus the FTCA does not waive sovereign immunity for malicious prosecution or abuse of process claims based on the acts or omissions of prosecutors. *See, e.g., Moore*, 213 F. 3d at 708, 710, 713 n.7; *Corsi v. Mueller*, 422 F. Supp. 3d 51, 74 (D.D.C. 2019) (the "law is clear that [the Special Counsel] is not an investigative officer as defined by § 2680(h)"); *Yacubian v. United States*, 750 F.3d 100, 108 (1st Cir. 2014) ("It is undisputed here that the actions of federal prosecutors are outside of the ambit of § 2680(h)"); *Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994) (finding the FTCA does not authorize suits for intentional torts based on the actions of Government prosecutors); *Bonilla*, 652 Fed. App'x. at 890 (finding that prosecutors do not qualify as investigative or law enforcement officers under the FTCA). Nor may Plaintiff base his malicious prosecution or abuse of process claims on allegations that federal prosecutors (or other employees who are not themselves investigative or law enforcement officers) used investigative or law enforcement officers to carry out a tort. The Eleventh Circuit has expressly rejected this theory of liability, holding that the law enforcement proviso "cannot be expanded to include governmental actors who procure law enforcement actions, but who are themselves not law enforcement officers." *Metz*, 788 F.2d at

20 of 52

1532.

In sum, Plaintiff's claims for malicious prosecution and abuse of process are barred by sovereign immunity to the extent they are based upon either the conduct of FBI, DOJ, or the SCO writ large or the acts or omissions of federal prosecutors or other unspecified employees who are not investigative or law enforcement officers.[12]  Plaintiff's claims for malicious prosecution and abuse of process may only be based upon the acts and omissions of the FBI agents—the only investigative or law enforcement officers identified in the Amended Complaint.[13]  *See supra* note 9.

---

[12] In Plaintiff's original complaint, Plaintiff also identified the EOP as a "wrongdoer," but removed that allegation in the Amended Complaint.  *Compare* ECF No. 1 ¶ 14 *with* ECF No. 34 ¶¶ 11-18.  To the extent Plaintiff continues to base any claim upon the conduct of EOP officials, *see, e.g.*, ECF 34 ¶¶ 66-67, the claim is similarly barred by sovereign immunity because Plaintiff does not (and cannot) allege that EOP officials are investigative or law enforcement officers.

[13] The United States made this same argument that Plaintiff's claims must be based upon the conduct of investigative or law enforcement officers in its motion to dismiss Plaintiff's original complaint.  *See* ECF No. 29, Argument, § II.  Tellingly, in response, Plaintiff filed the Amended Complaint, which, instead of identifying additional acts or omissions allegedly committed by identifiable investigative or law enforcement officers, merely inserted vague and conclusory allegations that the United States acted through "[its] investigative or law enforcement officers" without identifying the specific employees whose conduct was at issue or otherwise distinguishing between the conduct of employees who are investigative or law enforcement officers (*e.g.*, the FBI agents) and those who are not (*e.g.*, federal prosecutors).  *See, e.g.*, ECF No. 34 ¶¶ 129, 130, 131, 133, 134, 137, 139, 143, 168, 180.  Plaintiff's attempt to avoid dismissal by adding conclusory allegations that fail to identify specific employees—or otherwise distinguish between the conduct of those employees whose conduct may serve as the basis for liability and those whose conduct may not—clearly is insufficient.  *See, e.g.*, *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (providing that conclusory allegations are not entitled to an assumption of truth and should be disregarded); *Berkman v. United States*, 957 F.2d 108, 113 (4th Cir. 1992) ("By expressly waiving immunity for the tortious conduct of its employees, and only its employees, the FTCA requires a more focused approach that requires the courts to

### III.   PLAINTIFF FAILS TO STATE CLAIMS FOR ABUSE OF PROCESS AND MALICIOUS PROSECUTION AND THUS FAILS TO ESTABLISH SUBJECT MATTER JURISDICTION

Pursuant to the FTCA, the United States, subject to certain exceptions and limitations, waived its sovereign immunity for personal injury claims "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1). Here, because all the alleged acts or omissions occurred in the District of Columbia, Plaintiff must plausibly allege that the United States, if a private person, would be liable for abuse of process and/or malicious prosecution under District of Columbia law.  *See, e.g., Richards v. United States*, 369 U.S. 1, 10 (1962) (rejecting argument that law of place where injury or death occurred should control FTCA action and concluding that "Congress has . . . enacted a rule which requires federal courts, in multistate tort actions, to look in the first instance to the law of the place where the acts . . . took place").

As explained more fully below, the Amended Complaint fails to plausibly allege either claim under District of Columbia law and thus Plaintiff's claims should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).  *See Brownback*, 141 S. Ct. at 749

_____

determine the relationship to the United States of the actor whose negligence might be imputed to the government under state law.").

(explaining that a failure to plausibly allege an FTCA claim constitutes not only a failure to state a claim, but also a lack of subject matter jurisdiction).

### A.  Plaintiff fails to state a claim for malicious prosecution.

Plaintiff asserts a claim for malicious prosecution based upon the allegation that the United States "maliciously investigated and procured the prosecution of [Plaintiff] by initiating and continuing a baseless counterintelligence investigation and by filing a criminal information lacking probable cause."  ECF No. 34 ¶ 180.  Under District of Columbia law, "four elements make up the tort of malicious prosecution: (1) the defendant's initiation or procurement of a criminal proceeding against the plaintiff; (2) absence of probable cause for the proceeding; (3) malicious intent on the part of the defendant; and (4) termination of the proceeding in favor of the plaintiff." *Moore*, 213 F.3d at 710 (citing *Davis v. Giles*, 769 F.2d 813, 814-15 (D.C. Cir.1985)).  Here, as explained below, Plaintiff's Amended Complaint fails to plausibly plead at least three of these elements—the initiation or procurement of a criminal proceeding, the absence of probable cause, and the termination of the proceeding in favor of Plaintiff.[14]

### 1.  Plaintiff fails to plausibly allege an investigative or law enforcement officer procured a criminal proceeding against him.

