# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### Tampa Division

| | | |
|---|---|---|
| MICHAEL T. FLYNN, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | No. 8:23-cv-00485 (MSS/CPT) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS THE AMENDED COMPLAINT

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................... i

TABLE OF AUTHORITIES................................................ ii

STANDARD OF REVIEW ................................................ 1

ARGUMENT   ............................................................. 3

    I.    This Court has subject matter jurisdiction. ............................... 3

    II.    General Flynn has plausibly stated a claim that he was maliciously prosecuted by the United States. ........................... 9

        a.    The underlying criminal case resolved in General Flynn's favor because the DOJ motion to dismiss showed sufficient indicia of innocence............................................... 10

        b.    The United States lacked probable cause for its criminal case against General Flynn....................................... 16

        c.    Investigative and law enforcement officers procured the malicious prosecution against General Flynn................... 19

    III.    The United States is liable for abuse of process. .................... 22

        a.    The abuse of process claim is not time barred. ................. 22

        b.    General Flynn has pleaded a claim for abuse of process... 26

CONCLUSION ............................................................ 29

CERTIFICATE OF SERVICE ........................................ 30

# TABLE OF AUTHORITIES

**Cases**

*Ammerman v. Newman,* 384 A.2d 637, 639 (D.C. 1978) (per curiam) ............. 9

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ....................................................... 2

*Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 681
(D.C. Cir. 2009) ................................................................................................ 2

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ............................... 2

*Bonilla v. United States*, 652 Fed. App'x 885, 890–91 (11th Cir. 2016) .......... 6

*Brown v. Carr*, 503 A.2d 1241, 1244 (D.C. 1986) .................................. 9, 10, 11

*Burdick v. United States*, 236 U.S. 79, 94 (1915) ...................................... 14, 15

*Carrero v. Farrelly*, No. JKB-16-3939, 2018 WL 1761957 at *4–5
(D. Md. Apr. 12, 2018) ..................................................................................... 7

*Clark v. District of Columbia*, 241 F. Supp. 3d 24, 34–35 (D.D.C. 2017) . 11, 13

*Dellums v. Powell*, 566 F.2d 167, 192 (D.C. Cir. 1977) .......................... 3, 19, 20

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ....................................................... 2

*Fusco v. United States*, 2021 WL 1061208, at *4 (D.D.C. Mar. 19, 2021) ...... 25

*Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13
(D.D.C. 2001) .................................................................................................... 1

*Hall v. Hollywood Credit Clothing Co.*, 147 A.2d 866, 868 (D.C. 1959) ......... 26

*In re North,* 62 F.3d 1434, 1437 (D.C. Cir. 1994) ............................................ 15

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990) ........................ 23, 24

*Jaffe v. Stone,* 18 Cal.2d 146, 150 (1941) ......................................................... 10

*Jones v. City of Chicago*, 856 F.2d 985, 993 (7th Cir 1988) ............................ 22

*Koutny v. Martin*, 530 F. Supp. 2d 84, 87 (D.D.C. 2007) ................................... 2

*La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) ........ 23

*Lackner v. LaCroix,* 25 Cal.3d 747, 750 (1979) ............................................... 10

*Lozano v. Montoya Alvarez*, 572 U.S. 1, 10, 11 (2014) .............................. 24, 25

*Mahmood v. U.S. Dep't of Homeland Sec.*, 2021 WL 5998385, at *3
   (D.D.C. Dec. 20, 2021) ................................................................................. 2

*McCarthy v. Kleindienst*, 741 F.2d 1406, 1414 (D.C. Cir. 1984) .................... 26

*Minasian v. Sapse,* 80 Cal.App.3d 823, 827 (1978) ......................................... 11

*Moher v. United States*, 875 F. Supp. 2d 739 (W.D. Mich. 2012) ..................... 8

*Moore v. United States*, 213 F.3d 705, 710 (D.C. Cir. 2000) ............ 3, 19, 20, 22

*Morowitz v. Marvel*, 423 A.2 196, 198 (D.C. 1980) ......................................... 26

*Nolan v. Allstate Home Equipment Co.,* 149 A.2d 426, 429 (D.C. 1959) ......... 9

*Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) ............................................... 24

*Scott v. District of Columbia*, 101 F.3d 748, 756 (D.C. Cir. 1996) ................. 26

*Shulman v. Miskell,* 626 F.2d 173, 175 (D.C. Cir. 1980) ................................. 10

*Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 n.13
   (11th Cir. 2005) ........................................................................................... 23

*Thorp v. District of Columbia*, 319 F. Supp. 3d 1, 22, 23 (D.D.C. 2018),
   *aff'd,* 788 F. App'x 8 (D.C. Cir. 2019) ................................................. 26, 28

*Tyler v. Central Charge Service, Inc.,* 444 A.2d 965, 968 (D.C.1982)
   (per curiam) ................................................................................................... 9

*United States v. Schaffer*, 240 F.3d 35, 38 (D.C. Cir. 2001) ........................... 15

*United States v. Wong*, 575 U.S. 402, 412 (2015) ........................................... 24

*Urmancheev v. Immigr. & Customs Enf't Health Servs. Corps*,
   No. 22CV0762-CAB (MSB), 2022 WL 17541026, at *4
   (S.D. Cal. Dec. 8, 2022) .................................................................................. 7