As explained above, the United States' sovereign immunity for malicious

---

[14] Given the procedural posture of this case, for purposes of the instant motion only, the United States does not concede, but is not challenging the sufficiency of Plaintiff's allegations of malicious intent.

prosecution claims is waived only for the acts or omissions of investigative or law enforcement officers.  *See* 28 U.S.C. § 2680(h); *supra* Argument, § II. Plaintiff's malicious prosecution claim thus cannot be premised upon the initiation of the criminal proceedings against Plaintiff by SCO prosecutors.[15]  *See, e.g.,* ECF No. 34 ¶ 18 (alleging that Special Counsel Mueller "is responsible for . . . overseeing and approving the filing of the criminal information"); Criminal Case, ECF No. 1 (reflecting that criminal information was filed by SCO prosecutors).  Accordingly, to successfully bring a malicious prosecution claim, Plaintiff must allege that the FBI agents—the only investigative or law enforcement officers identified in the Amended Complaint—"procured" the criminal proceeding against Plaintiff.[16]

To plausibly allege that "a defendant procured a prosecution, the plaintiff

---

[15] Even outside the context of the FTCA, "prosecutors are entitled to absolute immunity from causes of action based on the common law tort of malicious prosecution." *Gray v. Bell*, 542 F. Supp. 927, 932 (D.D.C. 1982).  As a result, "those who procure malicious prosecutions are usually the only potential defendants" for a malicious prosecution claim.  *Moore*, 213 F.3d at 710.

[16] To the extent Plaintiff's malicious prosecution claim is based upon the alleged initiation and continuation of "a baseless counterintelligence investigation . . . lacking probable cause," ECF No. 34 ¶ 180, it fails as a matter of law because the mere investigation of a crime is not sufficient to support a claim for malicious prosecution under District of Columbia law.  As courts have explained, the tort of malicious prosecution "is primarily intended to compensate individuals for infringement of their 'interest in freedom from unjustifiable and unreasonable litigation,'" and thus law enforcement conduct that "does not . . . subject an individual to the burdens of *litigation*" is legally insufficient to support a claim for malicious prosecution.  *Jackson v. District of Columbia*, 710 F. Supp. 13, 15 (D.D.C. 1989) (emphasis in original) (quoting *Dellums,* 556 F.2d at 192).  The initiation and maintenance of a counterintelligence investigation, even if lacking probable cause, thus is insufficient to support a claim for malicious prosecution.

must [allege] 'a chain of causation' linking the defendant's actions with the initiation of criminal proceedings." *Moore*, 213 F.3d at 710 (quoting *Dellums v. Powell*, 566 F.2d 167, 192 (D.C. Cir.1977)). "The relevant question, therefore, is whether [law enforcement's] involvement in triggering the filing of [criminal charges] is of such a nature that the presumption of independent action by [the prosecutor] is overborne and a chain of causation can accordingly be traced to [law enforcement]." *Dellums*, 566 F.2d at 192. "The law is clear that the chain of causation between [law enforcement] and the filing of [criminal charges] is broken thereby defeating tort liability if the decision made by [the prosecutor] was independent of any pressure or influence exerted by [law enforcement] and of any knowing misstatements which [law enforcement] may have made." *Dellums*, 566 F.2d at 192-93; *see also* Restatement (Second) of Torts § 653 (1977) (noting that procurement requires showing that defendant's involvement was "determining factor" in decision to prosecute or that prosecutor acted upon information provided by defendant that defendant knew to be false). Accordingly, to state a claim for malicious prosecution, Plaintiff must plausibly allege either (1) that the SCO prosecutors filed the criminal information as a result of pressure or influence exerted by the FBI agents or (2) that the FBI agents knowingly provided false information that the SCO prosecutors relied upon to file the criminal information.

Plaintiff does not plausibly allege that any influence or pressure exerted by the FBI agents was the "determining factor" in the SCO prosecutors' decision to

bring the Criminal Case against Plaintiff.  Restatement (Second) of Torts § 653. Although the Amended Complaint includes conclusory allegations that the FBI agents "influenced," were "involved in," or "endeavored . . . to procure" the prosecution of Plaintiff, ECF No. 34 ¶¶ 14, 16, 138, and that the SCO "failed to independently review and determine whether the prosecution should be brought," *id.* ¶ 135, none of these allegations is supported with factual allegations plausibly alleging that any of the FBI agents exerted influence or pressure on the SCO prosecutors or that the SCO prosecutors decided to bring charges against Flynn based upon such influence or pressure.[17]  To the contrary, the factual allegations in the Amended Complaint make clear that the SCO prosecutors led the final phase of the criminal investigation into Plaintiff and made an independent decision to bring charges against him.  *See, e.g.*, ECF No. 34 ¶¶ 18 (alleging that Special Counsel Mueller was responsible for "approving the filing of the criminal information"), 120 (alleging that "the SCO attorneys were the ones pushing for legal process"), 133 (alleging that SCO "commenced the prosecution" despite knowing that Plaintiff "was innocent of . . . any material

---

[17] Tellingly, the United States raised this same argument in its motion to dismiss the original complaint, and, in response, Plaintiff amended the complaint but did not add any factual allegations to support a finding that the FBI agents (or any other identifiable investigative or law enforcement officer) influenced or pressured the SCO prosecutors.  *See generally* ECF No. 34.  Instead, Plaintiff merely changed the original complaint's allegations that SCO prosecuted Plaintiff to instead allege that unspecified investigative or law enforcement officers "procured" the prosecution.  *See, e.g.*, ECF No. 34 ¶¶ 124, 129, 134, 138, 141, 143, 161, 168, 180.  These vague and conclusory allegations, which seek to avoid the application of the law enforcement proviso through obfuscation, clearly are insufficient. *See supra* note 13.

misstatements to the FBI").  Indeed, the Amended Complaint expressly alleges that a SCO attorney disregarded the opinions of the lead FBI agent assigned to the investigation.  *Id.* ¶ 119.

Nor does the Amended Complaint plausibly allege that the FBI agents knowingly provided false information that was relied upon by the SCO prosecutors.  *See generally* ECF No. 134.  To the contrary, Plaintiff expressly alleges that the FBI provided the SCO complete and accurate information about the FBI's investigation, including the January 24, 2017 interview, and that, despite this information, the SCO still filed the criminal information.  *See, e.g.*, ECF No. 34 ¶¶ 3 (alleging that the SCO "knew or should have known of the lack of basis for the  . . . charge before the criminal information was ever filed"), 129 (alleging that prosecution was brought "despite knowing [Plaintiff] had not made false statements, that even if he did make false statements, they were unintentional and were not material to the Crossfire Razor investigation"), 130 (alleging that, at the time the criminal information was filed, SCO "[was or should have been aware that [DAD] Strzok and [Special Agent] Pientka wrote, in their interview notes, they did not believe [Plaintiff] had lied during their January 24, 2017, interrogation"), 131 (alleging that SCO was in possession of FBI notes from a meeting describing Plaintiff's calls with the Russian ambassador as "legit"), 161 (alleging that "the information available to the DOJ, FBI, and the SCO at the time the government wrongdoers procured the filing of the criminal information indicated that there was . . . no probable cause to

support their claim").