*Weisman v. Middleton, supra,* 390 A.2d 996, 1002 (D.C. 1978) ...................... 9

*Young v. United States*, 535 U.S. 43, 49–50 (2002) ................................... 23, 24

## Statutes

18 U.S.C. § 4205(c) ........................................................................................ 17

8 U.S.C. § 2680(h) ............................................................................................ 3

## Rules

Fed. R. Crim. P. 32(d) ............................................................................... 17, 19

The United States seeks to deprive General Flynn of his ability to obtain justice for himself, for his reputation, and for his family based on the erroneous and vindictive final act of Judge Sullivan. Defendant argues that because Judge Sullivan forced General Flynn into accepting a Presidential pardon and then dismissed the case as "moot," rather than dismissing months prior for lack of prosecution, General Flynn is barred from recovery. Fortunately, this is an incorrect application of the law and the facts of this case. General Flynn meets the favorable outcome test because the motion to dismiss filed by the Department of Justice on May 7, 2020, along with the recommendation of dismissal by independent prosecutors assigned to review the case, was a sufficient indicator of innocence.

General Flynn has also more than adequately alleged the improper actions of individual law enforcement and investigative officers of the United States, both known and unknown, whose actions subject Defendant to liability for malicious prosecution and abuse of process. Therefore, General Flynn respectfully requests this Court deny the United States' Motion to Dismiss.

## STANDARD OF REVIEW

Under a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), "the plaintiff bears the burden of establishing that the court has jurisdiction." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Courts, however, must accept as true all factual

allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *Koutny v. Martin*, 530 F. Supp. 2d 84, 87 (D.D.C. 2007).

Likewise, when ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (other citations omitted). A 12(b)(6) motion to dismiss "does not test a plaintiff's ultimate likelihood of success on the merits." *Mahmood v. U.S. Dep't of Homeland Sec.*, 2021 WL 5998385, at *3 (D.D.C. Dec. 20, 2021). As the Supreme Court stated, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## ARGUMENT

## I.    This Court has subject matter jurisdiction.

The United States has waived sovereign immunity as to conduct resulting in malicious prosecution and abuse of process claims from investigative or law enforcement officers, giving this Court subject matter jurisdiction. 8 U.S.C. § 2680(h). While Defendant is correct that prosecutors generally enjoy immunity, others may still be liable for the procurement of a malicious prosecution. *Moore v. United States*, 213 F.3d 705, 710 (D.C. Cir. 2000). This is established through a "'chain of causation' linking the defendant's actions with the initiation of criminal proceedings." *Id.* (quoting *Dellums v. Powell*, 566 F.2d 167, 192 (D.C. Cir. 1977)). Defendant concedes that the FBI agents named in the Amended Complaint are investigative or law enforcement officers. ECF. No. 38, at 21. General Flynn's Amended Complaint is replete with specific examples of misconduct from specific investigative or law enforcement officers responsible for procuring the malicious prosecution, as well as for abuse of process, giving this Court subject matter jurisdiction.

First, the Amended Complaint alleges that James Comey, the Director of the FBI, verified under penalty of perjury three false FISA warrant affidavits as part of the umbrella Crossfire Hurricane investigation, participated in and approved the initiation and continuation of the Crossfire Razor investigation into General Flynn, as well as the decision to send agents

3

to interview General Flynn without investigative predicate and without notice to White House counsel, and assisted in the decision to prosecute General Flynn without proper basis or probable cause. ECF No. 34 at ¶ 14. Second, that Andrew McCabe, the Deputy Director of the FBI, "was a key participant in the initiation and continuation of the investigation into General Flynn, as well as the decision to send agents to interview General Flynn without notice to White House counsel." *Id*. at ¶ 15. Third, that FBI agents Lisa Page and Pete Strzok "were part of the investigation into President Trump and General Flynn, [and] continued to influence that investigation and prosecution as part of the SCO." *Id*. at ¶ 16. This was part of the "insurance policy" that Strzok and Page discussed. *Id*. at ¶ 31.

The Amended Complaint continues with more examples of specific misconduct. For example, Strzok kept open the wrongful investigation into General Flynn even after he knew there was no basis to open it, much less maintain it. *Id*. at ¶¶ 65–68. Further, FBI Director Comey and FBI Deputy Director McCabe, investigative and law enforcement officials, met with President Obama, Vice President Biden, Acting Attorney General Yates, CIA Director Brennan, ODNI Director Clapper, and National Security Advisor Rice to discuss a plan to prosecute General Flynn. *Id*. at ¶¶ 80–81. Part of this plan was a perjury trap interview of General Flynn by the FBI, without permission or notice to the White House. *Id*. at ¶¶ 93–98. Comey knew that covertly

4

sending counterintelligence agents to interview General Flynn was wrong, however, he believed he would get away with it due to the early disorder in the Trump administration. *Id.* at ¶ 99. But for this wrongful interview, General Flynn would never have been prosecuted. *Id.* Even after the interview, Strzok improperly doctored the 302 form—the basis for the eventual charge of supposedly lying to the FBI—consulting with Page on the language, weeks after the 302 was required to be turned in. *Id.* at ¶¶ 111, 114.