Because Plaintiff fails to plausibly allege that any investigative or law enforcement officer "procured" the SCO's criminal prosecution of Plaintiff, his malicious prosecution claim should be dismissed.  *See Pitt v. District of Columbia*, 491 F.3d 494, 505 (D.C. Cir. 2007) (finding evidence of "routine investigatory duties" insufficient to establish law enforcement officer procured criminal prosecution).

### 2. Plaintiff fails to plausibly allege the absence of probable cause for the Criminal Case.

Plaintiff's malicious prosecution claim also fails because Plaintiff has not plausibly alleged that the United States lacked probable cause to initiate the criminal proceedings against Plaintiff.  Under District of Columbia law, "probable cause is defined as the existence of 'facts and circumstances as will warrant a cautious man in the belief that his action and the means taken in prosecuting it are legally just and proper.'"  *Katz v. District of Columbia*, 285 A.3d 1289, 1311 (D.C. 2022) (quoting *Pitt*, 491 F.3d at 501-02).  "One need not be certain of the outcome of a proceeding to have reasonable grounds for instituting it."  *Ammerman v. Newman*, 384 A.2d 637, 640 (D.C. 1978).

Here, there can be no dispute that there was probable cause for the United States to file the criminal information because Plaintiff had already agreed to plead guilty to the charge at the time it was filed.  *See* Criminal Case, ECF No. 3 (plea agreement with Plaintiff's signature dated November 30, 2017), Criminal

Case, ECF No. 154 (describing exchange of plea documents in days prior to the filing of the criminal information).  Plaintiff's plea agreement expressly states that Plaintiff is entering the plea "voluntarily and of [his] own free will," after having discussed the plea with his attorneys, because he is "in fact guilty of the offense."  Criminal Case, ECF No. 3 at 10.  In connection with the plea, Plaintiff also signed, under penalty of perjury, a "Statement of the Offense," which set forth the factual predicate for his guilty plea.  Criminal Case, ECF No. 4.  In the Statement of the Offense, Plaintiff expressly stipulated and agreed that "[Plaintiff's] false statements and omissions impeded and otherwise had a material impact on the FBI's ongoing investigation into the existence of any links or coordination between individuals with the [Trump] Campaign and Russia's efforts to interfere with the 2016 presidential election."  *Id.* at ¶ 1-2.  Subsequently, Plaintiff twice affirmed, under oath, in open court that he was pleading guilty—not based upon any threats or promises but—because he was, in fact, guilty of the offense charged.  *See* Criminal Case, ECF Nos. 16, 103.

Plaintiff's own agreement to plead guilty to the criminal information conclusively establishes that there were "reasonable grounds"—*i.e.*, probable cause—for the United States to institute the criminal charges.  Indeed, numerous courts have held that a guilty plea "conclusively establishes that probable cause existed."  *Cuellar v. Love*, No. 11-CV-3632 NSR, 2014 WL 1486458, at *5 (S.D.N.Y. Apr. 11, 2014) (collecting cases); *see also Walker v. Clearfield Cnty. Dist. Att'y*, 413 F. App'x 481, 483 (3d Cir. 2011) (concluding "that a guilty plea—even

one for a lesser offense—does not permit a later assertion of no probable cause");
*Morrison v. Vine*, No. 17-CV-996-LJV-HBS, 2021 WL 1229558, at *3 (W.D.N.Y.
Feb. 25, 2021) (collecting cases for proposition that "guilty plea established
probable cause for his criminal prosecution"), *report and recommendation adopted*,
2021 WL 1226446 (W.D.N.Y. Mar. 31, 2021).  Plaintiff's guilty plea thus
"establishes probable cause for commencing the proceeding against him and
therefore serves as an absolute defense to the malicious prosecution claim."
*Cintron v. Shield*, No. 18-CV-1619 (RA), 2019 WL 4194429, at *3 (S.D.N.Y.
Sept. 3, 2019).

   Although some courts have allowed parties to rebut the general rule that a
guilty plea conclusively establishes probable cause where they have asserted that
their guilty pleas "were obtained by fraud, perjury, undue influence, or some
other corrupt means," here, Plaintiff has not plausibly alleged that his plea
agreement was obtained through fraud or other corrupt means.[18]  *Basile v. Twp. of
Smith*, 752 F. Supp. 2d 643, 655 (W.D. Pa. 2010) (collecting cases); *see also
Killian v. Fuller*, 412 N.W.2d 698, 700 (Mich. App. 1987) ("The general rule is
that a guilty plea is conclusive evidence of probable cause unless that plea was

---

[18] To the extent Plaintiff alleges that his plea agreement was obtained through "fraud
or mistake," such allegations are subject to the heightened pleading standard of Federal
Rule of Civil Procedure 9(b), which requires that "a party must state with particularity the
circumstances constituting fraud or mistake."  "[P]ursuant to Rule 9(b), a plaintiff must
allege: (1) the precise statements, documents, or misrepresentations made; (2) the time,
place, and person responsible for the statement; (3) the content and manner in which these
statements misled the [plaintiff]; and (4) what the defendants gained by the alleged fraud."
*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (quotation omitted).

induced by fraud or unfair means").  The Amended Complaint alleges that Plaintiff "entered into a plea agreement, not because he thought he had done something wrong—he hadn't—but because SCO had threatened his son with prosecution."  ECF No. 34 ¶ 128; *see also id.* at ¶ 136 (alleging that "SCO was aware that it had coerced the guilty plea").  Plaintiff's allegation is totally devoid of supporting factual allegations regarding the alleged threat—such as what specific threat was made, who allegedly made the threat, or when the threat was made.  Plaintiff's threadbare allegation of coercion is insufficient to overcome the presumption established by Plaintiff's guilty plea.  *See* Fed. R. Civ. P. 9(b); *Briscoe v. United States*, 268 F. Supp. 3d 1, 18 (D.D.C. 2017) (rejecting argument that plaintiffs were "induced to plead guilty" based on misstatements about evidence, because each plaintiff had "affirmed that he was pleading guilty 'because [he was] in fact guilty'"); *Iqbal*, 556 U.S. at 681 (noting allegations that are unsupported by well-pleaded facts are not entitled to an assumption of truth).

In addition to the plea agreement, Plaintiff also attested under penalty of perjury—in the Statement of Offense and subsequently at two plea colloquies— that he was, in fact, guilty of the offense charged and that his admission of guilt was not based upon any threats or undue influence.  Criminal Case, ECF Nos. 4, 16, 103.  As the Supreme Court has made clear, "[s]olemn declarations in open court carry a strong presumption of verity" and "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."  *Blackledge*

*v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the colloquy are true.").[19]  The Amended Complaint fails to include any allegations "supported by specifics" that would support a finding that his admission of guilt was based upon any threats or undue influence.[20]

In light of Plaintiff's guilty plea and his repeated statements under oath admitting both his guilt and the voluntariness of his plea, Plaintiff's Amended Complaint does not plausibly allege that the United States lacked probable cause to initiate criminal proceedings against him and thus Plaintiff's malicious prosecution claim should be dismissed.