Beyond the allegations specifically naming government employees, General Flynn's Amended Complaint sufficiently alleges the conduct of government agency employees generally, which gave rise to this suit. For example, the Amended Complaint notes that certain FBI agents and leadership wanted to keep the Crossfire Razor investigation open to find a crime and did so based on non-problematic and non-criminal phone calls. *Id.* at ¶¶ 58–59, 64, 79. Further, that senior leadership at the FBI unethically, and with malice, continued their investigation into General Flynn. *Id.* at ¶ 67. And that FBI, DOJ, and EOP officials used their positions of power to wrongfully investigate General Flynn and used the NSA to unmask him. *Id.* at ¶¶ 76–77. Additionally, that FBI leadership manipulated General Flynn into attending the interview, which led to the interrogation, without counsel, and eventually used doctored notes from the interview to prosecute General Flynn. *Id.* at ¶¶ 104, 114. These officers knew General Flynn was innocent, that his conduct

was "legit," yet they pushed on with the prosecution, nonetheless. *Id.* at ¶¶ 133, 139, 143.

Additionally, not all employees within the DOJ and the SCO were prosecutors. Thus, those employees would not be immune. As General Flynn properly alleged, the SCO employed many of the FBI agents who initiated the improper investigation into General Flynn and are considered investigative and law enforcement officials. *Id.* at ¶¶ 16, 117–18. The SCO employed attorneys who were investigative and law enforcement officers and were not prosecutors, and these SCO attorneys had the power to and did in fact issue search warrants. *Id.* at ¶ 120. It was these SCO employees from the FBI and DOJ, not the prosecutors, that procured the criminal information by providing false information and by pressuring SCO into filing criminal charges. *Id.* at ¶ 124.

While Defendant cites three cases for its argument that allegations against agency employees generally are insufficient, these cases do not actually support that premise. In fact, the Eleventh Circuit case that Defendant chiefly relies on, *Bonilla*, cuts directly against Defendant's argument.

In *Bonilla*, the Eleventh Circuit affirmed the dismissal of the complaint because the plaintiff failed to plead *any* specific misconduct of DEA agents and did not name a single law enforcement or investigative officer. *Bonilla v. United States*, 652 Fed. App'x 885, 890–91 (11th Cir. 2016). *Bonilla* is not even

close to the case at bar. General Flynn has made *numerous* and specific allegations of misconduct on the part of the FBI and investigative officers at the DOJ and SCO that led to his wrongful prosecution. This is directly in contrast to the facts of *Bonilla*.

Defendant's remaining two cases are, likewise, inapposite. First, in *Urmancheev*, the plaintiff's allegations were too generalized and insufficient wherein the allegations were only against "[t]he United States government, its agencies, and employees thereof," and against an independent contractor, Core Civic Corporation. *Urmancheev v. Immigr. & Customs Enf't Health Servs. Corps*, No. 22CV0762-CAB (MSB), 2022 WL 17541026, at *4 (S.D. Cal. Dec. 8, 2022). Here, as discussed above, General Flynn's Amended Complaint is detailed and specific in naming specific employees and alleging that it was investigative and law enforcement officers, not prosecutors, within the FBI, DOJ, and SCO who harmed him.

Second, in *Carrero*, the court found the allegations conclusory because they did not establish facts indicating that the specific DHS officials who harmed the plaintiff were "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Carrero v. Farrelly*, No. JKB-16-3939, 2018 WL 1761957 at *4–5 (D. Md. Apr. 12, 2018). In contrast, General Flynn alleges the specific duties that individual wrongdoers had, as well as the conduct that FBI leadership undertook, making them

7

investigative and law enforcement officers. Further, Defendant openly admits that the FBI agents General Flynn named are, in fact, investigative or law enforcement officers. Def. Mot. at 21.

Practically speaking, it would be impossible for most plaintiffs to bring an FTCA lawsuit if this Court were to apply the standard Defendant seeks. Most plaintiffs are unaware of the specific identities of the government employees who harmed them until at least some discovery is completed.

Thus, oftentimes general allegations, without specific employee names, is the only option for a plaintiff. *See Moher v. United States*, 875 F. Supp. 2d 739 (W.D. Mich. 2012) (upholding a complaint where the plaintiff only generally asserted that Customs and Border patrol officers, without naming the specific officers, committed various torts). General Flynn's allegations against employees of, and leadership in, the FBI, the DOJ, and the SCO, not including prosecutors, is sufficient at the pleading stage. Nevertheless, as described above, General Flynn did, in fact, allege many of the specific actors who procured the malicious prosecution and abuse of process against him. Accordingly, General Flynn has sufficiently pled subject matter jurisdiction in this matter.

## II.    General Flynn has plausibly stated a claim that he was maliciously prosecuted by the United States.

The District of Columbia Court of Appeals has determined a plaintiff must prove four elements to support a claim for malicious prosecution: "(1) the underlying suit terminated in the plaintiff's favor; (2) malice on the part of the defendant; (3) lack of probable cause for the underlying suit; and (4) special injury occasioned by the plaintiff as the result of the original action." *Brown v. Carr*, 503 A.2d 1241, 1244 (D.C. 1986) (citing *Tyler v. Central Charge Service, Inc.,* 444 A.2d 965, 968 (D.C. 1982) (per curiam) (citation and footnote omitted); *see also Weisman v. Middleton, supra,* 390 A.2d 996, 1002 (D.C. 1978); *Ammerman v. Newman,* 384 A.2d 637, 639 (D.C. 1978) (per curiam); *Nolan v. Allstate Home Equipment Co.,* 149 A.2d 426, 429 (D.C. 1959).