### 3. Plaintiff fails to plausibly allege that the Criminal Case terminated in his favor.

"[T]o prevail in a claim of malicious prosecution, [a] plaintiff must plead and prove [that] the underlying suit terminated in plaintiff's favor." *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980).  To satisfy this requirement under District of Columbia law, the termination of the prior suit must be "of such a nature as to indicate the innocence of the accused" and "reflect on the merits of

---

[19] *See also United States v. Sidell*, 553 F. App'x 619, 624 (7th Cir. 2014) ("A defendant's admission in a plea agreement, during the plea colloquy, or even at sentencing can remove a fact from dispute since an admission is even better than a jury's finding beyond a reasonable doubt." (quotation omitted)).

[20] Plaintiff alleges that SCO required that the side-deal—pursuant to which SCO allegedly agreed not to bring charges against Plaintiff's son—"be kept out of the written plea agreement and kept from the court," ECF No. 34 ¶ 128, but fails to allege any supporting facts, such as when or with whom that agreement allegedly was reached.

the underlying action."[21]  *Brown v. Carr*, 503 A.2d 1241, 1245 (D.C. 1986)

(quoting *Lackner v. LaCroix*, 602 P.2d 393, 394 (Cal. 1979)); *see also Rauh v. Coyne*,

744 F. Supp. 1186, 1193 (D.D.C. 1990) ("To show a termination in one's favor,

the plaintiff must prove that a court passed on the merits of the charge against

him in such circumstances as to show plaintiff's innocence").  "It is not enough

that the terminations are *consistent* with innocence; they must *tend to show*

innocence."  *O'Quinn v. District of Columbia*, No. CIV.A. 87-0074 (RLC), 1988

WL 23244, at *2 (D.D.C. Mar. 4, 1988) (emphasis in original).  Because the

favorable termination requirement "is part of plaintiff's *prima facie* case, it is [the

plaintiff's] burden to demonstrate that the termination was favorable."  *Cruz-*

*Roldan v. Nagurka*, 246 F. Supp. 3d 155, 159 (D.D.C. 2017).

Here, Plaintiff has not alleged that the criminal prosecution terminated in

a way that established his innocence.  Instead, Plaintiff alleges only that the

---

[21] The Supreme Court recently held that "a Fourth Amendment claim under [42 U.S.C.] § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence," because "the American tort-law consensus as of 1871" did not require a plaintiff to make such a showing. *Thompson v. Clark*, 142 S. Ct. 1332, 1340-41 (2022).  Because the District of Columbia's common law malicious prosecution claim is not defined according to the American tort-law consensus as of 1871, the *Thompson* holding is irrelevant to Plaintiff's malicious prosecution claim here.  *See Davis*, 769 F.2d at 814-15 (citing Restatement (Second) of Torts § 653 (1977) when defining the elements of a malicious prosecution claim); *cf. Thompson*, 142 S. Ct. at 1340 (rejecting Restatement as a source for defining the Section 1983 malicious prosecution claim).  Section 1983 malicious prosecution claims and malicious prosecution claims under District of Columbia law thus "are governed by different standards."  *Lockett v. Metro. Police Dep't*, No. 1:22-CV-02935 (CJN), 2023 WL 4824735, at *3 n.4 (D.D.C. July 27, 2023).  Accordingly, the *Thompson* decision does not disturb the clearly established law in the District of Columbia that a malicious prosecution claim requires that the termination of the prior suit be "of such a nature as to indicate the innocence of the accused."  *Brown*, 503 A.2d at 1246.

Criminal Case was "ultimately dismissed by Judge Sullivan after [Plaintiff] received a full presidential pardon."[22]   ECF No. 34 ¶ 167; *see also id.* at ¶ 165 (alleging that Criminal Case was "dismissed . . . in its entirety" after Plaintiff accepted a pardon).   Plaintiff does not allege that the dismissal by Judge Sullivan was "of such a nature as to indicate [his] innocence"— nor could he.   *Brown*, 503 A.2d at 1246; *see also Kenley v. District of Columbia*, 83 F. Supp. 3d 20, 42 (D.D.C. 2015) ("Merely alleging that criminal charges were dismissed is . . . insufficient to plead that the underlying case was favorably terminated").   To the contrary, Judge Sullivan dismissed the Criminal Case as moot based solely on Plaintiff's acceptance of the presidential pardon and expressly observed that "the pardon 'does not, standing alone, render [Plaintiff] innocent of the alleged violation' of 18 U.S.C. § 1001(a)(2)."   Criminal Case, ECF No. 311 at 42 (quoting *United States v. Schaffer*, 240 F.3d 35, 38 (D.C. Cir. 2001)).   Judge Sullivan thus clearly did not "pass[ ] on the merits of the charge against [Plaintiff] in such circumstances as to show [P]laintiff's innocence."   *Rauh*, 744 F. Supp. at 1193; *see also Brown*, 503 A.2d at 1246 (holding that termination must be "of such a

---

[22] Although Plaintiff alleges that several independent prosecutors recommended dismissal of the Criminal Case and that, in response, U.S. Attorney Shea, on behalf of the government, moved to dismiss the criminal information, ECF No. 34 ¶ 148, Plaintiff acknowledges that Judge Sullivan "refused to approve the DOJ's dismissal of its prosecution" and ultimately dismissed the case only "after [Plaintiff] received a full presidential pardon," *id.* at ¶¶ 162, 167.   In his Opinion addressing dismissal, Judge Sullivan expressed concerns about the merits of U.S. Attorney Shea's motion and noted that the facts presented "a close question" regarding whether the court should defer to the prosecutor's discretion to dismiss the charges but refrained from resolving that question in light of Plaintiff's acceptance of the pardon.   Criminal Case, ECF No. 311 at 38.

nature as to indicate [Plaintiff's] innocence").

Instead, Judge Sullivan's dismissal order was based solely upon the court's lack of jurisdiction and, as a result, necessarily, did not address the merits—*e.g.*, Plaintiff's guilt or innocence.  *See Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies."); *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (finding that "dismissal for lack of subject matter jurisdiction is not a judgment on the merits").  Such a dismissal is insufficient to satisfy the favorable termination requirement for a malicious prosecution claim.[23]  *See Feld Ent. Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 331 (D.D.C. 2012) (finding that "[c]ourts have consistently dismissed malicious prosecution claims when the prior suit was dismissed for lack of jurisdiction or standing, as opposed to on the merits of the plaintiff's claims").