It is chilling that the United States—after putting General Flynn and his family through three years of a Kafkaesque nightmare—now relies on similarly Kafkaesque arguments to avoid responsibility. First, they hide behind Judge Sullivan's erroneous refusal to dismiss for lack of prosecution and his eventual dismissal of the criminal case as moot to claim that it did not result favorably for General Flynn. Second, they claim that General Flynn's *coerced* guilty plea absolves them of their lack of probable cause. Defendant then claims, incredibly, that the FBI had nothing to do with procuring the

prosecution, so they are off the hook. None of these procedural arguments hold any water.

### a. The underlying criminal case resolved in General Flynn's favor because the DOJ motion to dismiss showed sufficient indicia of innocence.

General Flynn received a favorable outcome in this case, despite the best efforts of Judge Sullivan. "The requirement of favorable termination has long been recognized as an element in a claim of malicious prosecution in this jurisdiction." *Brown*, 503 A.2d at 1244. (citing *Shulman v. Miskell,* 626 F.2d 173, 175 (D.C. Cir. 1980) (finding that the District of Columbia has consistently followed common law rule requiring favorable termination)). Citing the dearth of cases discussing the favorable termination requirement within the District of Columbia precedent, the District of Columbia Court of Appeal turned to California law. "In California, the theory underlying the requirement of favorable termination 'is that it tends to indicate the innocence of the accused, and coupled with the other elements of lack of probable cause and malice, establishes the tort [of malicious prosecution].'" *Id.* at 1245 (citing *Lackner v. LaCroix,* 25 Cal.3d 747, 750 (1979) (quoting *Jaffe v. Stone,* 18 Cal.2d 146, 150 (1941)).

Therefore, the District of Columbia adopted the California requirement that a termination that "indicate[s] the innocence of the accused . . . is a favorable termination sufficient to satisfy the requirement" for termination in

favor of the plaintiff. *Id.* (citations omitted). The D.C. Court of Appeals carefully noted that termination based on procedural issues such as statute of limitations or laches would not serve as a proper basis as they did not go to the merits of the underlying case. *Id.* (citations omitted). The DC Court of Appeals also specifically noted that, "[i]n contrast [to procedural issues], dismissal for failure to prosecute has been held to be a favorable termination where the facts of the case indicate that such a disposition reflects on the innocence of the defendant in the underlying suit. *Id.* (citing *Minasian v. Sapse,* 80 Cal.App.3d 823, 827 (1978)).

In *Clark v. District of Columbia*, the court determined that plaintiff had sufficiently alleged that the proceedings terminated in his favor and showed his innocence when the government had moved to dismiss the case against defendant without prejudice. 241 F. Supp. 3d 24, 34–35 (D.D.C. 2017). Specifically, the court "[c]onclude[d] that Plaintiff has pled sufficient facts for the Court to draw a plausible inference, at this stage of the proceeding, that the government's voluntary dismissal of the case without prejudice tends to reflect Plaintiff's innocence." *Id.* at 35.

Pursuant to the logic of the *Clark* court, the United States' motion to dismiss, filed in General Flynn's criminal case, is sufficient at the motion to dismiss stage of this case to establish that the government tended to reflect the innocence of General Flynn. *Id.* Indeed, while the *Clark* decision dealt with a

11

motion to dismiss without prejudice, in General Flynn's case, the Department of Justice moved to dismiss their claims *with prejudice*.

Moreover, the Department of Justice's own motion is replete with details that show General Flynn's innocence. In summary, it stated:

> [T]he Government has concluded that the interview of Mr. Flynn was untethered to, and unjustified by, the FBI's counterintelligence investigation into Mr. Flynn—a no longer justifiably predicated investigation that the FBI had, in the Bureau's own words, prepared to close because it had yielded an "*absence* of *any* derogatory information." The Government is not persuaded that the January 24, 2017 interview was conducted with a legitimate investigative basis and therefore does not believe Mr. Flynn's statements were material even if untrue.

ECF No. 34-4 at 2 (citations omitted and emphasis added by DOJ). The motion to dismiss specifically references newly disclosed *Brady* material, including the handwritten note of Bill Priestap from the morning of General Flynn's interview where he writes, "What's our goal? Truth/Admission or to get him to lie, so we can prosecute him or get him fired?" *Id.* at 8, n.2.

The Department of Justice argues this case is inapplicable solely because Judge Sullivan's justifications for dismissal was not based on General Flynn's innocence. *See* ECF No. 38 at 35, n.23. Buried in a footnote, the United States whistles past the graveyard, scrupulously ignoring the exculpatory evidence and evidence that the FBI manufactured a process crime against a decorated war hero.