Nor does the fact that Plaintiff accepted a full pardon from former

---

[23] Although "[s]ome courts . . . have considered whether a plaintiff has identified facts surrounding the dismissal . . . that, if proven, would demonstrate that the termination of the criminal case tended to show the plaintiff's innocence," *Clark v. D.C.*, 241 F. Supp. 3d 24, 34 (D.D.C. 2017), those cases are inapposite.  Here, there is no ambiguity with regard to whether the court's dismissal order tended to show Plaintiff's innocence, because the order explained that the termination of the case was *not* based upon Plaintiff's potential innocence but instead the case was dismissed as moot in light of Plaintiff's acceptance of a pardon. Criminal Case, ECF No. 311; *Cf. Clark*, 241 F. Supp. 3d at 34 (finding allegations of favorable termination sufficient where court granted government's motion to dismiss without prejudice where neither the motion nor the order offered any information on the basis for dismissal).

President Trump indicate Plaintiff's innocence.  To the contrary, the Supreme Court has observed that a pardon "carries an imputation of guilt" and the "acceptance [of a pardon] a confession of it."[24]  *Burdick v. United States*, 236 U.S. 79, 94 (1915).  The D.C. Circuit similarly has acknowledged that "acceptance of a pardon may imply a confession of guilt."  *Schaffer*, 240 F.3d at 38.  Similar to the pardon accepted by Plaintiff, the pardon at issue in *Schaffer* was a full and unconditional presidential pardon that did not indicate that it was issued based upon the pardoned individual's innocence.[25]  *Id.*  The D.C. Circuit concluded

_____

[24] In a prior decision, the Supreme Court had observed that "when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence."  *Ex parte Garland*, 71 U.S. 333, 380 (1866).  As the D.C. Circuit has explained, however, the language in *Garland* about a pardon "blotting out guilt" and implying innocence was dictum, which "was implicitly rejected" in *Burdick*.  *In re North*, 62 F.3d 1434, 1437 (D.C. Cir. 1994); *see also United States v. Castellana*, 433 F. Supp. 1309, 1315 (M.D. Fla. 1977) (finding that "more recent authorities have questioned the breadth of the *Garland* description" of the effect of a presidential pardon).  As a result, "federal courts now agree that a pardon does not 'blot out guilt or expunge a judgment of conviction.'"  *Lorance v. Commandant, U.S. Disciplinary Barracks*, 13 F.4th 1150, 1154-55 n.5, 1157 (10th Cir. 2021) (quoting *In re North*, 62 F.3d at 1437) (finding that "not every acceptance of a pardon constitutes a confession of guilt" but citing with approval cases finding that, under *Burdick*, "acceptance of a pardon does *not* erase guilt" (emphasis in original)).

[25] In the Amended Complaint, Plaintiff alleges that he was pardoned, "because the DOJ itself had found that he was innocent" and that the White House issued a press release about the pardon, which stated that Plaintiff "is an innocent man."  ECF No. 34 ¶¶ 163, 164.  Notably, the pardon itself, however, does not mention Plaintiff's purported innocence.  Criminal Case, ECF No. 308-1; *cf. People ex rel. Prisament v. Brophy*, 38 N.E.2d 468, 469 (1941) (discussing presidential pardon that included preamble referencing pardoned individual's innocence); 28 U.S.C. § 2513(a)(1) (stating that a person may seek damages for unjust conviction upon proof that "he has been pardoned *upon the stated ground* of innocence and unjust conviction") (emphasis added).  Regardless, "a presidential pardon, even if granted because the President is satisfied that the convicted person is innocent, is an act of grace which does not obliterate the finding of guilt."  *Brophy*, 38 N.E.2d at 472; *see also InterMune, Inc. v. Harkonen*, No. 2021-0694-NAC, 2023 WL 3337212, at *11 (Del. Ch. May

that the pardon "act[ed] on the [pardoned individual's] conviction, without purporting to address [his] innocence or guilt." *Id.* Finally, regardless of whether, as indicated in *Burdick*, Plaintiff's acceptance of the presidential pardon itself implies his guilt, it is clear that the presidential pardon in no way indicates Plaintiff's innocence and thus the pardon does not satisfy the favorable termination requirement. *See* Criminal Case, ECF No. 311 at 42 (observing that the pardon did not render Plaintiff innocent of the alleged charges); *Richards v. United States*, 192 F.2d 602, 607 (D.C. Cir. 1951) (finding that "a pardon does not 'blot out guilt' in any literal or uncritical sense"); *In re North*, 62 F.3d at 1437 (holding that "a pardon does not blot out probable cause of guilt").

Accordingly, Plaintiff does not—and cannot—plausibly allege that the criminal prosecution terminated in his favor and the malicious prosecution claim should be dismissed.

### B. Plaintiff fails to state a claim for abuse of process.

Under District of Columbia law, a Plaintiff must plead two elements for an abuse of process claim: "(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." *Hall v. Hollywood Credit Clothing Co.*, 147 A.2d 866, 868 (D.C. 1959). Here, Plaintiff's abuse of process claim must be dismissed because he fails to plausibly

---

10, 2023) (concluding that "a presidential pardon does not invalidate or expunge the underlying conviction or determine factual or legal innocence").

allege the second element of an abuse of process claim for two reasons.[26]  First, Plaintiff fails to sufficiently allege that investigative or law enforcement officers used process—*i.e.*, the judicial machinery—against him.  Second, even assuming Plaintiff had adequately alleged a use of process, he fails to plausibly allege that any such process was used for an improper purpose after issuance.

### 1. Plaintiff fails to plausibly allege a law enforcement or investigative officer used "process" against him.

In the District of Columbia, to establish an abuse of process, the plaintiff must allege the improper use "of the judicial machinery." *Thorp v. District of Columbia*, 319 F. Supp. 3d 1, 22 (D.D.C. 2018) (quoting *Barquis v. Merchants Collection Ass'n*, 7 Cal. 3d 94, 104 n.4 (Cal. 1972)); *see also Bown v. Hamilton*, 601 A.2d 1074, 1079 (D.C. 1992) (noting an abuse of process tort "lies where the *legal system"* has been used to accomplish some end which is without the regular purview of the process) (emphasis added); *Spiller v. District of Columbia*, 362 F. Supp.3d 1, 7 (D.D.C. 2019) (noting the tort of abuse of process covers use of the judicial machinery).  "[W]arrantless arrests and detentions effectuated entirely *independent* of the judicial process do not support an abuse of process tort." *Spiller*, 362 F. Supp. 3d at 7 (quoting *McCarthy v. Kleindienst*, 741 F.2d 1406, 1414 n.9 (D.C. Cir. 1984)).  Therefore, to plausibly allege an abuse of process claim, Plaintiff must allege that the FBI agents—the only law enforcement or investigative officers identified in the Amended

---

[26]  Given the procedural posture of this case, for purposes of the instant motion only, the United States does not concede, but is not challenging the sufficiency of Plaintiff's allegations regarding an ulterior motive.