The United States relies myopically upon Judge Sullivan's dismissal; however, Judge Sullivan's partisan and erroneous decision to dismiss as moot is irrelevant to whether there is a showing of innocence.[1] Indeed, the United States' argument belies a clear misunderstanding of the law. The *Clark* ruling focuses on the Department of Justice's decision to move to dismiss and determined that moving to dismiss indicates innocence of the charges brought. *Clark*, 241 F. Supp. 3d at 35. This is logical as the question presented to the Court is whether the entirety of the circumstances of the dismissal indicate the innocence of the plaintiff, not whether it is reflected on the fact of the dismissal of the action.

Moreover, the United States makes much of General Flynn pleading guilty to the manufactured process crime as though this indicated actual guilt. This entirely ignores the threat made by SCO to prosecute General Flynn's son if he did not plead guilty. It ignores that it was General Flynn's right to withdraw his guilty plea at any time—which he later did once the improperly withheld exculpatory evidence was finally released. It also ignores that there was no basis for an investigation, no basis for the FBI interview, and no basis

---

[1] If Judge Sullivan's stubborn refusal to dismiss for lack of prosecution were dispositive in this case, it would be yet another Kafkaesque injustice.

to claim that General Flynn's statements—even if untrue—were material to the baseless investigation. In short, the United States ignores that there was *no crime* to which General Flynn could plead guilty. As the United States well knows, many innocent people cut deals and plead guilty to crimes they did not commit due to the awesome prosecutorial powers of the government, even when those powers are not being maliciously used against them.

As alleged in the Amended Complaint, this is what happened here: the United States threatened to charge General Flynn's son with crimes if he did not plead guilty, and then concealed that side deal from the court. ECF No. 34 at ¶ 128. Indeed, there was a pending motion to withdraw the plea at the time that the Department of Justice moved to dismiss the case against General Flynn, which he could have pursued if not for the unprecedented and erroneous actions of Judge Sullivan.

The Department of Justice's argument that acceptance of a plea carries an imputation of guilt is also legally flawed. Def. Mot. at 36. The United States argues that a case resolved by a presidential pardon "carries an imputation of guilt; acceptance a confession of it." Def. Mot. at 36 (citing *Burdick v. United States*, 236 U.S. 79, 94 (1915)).

Despite the language used by the Supreme Court in *Burdick*, an imputation of guilt is not automatic or total. In *United States v. Schaffer*, the District of Columbia Circuit determined that "a pardon does not, *standing*

14

*alone*, render Schaffer innocent of the alleged . . . violation. In fact, acceptance of a pardon *may* imply a confession of guilt." *United States v. Schaffer*, 240 F.3d 35, 38 (D.C. Cir. 2001) (citing *In re North,* 62 F.3d 1434, 1437 (D.C. Cir. 1994); *Burdick v. United States,* 236 U.S. 79, 91, 94 (1915)) (emphasis added).

In *Schaffer,* the D.C. Circuit specifically rejected the prosecution's "odd suggestion that Schaffer's conviction is established as a matter of law" due to his acceptance of the pardon. *Id.* at 38. The D.C. Circuit reached this conclusion because "[f]inal judgment never [was] . . . reached on [the conviction], because the appeals process was terminated prematurely." *Id.* In *Schaffer*, the defendant was granted a new trial and the new trial was pending when he was pardoned. Therefore, a critical aspect of the *Schaffer* case is that there was no conviction or underlying finding of guilt against Schaffer when the pardon was entered.

Here, General Flynn pleaded guilty but moved to withdraw his plea and had not yet been sentenced. Indeed, General Flynn's case was still pending when he was pardoned. Therefore, pursuant to *Schaffer,* binding precedent for this Court, the mere fact that General Flynn accepted a pardon *may* imply a confession of guilt, but it does not automatically do so. Indeed, as indicated in *Schaffer*, a pardon *standing alone* might not be sufficient to show innocence, but in this case General Flynn does not rely on his pardon standing alone. General Flynn's innocence is demonstrated not only by the pardon, but by the

15

late-disclosed *Brady* material showing the complete lack of investigative predicate for an interview of General Flynn and lack of any materiality of General Flynn's statements (even if untrue), the DOJ motion to dismiss, and President Trump's public statement that General Flynn was being pardoned because he was innocent.

General Flynn has adequately alleged that the criminal case against him terminated in his favor. Indeed, he has at least plausibly alleged this fact requiring that this case proceed to discovery.

### b.     The United States lacked probable cause for its criminal case against General Flynn.

The United States' entire argument that it had probable cause to initiate its prosecution rests upon General Flynn's guilty plea, which he was within his rights to withdraw at any time, and which he did in fact seek to withdraw, and specifically ignores the contents of the Motion to Dismiss, filed by the Department of Justice. This argument falls to pieces when confronted with the motion to dismiss.

The Department of Justice moved to dismiss its case against General Flynn because:

> The Government is not persuaded that the January 24, 2017 interview was conducted with a legitimate investigative basis and therefore does not believe Mr. Flynn's statements were material even if untrue.

ECF No. 34 at ¶ 1. Moreover, "[b]ecause the Government does not have a substantial federal interest in penalizing a defendant for a crime that it is not satisfied occurred and that it does not believe it can prove beyond a reasonable doubt, the Government now moves to dismiss the criminal information under Rule 48(a)." ECF No. 34-4 at 12.