Complaint—utilized the "judicial machinery" against him.  *Thorp*, 319 F. Supp. 3d at 22; *see also supra* Argument, § II.

Plaintiff comes nowhere close to meeting this threshold.  The Amended Complaint references only two instances in which the judicial machinery was utilized, and neither can serve as the basis for his claim.  First, the Amended Complaint references the filing of the criminal information and Plaintiff's guilty plea proceedings.  *See, e.g.*, ECF No. 34 ¶¶ 124, 185.  Although Plaintiff's abuse of process claim fails to identify the employees whose alleged conduct is at issue,[27] it is clear that the criminal information was filed—and the legal proceedings were handled—by SCO prosecutors whose conduct cannot serve as the basis for an abuse of process charge.  *See id.* ¶ 130 (noting the SCO filed the criminal information against Plaintiff); Criminal Case, ECF No. 1 at 2 (evidencing SCO prosecutor filed the criminal information); Criminal Case, ECF No. 3 at 9 (reflecting SCO prosecutor signed Plaintiff's plea agreement); *see also Moore*, 213 F. 3d at 708, 713 n.7 (finding conduct of a federal prosecutor cannot serve as basis for an abuse of process claim).  While the Amended Complaint vaguely suggests the FBI agents participated in Plaintiff's prosecution, the allegations are wholly conclusory and are not supported by any factual detail.  *See, e.g.,* ECF No. 34 ¶¶ 134, 140; *see also Iqbal*, 556 U.S. at 681 (noting conclusory allegations are not entitled to an

---

[27] Instead, Plaintiff avers only that "Defendant, by and through its agent and agencies, attempted to utilize their ability to bring process against [Plaintiff's] son to coerce [Plaintiff] into pleading guilty to a Section 1001 charge" and that "Defendant did in fact bring a criminal information against [Plaintiff]."  ECF No. 34 ¶¶ 184-85.

assumption of truth).  The Amended Complaint provides no insight into how the

FBI agents were involved in the prosecution and it does not allege that the FBI

agents exercised control over prosecutorial acts such as filing charges or

negotiating Plaintiff's plea bargain.  *See generally* ECF No. 34.  To the contrary,

Plaintiff expressly alleges that "the SCO attorneys were the ones pushing for

legal process" and that the SCO attorneys dismissed the opinions of FBI agents

assigned to the investigation.  *Id.* ¶¶ 119, 120.  The allegations in the Amended

Complaint are thus insufficient to allow one to reasonably infer that the FBI

agents used process against Plaintiff through the filing of the criminal

information or guilty plea proceedings.  As such, this "process" cannot serve as a

basis for Plaintiff's claim.

    The only other allegations addressing use of the "judicial machinery" are

those involving the FISC's issuance of four FISA warrants during the Crossfire

Hurricane investigation.  *See, e.g., id.*at ¶ 33-44.  While these allegations arguably

involve the conduct of law enforcement or investigative officers, the FISA

warrants cannot serve as a basis for Plaintiff's claim because there is no

indication the "process" was used against Plaintiff.  *See Scott v. District of Columbia,*

101 F.3d 748, 755-76 (D.C. Cir. 1996) (noting an abuse of process claim exists

where the defendant compels the party against whom the process is used to do

some collateral thing).  On this point, the Amended Complaint provides only

that the warrants were procured to surveil "persons in the Trump presidential

campaign." ECF No. 34 ¶ 33.  But this vague allegation does not allow one to

reasonably conclude the warrants were procured to surveil Plaintiff or that the warrants were used to "pressure [Plaintiff] into taking any action or prevent him from taking action, or to achieve any other collateral purpose." *Scott*, 101 F. 3d at 756; *see generally* ECF No. 34.  This is especially true given that the OIG Report reflects that the FISA warrants targeted Carter Page and not Plaintiff.  *See* OIG Report at v-xii.  Because Plaintiff does not plausibly allege the FISA warrants were initiated for use against him, they cannot serve as the "process" in his abuse of process claim.

Finally, to the extent Plaintiff attempts to argue the opening of the Crossfire Hurricane and Crossfire Razor investigations as well as the FBI's acts during those investigations (including acts during the January 24, 2017 interview) constitute process, he is incorrect.  Acts effectuated "entirely independent of the judicial process do not support an abuse of process claim." *Spiller*, 362 F. Supp. 3d at 7 (citing *McCarth*y, 741 F.2d 1414 n.9).  "The rationale for that rule is self-evident: [t]he abuse of process tort covers the improper use of the judicial machinery." *Spiller*, 362 F. Supp. 3d at 7 (internal quotations omitted).  Here, other than the two instances noted above—which cannot serve as the basis for Plaintiff's claim—Plaintiff has not alleged any further use of the judicial process. [28]

---

[28] To the extent Plaintiff attempts to base his abuse of process claim on allegations that his name was improperly unmasked in intelligence reports (and it is not clear he does), the claim would similarly fail because Plaintiff does not allege that the "unmasking" process involves use of the "judicial machinery."  *See* ECF No. 34 at ¶¶ 62 (alleging that "it is

Because Plaintiff fails to plausibly allege that law enforcement or investigative officers used process against him, Plaintiff fails to state a claim for abuse of process and the claim should be dismissed outright.

### 2. Plaintiff fails to plausibly allege the judicial process was used to accomplish an end not intended by law.

Even assuming Plaintiff adequately alleges that investigative or law enforcement officers used process against him, the claim fails because Plaintiff does not plausibly allege that the legal system was used to accomplish an end outside the "regular purview of the process." *Scott,* 101 F.3d at 755 (quoting *Bown*, 601 A.2d at 1079).

Distinct from a malicious prosecution claim, an abuse of process claim "lies in the improper use after issuance." *Hall*, 147 A.2d at 868. "[T]he fact that a person acts spitefully, maliciously, or with an ulterior motive in instituting a legal proceeding is insufficient to establish abuse of process." *Scott,* 101 F.3d at 755. Rather, the tort also requires "a 'perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge.'" *Scott*, 101 F.3d at 755 (quoting *Bown*, 601 A.2d at 1080); *see also Rockwell Capital Partners, Inc. v. CD Int'l Enters., Inc.*, 311 F. Supp. 3d 52, 56 (D.D.C. 2018) (noting the perversion of the judicial process must actually be achieved). For instance, "[t]he usual case of

---

possible" Plaintiff's identify was never masked), 77-78 (alleging that Plaintiff was "target[ed]" for unmasking). Rather, the Complaint reflects only that unmasking requests are made to the National Security Agency (NSA) and that NSA "unmasks [a name] when there is a specific request, made by an authorized person, for a valid intelligence purpose." *Id*. ¶ 77.

abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it."  *Scott*, 101 F.3d at 755-56 (internal quotations omitted).