Specifically, the Department of Justice determined that General Flynn's statements simply did not relate to any ongoing federal investigation and therefore could not be "material" to an investigation. Because a statement must be both untrue and somehow material to an ongoing federal investigation to be actionable under Section 1001, General Flynn's statements *per se* could not be within the bounds of Section 1001.

The United States had the ability to assess whether the statements related to any ongoing investigation, and it failed to do so. Therefore, the charges lacked probable cause from the outset of the case.

Despite the United States' protestations regarding General Flynn's plea, it has failed to consider and address the simple fact that a defendant has the right to withdraw his plea at any time before sentencing. Fed. R. Crim. P. 32(d) ("If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, imposition of sentence is suspended, or disposition is had under 18 U.S.C. § 4205(c), the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason."). It is certainly fair and

reasonable to allow a plea to be withdrawn when the prosecution admits it does not believe that the statements at issue were material even if they are untrue. Indeed, it is the government's burden to ensure that it has assured itself that probable cause exists before initiating a prosecution.

The United States Attorney for the District of Columbia, the chief law enforcement officer for the Department of Justice in the District of Columbia, advised the DDC that he and the Department of Justice did not believe that General Flynn's statements were material to an investigation, even if they were untrue. ECF No. 34-4 at 12. This means that there was no crime and no probable cause for the charges.

Moreover, this decision by the chief law enforcement officer for the District of Columbia was not made based solely on his own view of the case. It was made after an independent review by another United States Attorney assigned to review the case and recommend whether it should be dismissed. ECF No. 34 at ¶ 135. High-level, *independent* prosecutors reviewed the case and came to the same conclusion that it should be dismissed because it *should never have been brought at all. See id.*

In contrast to this logical inference, which must be drawn in favor of the Plaintiff at this stage of the case, the United States brusquely seeks to brush past the motion to dismiss filed by its Department of Justice to focus solely on General Flynn's coerced guilty plea. General Flynn, however, properly moved

18

to withdraw his plea, as he was entitled to do. Fed. R. Crim. P. 32(d). And, as cannot be overstated, the "crime" to which he pleaded guilty was not actually a crime, because his statements—even if untrue—were not material to any investigation—even ignoring the lack of investigative predicate. *See* ECF No. 34-4 at 12–19.

Probable cause must be assessed at the initiation of the case, but for purposes of this motion, must also be assessed based on the allegations and facts properly before this Court. The simple facts are that General Flynn withdrew his guilty plea, and the Department of Justice, on the recommendation of multiple high level independent prosecutors, moved to dismiss the case against General Flynn because there was no probable cause for the charges against him from the beginning.

### c.   Investigative and law enforcement officers procured the malicious prosecution against General Flynn.

As noted, Defendant is liable for the procurement of the malicious prosecution against General Flynn. *Moore*, 213 F.3d at 710. This is because of the chain of causation linking non-prosecutor's conduct to the initiation of the criminal proceedings against General Flynn. *Id*. (quoting *Dellums*, 566 F.2d at 192). This chain is only broken when the decision to prosecute is made independent of (1) any pressure or influence exerted by the procuring party, or (2) knowing misstatements from the procuring party. *Id*.

In *Moore*, a postal inspector made misrepresentations to a third party, who then testified as to those misrepresentations at a grand jury, which led to the plaintiff's prosecution. *Id*. The D.C. Court of Appeals found that the presentation of this testimony to the grand jury did not break the chain, neither did the prosecutor's decision to continue the prosecution after the indictment. *Id*. at 711. Thus, the Court concluded that, at the pleading stage, the plaintiff had met his burden to survive motion to dismiss because the complaint sufficiently alleged that the postal inspector procured the prosecution by providing knowing misrepresentations. *Id*.

Likewise, in *Dellums*, the case involved mass arrests occurring after a protest at the United States Capitol. *Dellums*, 556 F.2d at 191–92. The police chief met with prosecutors, gave them his version of events, and, as a result, the prosecutors filed the criminal information. *Id*. That same day, however, the police chief told Congress that the protesters were peaceful and not disorderly. *Id*. at 193. The D.C. Court of Appeals found that it was unlikely that the police chief told prosecutors that the protesters were peaceful and not disorderly, thus, he knowingly provided misrepresentations and could be held liable for procuring a malicious prosecution. *Id*.

Similarly, here, agents of the United States knowingly provided misrepresentations to federal prosecutors, resulting in the malicious prosecution of General Flynn. Investigative and law enforcement officers

initiated an improper investigation into General Flynn, and continued this investigation despite knowing General Flynn was innocent because they needed an "insurance plan." This was ultimately successful in procuring the filing of the criminal information against General Flynn. ECF No. 34 at ¶ 124.