Plaintiff's abuse of process claim sets forth two affirmative acts that he alleges constitute an abuse of process.  *See* ECF No. 34 ¶¶ 184-85.  He first alleges that unspecified "agents and agencies" abused process by attempting "to utilize their ability to bring process against [Plaintiff's] son to coerce [Plaintiff] into pleading guilty to a Section 1001 charge." ECF No. 34 at ¶ 184.  As an initial matter, this allegation is insufficient to support an abuse of process claim because it is entirely conclusory and unsupported by any well-pleaded facts, such as who made the alleged threat and what specifically was threatened.  *See Iqbal*, 556 U.S. at 681 (noting allegations that are unsupported by well-pleaded facts are conclusory and not entitled to an assumption of truth).  Moreover, even if Plaintiff's unsubstantiated allegation is accepted as true, it is legally insufficient to establish a claim for abuse of process because a threat of process does not constitute actual "use of the judicial machinery."  *Thorp*, 319 F. Supp. 3d at 22.  Also, any such threat necessarily was made prior to—and not after—the use of any "process" against Plaintiff as he alleges the threat was used in an attempt to compel his guilty plea.  *See* Criminal Case, ECF Nos. 1, 3 at 10 (indicating that the criminal information—the first use of "process" against Plaintiff—was filed on November 30, 2017, and that the plea agreement was signed the same day); *see also Kopff v. World Rsch. Grp.*, LLC, 519 F. Supp. 2d 97, 99 (D.D.C. 2007) (noting "the gist of the

action lies in the improper use [of process] after issuance" and not before)

(quoting *Hall*, 147 A.2d at 868).

Plaintiff next alleges that unspecified "agents and agencies" sought to use

process to coerce Plaintiff into testifying against other members of the Trump

campaign or the Trump administration. *See* ECF No. 34 ¶¶ 184-85. This

allegation fails for two reasons. First, the allegation is impermissibly vague and

conclusory. *See Iqbal*, 556 U.S. at 678. Plaintiff provides no details on who

allegedly engaged in the coercive conduct; when the alleged conduct took place;

or whether Plaintiff testified against other members of the Trump campaign after

the "issuance of process."[29] *See id*. ¶¶ 184-85. Nor can one glean this

information from the remainder of the Amended Complaint. *See generally* ECF

No. 34. Given this lack of factual detail, one cannot conclude that the

unspecified "agents or agencies" completed a perversion of the judicial process

or achieved some illegitimate ends after process was issued. *See Franklin v. Curry*,

788 F.3d 1246, 1251 (11th Cir. 2013) (noting a complaint must provide more than

conclusory allegations unsupported by well-pleaded facts).

Second, even if the Court credits Plaintiff's unsupported allegation that the

criminal information was used to coerce him into testifying against members of

---

[29] In the Criminal Case, Plaintiff moved to extend the sentencing proceedings to provide Plaintiff with the opportunity to complete his cooperation in the matter of *United States v. Rafiekian*, Case No. 1:18-cr-00457-AJT (E.D. Va. 2018), which did not involve other members of the Trump campaign and Plaintiff ultimately did not testify at the trial. *See* Criminal Case, ECF No. 151 at 11.

the Trump campaign or administration, such testimony is not outside the "regular purview of" a criminal prosecution and plea agreement.[30]  *Bown*, 601 A.2d at 1079.  To the contrary, as this Court is undoubtedly aware, requiring a criminal defendant to testify truthfully against others as part of a plea bargain is common practice in criminal proceedings.  *See, e.g.*, *United States v. Hall*, 945 F.3d 507, 513 (D.C. Cir. 2019) (finding trial judge did not err when he allowed witnesses to be cross-examined on plea agreements with the government that provided for reduced charges in exchange for testimony); *Woods v. United States*, 987 A.2d 451, 454 (D.C. 2010) (noting D.C. courts have found that a witness may be questioned on direct examination about a plea agreement containing a promise to testify truthfully); *Felder v. United States*, 595 A.2d 974, 979 (D.C. 1991) (recognizing that a typical plea bargain includes one in which an accomplice agrees to testify in exchange for a promise of a reduced sentence). Indeed, in the Criminal Case, the parties recognized that sentencing is often delayed so that a criminal defendant may complete cooperation with the prosecution in other matters.  *See* Criminal Case, ECF No. 311 at 8 (noting the court's usual practice is to impose a sentence only after the completion of a defendant's cooperation).

Requiring one to provide truthful testimony as part of a prosecution and

---

[30] As part of the plea agreement, the United States agreed not to charge Plaintiff with additional offenses stemming from Plaintiff's violation of the Foreign Agents Registration Act, 18 U.S.C. § 951.  *See* Criminal Case, ECF Nos. 3,4.

plea agreement is not the kind of perversion of the judicial process that gives rise to an abuse of process claim.  *See Scott,* 101 F.3d at 755 (noting that "[t]he essence of the tort of abuse of process is the use of the legal system to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally or regularly be required to do.").

Finally, to the extent Plaintiff bases his abuse of process claim on the acquisition of the FISA warrants, these allegations similarly fail because Plaintiff has not alleged that the unspecified "wrongdoers" "used the warrants wrongfully, 'to accomplish some end which the process was not intended by law to accomplish.'" *Page,* 628 F. Supp. 3d at 132 (quoting *Hall v. Field Enters, Inc.,* 94 A.2d 479, 481 (D.C. 1953)).  In fact, Carter Page—the target of the FISA warrants—previously asserted a claim for abuse of process based upon the same FISA warrants, and the DDC rejected the claim outright on a motion to dismiss finding that, like Plaintiff, Mr. Page's allegations primarily involved alleged conduct that occurred prior to the issuance of the warrants and thus could not serve as a basis for an abuse of process claim.  *See Page*, 628 F. Supp. 3d at 131-32; *see also* ECF No. 34 ¶¶ 30-44. Additionally, the DDC found that the remaining allegations—that the warrants were used to surveil Mr. Page and the Trump campaign—could not suffice for an abuse of process claim because surveillance is the "ordinary purpose" of a FISA warrant and there was no indication the warrants were used unlawfully after issuance.  *Page*, 628 F. Supp. 3d at 132.  The same is true here.  Plaintiff fails to

plausibly allege any improper use of the FISA warrants "after issuance." *Hall*, 147 A.2d at 868.