Contrary to Defendant's argument, simply because SCO attorney Jean Rhee disregarded the opinions of *one* FBI agent does not mean that *other* FBI agents did not procure the malicious prosecution, particularly when the Director and Deputy Director of the FBI were pushing for the prosecution of General Flynn and the SCO was full of FBI zealots who were intent on finding a crime. *See, e.g.*, ECF No. 34 at ¶¶ 14–15, 78, 80–102, 118, 159. Further, Defendant seemingly misinterprets General Flynn's Amended Complaint. While Defendant takes note of General Flynn's allegations that the SCO had knowledge of the misstatements, for the premise that this knowledge made the decision to prosecute an independent one, the key in these allegations is that it was FBI agents and SCO *personnel* who were investigative and law enforcement officers, *not* prosecutors, that had knowledge of the misstatements. *Id*. at ¶¶ 114, 117–18, 120. Nowhere in the Amended Complaint does General Flynn allege that the prosecutors who brought the charges knew of any misstatements. Rather, General Flynn alleged that the persons with knowledge of the misstatements were SCO personnel who were investigative and law enforcement officers, which would inherently exclude

prosecutors. Accordingly, the prosecutors' decision to prosecute, as pled, was not made independently of any misstatements.

Moreover, even if the prosecutors themselves knew of the misrepresentations before filing the criminal information, this would not break the chain of causation because this misleading information was still the basis for the prosecutors' decision to bring charges. ECF No. 34 at ¶ 124; *see Moore*, 213 F.3d at 712 (quoting *Jones v. City of Chicago*, 856 F.2d 985, 993 (7th Cir 1988) (holding that a prosecutor's decision to continue the prosecution will not shield an officer's misleading statements if those statements influenced the decision to prosecute). Notably, the caselaw *does not* state that a prosecutor's knowledge of misstatements breaks the chain of causation and Defendant provides no caselaw to the contrary. Rather, if an officer's investigatory conduct leads to a prosecution, then that officer can be held liable. *Moore*, 213 F.3d at 709. Thus, under the motion to dismiss standard, no matter the interpretation, General Flynn sufficiently pled that it was investigative and law enforcement officers who procured the malicious prosecution against him.

### III.   The United States is liable for abuse of process.

#### a.   The abuse of process claim is not time barred.

As an initial matter, General Flynn is bringing this suit for both malicious prosecution and abuse of process during that malicious prosecution. The United States has suggested that General Flynn's abuse of process claim

therefore would have ripened and the statute of limitation would have begun to run when the abuse occurred. This would necessarily have required that General Flynn bring his suit for abuse of process while the malicious prosecution was ongoing. As a result of this timeline, this Court should find that the statute of limitations did not begin to run until the malicious prosecution against General Flynn came to an end, which would make his abuse of process claim timely.

A "statute of limitations bar is an affirmative defense, and plaintiff[s] [are] not required to negate an affirmative defense in [their] complaint." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (quotation omitted). "A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate . . . if it is apparent from the face of the complaint that the claim is time-barred." *Id.* (quotation marks omitted). This requires, at the motion to dismiss stage, an action only be excluded on statute of limitations grounds if it appears beyond a doubt that plaintiffs can prove no set of facts that toll the statute. *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 n.13 (11th Cir. 2005)).

The Supreme Court recognizes it "is hornbook law that limitations periods are 'customarily subject to "equitable tolling[.]"' *Young v. United States*, 535 U.S. 43, 49–50 (2002) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990)). The Supreme Court clarified equitable tolling "pauses the

running of, or 'tolls,' a statute of limitations when a litigant has [1] pursued his rights diligently but [2] some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

The Supreme Court emphasized this determination is made on a "case-by-case basis." *Id.* And it noted "the need for 'flexibility' [and] for avoiding 'mechanical rules'" in this assessment, encouraging courts to "'relieve hardships which, from time to time, arise from a hard and fast adherence' to more absolute legal rules, which, if strictly applied, threaten the 'evils of archaic rigidity.'" *Id.* (citations omitted).

Accordingly, it directed litigants and courts to look to the content of the statutes to determine if the presumption that a federal statute may be equitably tolled is specifically foreclosed. *Id.* at 11 (citing *Young*, 535 U.S. at 49–50). Here, the FTCA does not specifically preclude tolling. In fact, the Supreme Court has found that the FTCA allows for equitable tolling. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990) ("Once Congress has made such a waiver [of sovereign immunity], we think that making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver."); *United States v. Wong*, 575 U.S. 402, 412 (2015) ("The time limits in the FTCA are just time limits, nothing more. Even though they

govern litigation against the Government, a court can toll them on equitable grounds."). Further, the D.C. District Court has reached the same conclusion. *See Fusco v. United States*, 2021 WL 1061208, at *4 (D.D.C. Mar. 19, 2021) (noting that equitable tolling applies to FTCA cases).

Here, General Flynn's circumstances satisfy both prongs required for equitable tolling. He pursued his rights diligently, but extraordinary circumstances prevented him from bringing a timely action. *Lozano*, 572 U.S. at 11. General Flynn was under prosecution by the United States Department of Justice, the same entity that is representing the United States in this litigation, during the time that they would claim should have run out the statute of limitations. While the statute of limitations for malicious prosecution addresses this concern by running from the end of the malicious prosecution, the abuse of process timeline is not as neat. Indeed, it creates situations like this one where equitable tolling is the only remedy to prevent requiring a litigant to come into court to allege abuse of process by the same entity that was currently prosecuting him.

After the dismissal of the case against General Flynn, he timely asserted his claims of malicious prosecution and abuse of process as required by law. This is a case where equitable tolling of the statute is perfectly acceptable to prevent the loss of a claim solely due to exceptional circumstances.