For these reasons, Plaintiff has failed to state a claim for abuse of process under District of Columbia law and the abuse of process claim should be dismissed.

## IV.   PLAINTIFF'S ABUSE OF PROCESS CLAIM IS TIME-BARRED UNDER 28 U.S.C. § 2401(b)

Even if the Court finds that Plaintiff's Amended Complaint has stated a valid claim for abuse of process, the claim is time-barred because Plaintiff presented it to the DOJ more than two years after it accrued.

Pursuant to the FTCA, a claim is untimely "unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b).  Generally, a cause of action accrues under the FTCA when a plaintiff becomes aware that he has suffered an injury and has sufficient information to know its cause. *United States v. Kubrick*, 444 U.S. 111, 120 (1979).  Here, Plaintiff alleges that his administrative claim was presented to DOJ on March 3, 2022,[31] ECF No. 34 ¶ 177; therefore, Plaintiff's abuse of process claim is untimely if it accrued prior to March 3, 2020.

With respect to Plaintiff's allegations that unspecified "agents and agencies" threatened to bring process against his son, *see id*. ¶ 184, although the Amended Complaint provides no factual details regarding when the alleged threat occurred, it

---

[31] A claim is "deemed to have been presented" under the FTCA when the federal agency "receives written notification . . . accompanied by a claim for money damages." 28 C.F.R. § 14.2(a).

must have occurred prior to Plaintiff's guilty plea on December 1, 2017, as the threat allegedly was made to coerce Plaintiff into pleading guilty. *See* Criminal Case, ECF No. 3 (indicating Plaintiff entered his plea of guilty on December 1, 2017). Plaintiff cannot argue that he was unaware of the alleged threat prior to the plea because he contends that the threat of process was the catalyst for his guilty plea. *See* ECF No. 34 ¶¶ 169, 184. Yet, despite being aware of both the alleged harm and its cause in December 2017, Plaintiff did not bring his abuse of process claim until March 2022—over four years after the claim accrued. As such, any abuse of process claim based on a threat of process to Plaintiff's son is time-barred.

With regard to Plaintiff's allegation that unspecified "agents and agencies" sought to use process to coerce Plaintiff into testifying against other members of the campaign, *id*. ¶¶184-85, it is clear that any such abuse of process claim accrued prior to August 30, 2019. On that date, Plaintiff and the United States filed a Joint Status Report in the Criminal Case, in which Plaintiff acknowledged that his "cooperation is complete," and the United States agreed that Plaintiff's "cooperation ha[d] ended." Criminal Case, ECF No. 107 at 2, 4. Thus, any alleged attempts to coerce testimony had concluded by August 30, 2019, and Plaintiff was fully aware of the injury he allegedly sustained as a result. Nonetheless, Plaintiff waited over two years to submit an administrative claim alleging an abuse of process and, thus, the claim is barred.

Any claim based on the FISA process is also time-barred. Again, the Amended Complaint provides little insight on when any alleged wrongdoing took

place, but Plaintiff's own filings in the Criminal Case indicate that he was well aware of any alleged harm stemming from the FISA process by January 29, 2020.  On that date, Plaintiff filed a lengthy motion to dismiss the Criminal Case against him for egregious Government misconduct.  *See* Criminal Case, ECF No. 162.  Notably, Plaintiff argued that dismissal was appropriate based upon information contained in the OIG Report, which identified various mistakes in the Government's acquisition of FISA warrants targeting Carter Page during the Crossfire Hurricane investigation. *See id.* at 6-16.  Because it is apparent from Plaintiff's own filings that he was aware of any alleged harm stemming from the FISA applications by January 29, 2020, at the latest, he was required to file his administrative claim before January 29, 2022. He did not do so, and, thus, his claim is time-barred.

Accordingly, even if Plaintiff has plausibly alleged an abuse of process claim, it is time-barred pursuant to 28 U.S.C. § 2401(b) and must be dismissed.[32]

---

[32] In his response to the United States' motion to stay, Plaintiff indicated that "the Amended Complaint will contain additional details regarding the facts and circumstances which justify equitable tolling," ECF No. 31 at 6 n.1, but the Amended Complaint does not appear to include any such allegations.  "[E]quitable tolling is an extraordinary remedy which should be extended only sparingly."  *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1242 (11th Cir. 2004)) (quotation omitted).  As a result, equitable tolling is only appropriate when a plaintiff demonstrates untimely filing due to "extraordinary circumstances that are both beyond [Plaintiff's] control and unavoidable even with diligence."  *Dotson v. United States*, 30 F.4th 1259, 1268 (11th Cir. 2022) (internal quotations omitted).  In his response to the motion to stay, Plaintiff indicated that equitable tolling should apply, because Plaintiff should not "be [] required to file his claim when he was still under active threat by the same DOJ that coerced his guilty plea and then wrongfully charged and prosecuted him."  ECF No. 31 at 6 n.1.  Courts, however, have consistently rejected the application of equitable tolling under similar circumstances.  *See, e.g., Wallace v. Kato*, 549 U.S. 384, 397 (2007) (finding that § 1983 claim was not equitably tolled during the duration of underlying criminal proceedings); *Shrum v. Cooke*, 60 F.4th 1304, 1309 (10th Cir. 2023) (rejecting argument that civil rights claim was tolled pending resolution of Plaintiff's criminal case).

## CONCLUSION

WHEREFORE, the United States respectfully requests that the Court grant this motion and dismiss the Amended Complaint for failure to state a claim and/or lack of subject-matter jurisdiction.

## <u>Local Rule 3.01(g) Certification</u>

On September 15, 2023, the undersigned certifies that she conferred with counsel for Plaintiff by telephone regarding this motion, and counsel advised that Plaintiff opposes the relief requested in this motion.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JAMES G. TOUHEY, JR.
Director, Torts Branch

By: <u>/s/Kristin McGrory</u>
KRISTIN B. MCGRORY
HERMAN J. HOYING
Trial Attorneys
U.S. Department of Justice
Civil Division, Torts Branch
P.O. Box 888 Ben Franklin Station
Washington, DC 20044
Phone: 202-616-4206
Email: kristin.b.mcgrory@usdoj.gov
Attorneys for Defendant United States of
America

LACY R. HARWELL, JR.
Assistant United States Attorney
Florida Bar No. 0714623
Office of the United States Attorney
For the Middle District of Florida
400 N. Tampa St., Suite 3200
Tampa, Florida 33602
Tel. (813) 274-6000
Email: Randy.Harwell@usdoj.gov
Attorney for Defendant United States of
America

## <u>CERTIFICATE OF SERVICE</u>

     I HEREBY CERTIFY that on September 15, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notice of the filing to all parties of record.


<u>/s/Kristin McGrory</u>
Kristin B. McGrory
Trial Attorney