25

### b.     General Flynn has pleaded a claim for abuse of process.

A plaintiff must plead two elements for an abuse of process claim: "(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." *Hall v. Hollywood Credit Clothing Co.*, 147 A.2d 866, 868 (D.C. 1959). The District of Columbia District Court has previously found that a "plaintiff must show, 'in addition to ulterior motive, . . . a 'perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge.'" *Thorp v. District of Columbia*, 319 F. Supp. 3d 1, 23 (D.D.C. 2018), *aff'd*, 788 F. App'x 8 (D.C. Cir. 2019) (citing *Scott v. District of Columbia*, 101 F.3d 748, 756 (D.C. Cir. 1996) (quoting *Morowitz v. Marvel*, 423 A.2 196, 198 (D.C. 1980)). In an abuse of process claim, "[u]nlike a Fourth Amendment claim, an officer's subjective intentions matter, . . . and probable cause is not enough to escape liability." *Id.* at 22 (citing *Scott*, 101 F.3d at 756; *McCarthy v. Kleindienst*, 741 F.2d 1406, 1414 (D.C. Cir. 1984)).

Here, the United States has foregone any contention of whether there was an ulterior motive or malice by its agents against General Flynn. ECF No. 38 at 38, n.26 ("[T]he United States does not concede, but is not challenging the sufficiency of Plaintiff's allegations regarding an ulterior motive."); *id.* at 23, n.14 ("[T]he United States does not concede, but is not challenging the sufficiency of Plaintiff's allegations of malicious intent"). Rather, the United

26

States presents only two arguments as to abuse of process: (1) the allegations are not that an investigative or law enforcement officer abused the judicial process, and (2) Plaintiff failed to plausibly allege that any such process was used for an improper purpose after issuance. *Id.* at 38.

First, as discussed in detail above, actions were taken by law enforcement and investigative officers. Included in these actions were authorization of process and abuse of that process. *See, e.g.*, ECF No. 34 at ¶¶ 62, 77–78, 84, 118, 120, 124. Specifically, as alleged in the Amended Complaint, the United States threatened to charge General Flynn's son with (also bogus) crimes if he did not plead guilty, and then concealed that side deal from the court. *Id.* at ¶¶ 146, 184.

Second, the United States focuses intently on how the plea agreement was entered into the same day as the charges were filed. This demonstrates that the process was used as leverage to obtain a plea agreement shortly in advance of the filing of the charges. This shows that the law enforcement officers involved used threats against General Flynn's son, during ongoing plea negotiations, which imminently ripened into a plea agreement before the District of Columbia District Court. Indeed, law enforcement officers threatened General Flynn's son with criminal prosecution while engaged in plea negotiations. These negotiations then resulted in a plea agreement based on that fact, yet that fact was never disclosed to the court. Rather, the

government officials involved used the threat to obtain their ends but did not want it to be publicly known or known by the Court to what lengths it was willing to go to obtain the plea. ECF No. 34 at ¶ 136. This alone shows that law enforcement officers utilized the charges brought against General Flynn to leverage a plea by threatening his son with additional criminal prosecution. The agents of the United States abused the plea agreement by failing to include all the relevant agreements that were made.

In addition to the above, "an application for a warrant can qualify as abuse of process." *Thorp*, 319 F. Supp. at 22. The specific allegations in the Amended Complaint include that all of the government wrongdoers were aware that there was no basis for charges against General Flynn, and yet the government pursued, charged, and likely sought search warrants and other warrants against General Flynn. *See, e.g.*, ECF No. 34 at ¶ 120. This is a use of process against a person that was known to be innocent in search of a crime, and in abuse of the process issued. A striking example of this is the widespread unmasking requests during this period. As alleged in the Amended Complaint, many officials sought to unmask General Flynn. *Id.* at ¶¶ 62, 77–78, 84. It beggars belief that the law enforcement and investigative officers of the SCO, obsessed with finding a crime, and highly aggressive in their issuance of search warrants, would not have applied for sealed search warrants and investigative tools involving the judicial process against General Flynn. These actions, while

knowing that the investigation into General Flynn was not based on any probable cause, would be an abuse of process. Accordingly, Defendant is liable for abuse of process and General Flynn respectfully requests that this Court deny Defendant's motion to dismiss.

## CONCLUSION

In his Amended Complaint, General Flynn sufficiently pled that certain investigative and law enforcement officers procured a malicious prosecution against him. Further, General Flynn sufficiently pled that investigative and law enforcement officers acted wrongfully in an abuse of process. Accordingly, General Flynn respectfully requests that this Court deny Defendant's motion to dismiss in its entirety.

Dated: October 20, 2023

Respectfully submitted,

*/s/ Jason C. Greaves*
Jason C. Greaves, *pro hac vice*
Matt M. Dummermuth, *pro hac vice*
Shawn M. Flynn, Fl. Bar No. 1040911
Jared J. Roberts, Fl. Bar No. 1036550
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
Email: jason@binnall.com
        matt@binnall.com
        shawn@binnall.com
        jared@binnall.com

*Counsel for Plaintiff*

29

## CERTIFICATE OF SERVICE

I certify that on October 20, 2023, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

*/s/ Jason C. Greaves*

Jason C. Greaves

*Counsel for Plaintiff*