UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MICHAEL T. FLYNN,**

    **Plaintiff,**

**v.**                                                    **Case No: 8:23-cv-00485-MSS-CPT**

**UNITED STATES OF AMERICA,**

    **Defendant.**

_____

**ORDER**

**THIS CAUSE** comes before the Court for consideration of Defendant United States of America's Motion to Dismiss, (Dkt. 38), Plaintiff Michael T. Flynn's response in opposition, (Dkt. 39), and Defendant's reply thereto. (Dkt. 43) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** Defendant's Motion.

**I.   BACKGROUND**

Plaintiff initiated this action against the United States for malicious prosecution and abuse of process under the Federal Tort Claims Act on March 3, 2023. (Dkt. 1) Plaintiff filed the operative Amended Complaint on July 24, 2023 (the "Complaint"). (Dkt. 34) Therein, Plaintiff alleges the following salient facts.

In 2016, Plaintiff began consulting for several of the Republican candidates for president. (Id.) In February 2016, Plaintiff became a foreign policy advisor to Donald Trump, who was then a Republican candidate for the presidency. (Id. at ¶ 25) Plaintiff

served in this role through the election, which Trump won in November 2016, and during the transition of presidential administrations. (Id.) Plaintiff then served as then-President Trump's National Security Advisor. (Id.)

As an outgrowth of an FBI counterintelligence investigation called Crossfire Hurricane, in August 2016, the FBI opened a sub-investigation of Plaintiff called Crossfire Razor. (Id. at ¶ 32) The purported purpose of Crossfire Razor was to determine whether Plaintiff knowingly or unknowingly was involved in activity on behalf of the Russian government that could constitute a federal crime or a threat to national security. (Id.)

Plaintiff alleges William Barnett, the lead FBI agent assigned to Crossfire Razor, could not find any evidence of criminal activity and determined that one potential lead was uncorroborated and implausible. (Id. at ¶ 57) Some of the agents assigned to Crossfire Razor were eager to close the case as early as November 8, 2016. (Id.) Other agents and analysts assigned to the investigation, however, believed they would find evidence Plaintiff committed a crime. (Id.)

In late December 2016, Barnett's superiors permitted him to close the Crossfire Razor investigation without interviewing Plaintiff. (Id. at ¶ 60) In Barnett's closing memorandum, he wrote, "Per the direction of FBI management, [Plaintiff] was not interviewed as part of the case closing procedure." (Id.) The memorandum stated that the Crossfire Razor investigation failed to produce any information upon which to predicate further investigative efforts regarding Plaintiff. (Id. at ¶ 61) Despite Barnett's

having written the closing memorandum, however, the case remained open. (Id. at ¶¶ 62–64)

At some point prior to January 4, 2017, FBI senior staff obtained a transcript of a December 28, 2016 phone call between Plaintiff and Russian Ambassador Kislyak. (Id. at ¶ 62) Plaintiff contends the FBI—specifically, FBI Agent Peter Strzok and Deputy FBI Director McCabe—and the Executive Office of the President knew that his statements to Kislyak were legitimate diplomatic communications. (Id. at ¶¶ 62, 87) Nonetheless, Strzok instructed agents to keep the Crossfire Razor investigation open based on Plaintiff's call with Kislyak. (Id. at ¶ 68)

On January 24, 2017, Deputy FBI Director McCabe called Plaintiff to request a meeting, and Plaintiff agreed. (Id. at ¶ 100) Plaintiff claims McCabe told him that the requested meeting would be an informal interview, the goal of which was to resolve the discussions about the Kislyak calls in the media. (Id.) Plaintiff alleges that McCabe stated that he wanted the interview done as quickly, quietly, and discreetly as possible, and then advised that if Plaintiff wished to have anyone else at the meeting, including the White House Counsel, the FBI would have to elevate the issue to the DOJ. (Id.)

Plaintiff consented to the interview, and, later that day, Agent Strzok and Agent Joe Pientka interviewed Plaintiff in Plaintiff's office at the White House. (Id. at ¶ 101) The agents acted casually and and in a friendly manner toward Plaintiff. (Id.) Plaintiff alleges they did not put him on notice of the consequences of making a misstatement. (Id.) Plaintiff alleges that during the interview, Strzok and Pientka attempted to trap Plaintiff in a misstatement or omission related to the Kislyak calls so they could charge

3

him with a false statement violation of 18 U.S.C. § 1001. (Id. at ¶ 102) Plaintiff alleges this malicious intent continued for the remainder of the FBI's investigation and the subsequent investigation and prosecution by the SCO. (Id.)

Plaintiff alleges the "White House" was briefed on the misstatements made by Plaintiff to the FBI, and, as a result, on February 13, 2017, Plaintiff resigned from his position as National Security Advisor. (Id. at ¶ 110)

Strzok and Pientka submitted their notes three weeks after the interview with Plaintiff, approximately in mid-February 2017. (Id. at ¶ 111)

On May 17, 2017, Deputy Attorney General Rod Rosenstein appointed Robert S. Mueller to serve as Special Counsel to oversee the investigation into Russian interference in the 2016 election. (Id. at ¶ 116) This appointment resulted in the creation of the SCO within the DOJ. (Id.) The SCO assumed the investigation and assumed the DOJ's role in working with the FBI investigative teams assigned to the relevant investigations. (Id.)

Plaintiff alleges that during its investigation of Plaintiff, the SCO, under Mueller, regularly issued search warrants. (Id. at ¶ 120) The SCO attorneys drafted the search warrants and had case agents act as affiants. (Id.) Plaintiff alleges that the SCO investigators disregarded possible non-incriminating interpretations of information gathered about the targets of their investigation. (Id. at ¶ 121)

On November 30, 2017, the SCO procured a criminal information against Plaintiff, initiating a felony criminal prosecution against him. (Id. at ¶ 124) The information charged Plaintiff with one count of making false statements in violation

4

of 18 U.S.C. § 1001(a)(2). (Id.) In the information, the SCO asserted that Plaintiff had intentionally omitted and denied speaking with Russian Ambassador Kislyak during an interview with FBI agents Strzok and Pientka on January 24, 2017. (Id.) Plaintiff alleges this assertion was false. (Id.)

By way of background, Plaintiff alleges that in December 2016, he received a letter from the DOJ requesting FARA filings related to a consulting firm Plaintiff founded, Flynn Intel Group ("FIG"). (Id. at ¶ 125) Plaintiff's son was FIG's chief of staff. (Id.) Plaintiff hired attorneys to prepare and file the requested paperwork. (Id.) The chief of the FARA unit of the DOJ's National Security Division, Heather Hunt, personally handled the case and repeatedly urged Plaintiff's lawyers to file the paperwork quickly. (Id. at ¶ 126) The DOJ counterintelligence chief, David Laufman, also became personally involved in the FARA case related to FIG. (Id.)

The SCO took over the FARA case, and in August 2017, Plaintiff's lawyers learned of the Crossfire Razor investigation into Plaintiff. (Id. at ¶ 127) Plaintiff's lawyers also learned that the SCO was looking into both Plaintiff and his son for potential crimes related to the FARA filings. (Id.) Plaintiff alleges, "On December 1, 2017, [Plaintiff] entered into a plea agreement, not because he thought he had done anything wrong—he hadn't—but because [the] SCO had threatened his son with prosecution, and he was told that [the] SCO would let his son go if he cooperated." (Id. at ¶ 128)

Plaintiff alleges that employees and agents of both the FBI and the SCO are Defendant's investigative and law enforcement officers. Thus, he alleges Defendant's

5

investigative and law enforcement officers procured the prosecution of Plaintiff despite knowing he had not made false statements and that, even if he did make false statements, they were unintentional and were not material to the Crossfire Razor investigation. (Id. at ¶ 129) Plaintiff alleges the FBI and the SCO had no reasonable belief that Plaintiff had committed the criminal offense and therefore had no probable cause to procure or bring the information. (Id.)

Specifically, Plaintiff alleges that at the time the information was filed, the FBI and the SCO knew or should have known that Strzok and Pientka wrote in their interview notes they did not believe Plaintiff had lied during their January 24, 2017 interview. (Id. at ¶ 130) Furthermore, they knew the FBI only kept the Crossfire Razor investigation of Plaintiff open to investigate the Kislyak calls, and no independent criminal investigation into the Kislyak calls was ever properly opened. (Id.) Further, at the time the information was filed, Defendant's law enforcement and investigative officers, including the SCO, possessed Strzok's notes that described the January 10, 2017 meeting in the Oval Office. (Id. at ¶ 131) In sum, Plaintiff contends that at the time the information was filed, the FBI and the SCO lacked evidence Plaintiff had illegal contacts with a foreign power or had made material misstatements to the FBI; rather, Plaintiff alleges, the FBI and the SCO knew Plaintiff was innocent. (Id. at ¶ 133)

Plaintiff alleges the FBI and the SCO had malicious intent when they investigated Plaintiff and procured the prosecution. (Id. at ¶ 134) Plaintiff contends the FBI and the SCO knew Plaintiff was not a Russian agent and that they lacked a basis

for further investigation or for a prosecution. (Id. at ¶ 137) Nevertheless, FBI and SCO officers prosecuted Plaintiff. (Id.)

Attorney O'Shea moved to dismiss the case on May 7, 2020 following a review of Plaintiff's case by several independent prosecutors, which resulted in a recommendation that it be dismissed. (Id. at ¶¶ 147–48) The DOJ stated the government lacked a substantial interest in penalizing a defendant for a crime that it was not satisfied occurred or that it did not believe it could prove beyond a reasonable doubt. (Id.)

On November 25, 2020, Plaintiff received a presidential pardon from then President Trump. (Id. at ¶ 163) The case against Plaintiff was dismissed on December 8, 2020. (Id.)

Plaintiff alleges he suffered damages in the form of severe emotional distress, compensatory damages (including attorney's fees, court costs, and other legal expenses), reputational damages, loss of goodwill, loss of earnings and future earnings from his consulting business, and loss of earnings and future earnings because of his removal from the position of National Security Advisor. (Id. at ¶ 172)

## II. LEGAL STANDARD

### a. Lack of Subject Matter Jurisdiction & Sovereign Immunity

Under the doctrine of sovereign immunity, the United States is immune from suit unless it consents to be sued. Zelaya v. United States, 781 F.3d 1315, 1321 (11th Cir. 2015). "Sovereign immunity is jurisdictional in nature." F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994). "If there is no specific waiver of sovereign immunity as to a

particular claim filed against the Government, the court lacks subject matter jurisdiction over the suit." Zelaya, 781 F.3d at 1322. A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may be based on either a facial or factual challenge to the complaint. McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007). If the challenge is facial, as here, the court must determine whether the plaintiff "'has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" Id. (quoting Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)).

b. **Failure to State a Claim**

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must meet an exceedingly low threshold of sufficiency. Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., 711 F.2d 989, 995 (11th Cir. 1983). A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 560–64 (2007) (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do." Berry v. Budget Rent A Car Sys., Inc., 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting Twombly, 550 U.S. at 545). In light of a motion

8

to dismiss, to evaluate the sufficiency of a complaint a court must accept the well pleaded facts as true and construe them in the light most favorable to the plaintiff. Quality Foods, 711 F.2d at 994–95. However, the court should not assume that the plaintiff can prove facts that were not alleged. Id. Thus, dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue that precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

### III.   DISCUSSION

Defendant moves to dismiss the Amended Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). (Dkt. 38) First, Defendant argues the Court lacks subject matter jurisdiction over Plaintiff's claims to the extent they are based upon the conduct of the government as a whole or of persons who are not "investigative or law enforcement officers of the United States" under 28 U.S.C. § 2680(h). Defendant argues dismissal is appropriate for such claims because the United States has waived its sovereign immunity for malicious prosecution and abuse of process claims only if they are based upon acts or omissions of "investigative or law enforcement officers of the United States." 28 U.S.C. § 2680(h). Second, Defendant asserts Plaintiff fails to plausibly allege the elements of his malicious prosecution and abuse of process claims. Finally, Defendant states that even if Plaintiff had sufficiently pled a claim for abuse of process, the claim is barred by the statute of limitations.

### a. Sovereign Immunity

Defendant argues Plaintiff's claims must be dismissed to the extent they are based on the conduct of entities or individual employees who are not "investigative or law enforcement officers." (Dkt. 38 at 15) Plaintiff sues Defendant under the Federal Tort Claims Act (the "FTCA"), which waives the United States' sovereign immunity for certain tort claims for which "the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The waiver, however, is subject to exceptions. 28 U.S.C. § 2680. Section 2680(h) enumerates tort claims for which the United States does not waive sovereign immunity; the United States does NOT waive its immunity from "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights[.]" Id. Importantly, however, § 2680(h) creates an exception to the exception. The FTCA waives sovereign immunity for claims arising out of some of § 2680(h)'s enumerated torts when the claim is based on the "acts or omissions of investigative or law enforcement officers of the United States Government." Id. An "investigative or law enforcement officer" is "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." Id. Thus, the United States is not immune from suit for claims like malicious prosecution or abuse of process if the tort was committed by investigative or law enforcement officers of the United States Government.

First, Defendant argues the Court must dismiss Plaintiff's claims to the extent they are based on the alleged conduct of government agencies, rather than individual officials. Defendant notes the FTCA waives immunity for acts or omissions of "officers," not officers and agencies. 28 U.S.C. § 2680(h) (emphasis added) (waiving immunity for any claim for an enumerated tort based on "acts or omissions of investigative or law enforcement **officers** of the United States Government"). Cf. Bonilla v. United States, 652 F. App'x 885, 890 (11th Cir. 2016)[1] (emphasis added) (noting "the complaint does not contain sufficiently specific allegations relating to the **DEA's** actual conduct to state an FTCA claim," where the opinion defines "DEA" as the "Drug Enforcement Administration"). However, Plaintiff Flynn states in the Complaint that "[r]eferences to any actions taken by [the FBI, the DOJ, or the SCO] . . . encompass [actions by their] officials, appointees, employees, agents, and/or contractors, both known and unknown to Plaintiff."[2] (Dkt. 34 at ¶¶ 11–13) Therefore, any reference in the Complaint to actions taken by the FBI, for example, is understood as a reference to actions taken by some unnamed FBI agent or employee. Consequently, the Court need not decide whether Plaintiff's claims should be

---

[1] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it may be considered as persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000). Where cited herein, any unreported decision of a panel of the Circuit is considered well-reasoned and is offered as persuasive, not binding.

[2] To the extent any of Plaintiff's claims are based on the acts or omissions of a contractor of a federal agency, those claims are due to be dismissed because Plaintiff does not allege facts to show that the independent contractor exception to the FTCA should not apply here. 28 U.S.C. § 2671; Phillips v. United States, 956 F.2d 1071, 1077 (11th Cir. 1992).

11

dismissed on the grounds that they are based on alleged conduct of a government agency generally.

Next, Defendant argues that a plaintiff must identify an investigative or law enforcement officer by name in the complaint to survive a Rule 12(b)(1) motion to dismiss based on sovereign immunity. Defendant maintains that the law enforcement proviso of § 2680(h) waives the United States' sovereign immunity only for the acts of identifiable officers. Thus, Defendant asserts Plaintiff must identify investigative or law enforcement officers by name in the Complaint to overcome sovereign immunity. Defendant cites the unreported panel opinion in Bonilla v. United States as support. 652 F. App'x at 890. But the Bonilla court did not hold that, as a jurisdictional matter, a plaintiff must identify officers by name to overcome sovereign immunity via the law enforcement proviso of § 2680(h). Rather, the panel concluded the plaintiff failed to allege sufficient facts to state a claim under the FTCA because, among other insufficiencies, the complaint did not identify *any* federal agent by name. Id. at 890–91. Here, although Plaintiff does reference actions taken by some unnamed officers, he also identifies several alleged tortfeasor-officers by name. The Court finds these allegations sufficient to survive a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. See Moher v. United States, 875 F. Supp. 2d 739, 754 (W.D. Mich. 2012) (denying a motion to dismiss for lack of subject matter jurisdiction where the complaint stated tort claims under the FTCA based on acts of unnamed federal border patrol officers). Whether Plaintiff's allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss is a different question addressed under a different standard.

Finally, Defendant argues that to the extent some of Plaintiff's claims are premised on the conduct of DOJ and SCO agents, including Special Counsel Mueller, these claims should be dismissed because prosecutors are not investigative or law enforcement officers. The law is clear that "prosecutors do not qualify as 'investigative or law enforcement officer[s]' within the meaning of 28 U.S.C. § 2680(h), as they [are] not empowered to execute searches, seize evidence, and make arrests." Trupei v. United States, 304 F. App'x 776, 784 (11th Cir. 2008) (citing 28 U.S.C. § 547 (setting out the duties of U.S. Attorneys and not listing the execution of searches, seizure of evidence, or making of arrests); Moore v. United States, 213 F.3d 705, 713 n.7 (D.C. Cir. 2000); Bernard v. United States, 25 F.3d 98, 104 (2d Cir. 1994)). Thus, "United States Attorneys are not 'investigative or law enforcement officers' as defined by § 2680(h)." Corsi v. Mueller, 422 F. Supp. 3d 51, 74 (D.D.C. 2019). Consequently, the law is equally clear that "[the Special Counsel] is not an investigative or law enforcement officer as defined by § 2680(h)[,]" because "a Special Counsel has 'the full power and independent authority to exercise all investigative and prosecutorial functions of any United States Attorney.'" Id. (quoting 28 C.F.R. § 600.6).

Plaintiff alleges the "SCO employed attorneys who were investigative and law enforcement officers and were not prosecutors, and these SCO attorneys had the power to and did in fact issue search warrants." (Dkt. 39 at 6; Dkt. 34 at ¶ 120) These allegations are insufficient to show that the SCO attorneys were investigative or law enforcement officers. The exception in § 2680(h) is for officers authorized to "execute searches," not those authorized to issue search warrants. Plaintiff does not allege the

13

SCO or DOJ attorneys were empowered to seize evidence or to make arrests and does not allege that these officials ever took such actions.

Based on the allegations in the Complaint, the Court cannot conclude that certain attorneys employed by the DOJ or the SCO should be considered investigative or law enforcement officers. For this reason, to the extent Plaintiff's claims are based on the actions of any DOJ or SCO attorney or employee, they are due to be dismissed on sovereign immunity grounds. Sovereign immunity does not bar Plaintiff's claims to the extent they are based on alleged actions by investigative or law enforcement officers, such as FBI agents.

Accordingly, the Court considers whether Plaintiff alleges facts sufficient to state claims of malicious prosecution and abuse of process against the United States based on alleged acts or omissions of FBI officers, both those who are unnamed and those who are named, which include Director James Comey, Deputy Director Andrew McCabe, Assistant Director of Counterintelligence, E.W. "Bill" Priestap, Agent Peter Strzok, and Agent Joe Pientka.

### b. Failure to State a Claim

To succeed on his claims under the FTCA, Plaintiff must plausibly allege that the United States, if a private person, would be liable for malicious prosecution and abuse of process under the law of the District of Columbia. The FTCA requires federal courts to apply the law of the place where the negligent acts or omissions took place. Schippers v. United States, 715 F.3d 879, 886 (11th Cir. 2013) (citing Richards v.

14

United States, 369 U.S. 1, 10 (1962)). Here, the alleged tortious acts took place in Washington, D.C.; thus, the law of the District of Columbia governs.

### i. Malicious Prosecution

Plaintiff fails to state a claim for malicious prosecution against the United States. "'[T]o prevail in a claim of malicious prosecution, [a] plaintiff must plead and prove four elements: (1) the underlying suit terminated in plaintiff's favor; (2) malice on the part of defendant; (3) lack of probable cause for the underlying suit; and (4) special injury occasioned by plaintiff as the result of the original action.'" Turpin v. Ray, 613 F. Supp. 3d 186, 210 (D.D.C. 2020) (quoting Morowitz v. Marvel, 423 A.2d 196, 198 (D.C. Cir. 1980)). Additionally, the defendant must have initiated or procured the criminal proceeding against the plaintiff. See id.; Moore, 213 F.3d at 710. Defendant argues Plaintiff fails to plausibly plead at least three of these elements: the initiation or procurement of a criminal proceeding, the absence of probable cause, and the termination of the proceeding in favor of Plaintiff.

First, Defendant argues Plaintiff cannot show that any investigative or law enforcement officer "initiated or procured" the criminal proceeding under District of Columbia law. For the Court to find that an officer procured a prosecution, "the plaintiff must establish a 'chain of causation' linking the [officer]'s actions with the initiation of criminal proceedings." Moore, 213 F.3d at 710 (citing Dellums v. Powell, 566 F.2d 167, 192 (D.C. Cir. 1977)). The chain of causation is broken "if the decision to prosecute was 'independent of any pressure or influence exerted by [the officer] and of any knowing misstatements which [the officer] may have made' to the prosecutors."

Id. at 711 (quoting Dellums, 566 F.2d at 192–93). The Court must determine whether Plaintiff pleads an unbroken chain of causation between the alleged actions of the FBI agents and the SCO's decision to prosecute Plaintiff.

Plaintiff does not plead an unbroken chain of causation between alleged actions of FBI officers and the procurement of the information against Plaintiff. According to the Complaint, once the SCO was created in 2017, it assumed the investigation into Plaintiff. (Dkt. 34 at ¶ 116) Plaintiff alleges the SCO retained many of the people from the FBI and DOJ who had improperly initiated and continued the investigation into Plaintiff. (Id. at ¶ 118) But, Plaintiff alleges, "[f]rom the beginning, the SCO was briefed by lead [FBI] agent Barnett on his assessment of Crossfire Razor, that there was no evidence of a crime." (Id. at ¶ 119) Plaintiff alleges SCO attorney Jean Rhee "completely dismissed" Barnett's assessment, and the SCO improperly continued the investigation of Plaintiff despite knowing there was no evidence of a crime. (Id. at ¶¶ 119, 122) Plaintiff does not allege any FBI agent or employee attempted to mislead or influence the SCO by making false statements. To the contrary, Plaintiff goes out of his way to exonerate Barnett, an agent of the FBI, as being involved in the decision to push forward to investigate and prosecute him.

Indeed, Plaintiff makes no allegations about any acts or omissions by FBI agents occurring once the SCO assumed responsibility for the investigation. Based on the allegations in the Complaint, the FBI's involvement in the investigation's maintenance and continuance ceased upon the SCO's involvement. Meanwhile, Plaintiff alleges the SCO attorneys drafted search warrants and pushed case agents to act as affiants. (Id.

16

at ¶ 122) In a normal investigation, he states, the case agents push for legal process and justify their requests to the attorneys. (Id.) In Plaintiff's case, however, Plaintiff alleges the SCO attorneys "were the ones pushing for legal process, green-lighting any legal process request." (Id.) Plaintiff alleges the SCO investigators disregarded any possible non-incriminating interpretation of the evidence they gathered. (Id. at ¶ 121) Ultimately, Plaintiff alleges the SCO procured the criminal information against him. (Id. at ¶ 124) According to Plaintiff, at the time the information was filed, the SCO knew or should have known that FBI agents Strzok and Pientka wrote in their interview notes they did not believe Plaintiff had lied during their January 24, 2017 interview. (Id. at ¶ 130) The SCO allegedly possessed Strzok's notes which described Plaintiff's conversations with Kislyak as "legit," but the SCO procured the information anyway. (Id.) Plaintiff states it was the SCO that "falsely asserted in the information that [Plaintiff] had intentionally omitted and denied speaking to [Kislyak] during an interview with FBI agents Strzok and Pientka on January 24, 2017." (Id.)

Moreover, Plaintiff alleges that on December 1, 2017, Plaintiff entered into a plea agreement because the SCO had allegedly threatened his son with prosecution in the FARA investigation related to Plaintiff's consulting firm, FIG. (Id. at ¶ 128) Plaintiff alleges the SCO told Plaintiff that his son would not be prosecuted if Plaintiff cooperated. (Id.) Plaintiff does not claim that FBI agents had any hand in this alleged coercion.

These allegations, if proven, would establish that the SCO's decision to prosecute Plaintiff was independent of any pressure or influence by the FBI, as well as

17

any alleged misstatement by others. Thus, the chain of causation in Plaintiff's case, as alleged, is broken by the SCO's independent decision to prosecute Plaintiff. Plaintiff fails to allege that any investigative or law enforcement officer procured the criminal proceeding against him.

Plaintiff fails to allege facts to establish an essential element of his malicious prosecution claim. Accordingly, Count I is due to be **DISMISSED**.[3]

### ii. Abuse of Process

Plaintiff fails to state a claim for abuse of process against the United States. To state a claim for abuse of process under District of Columbia law, a plaintiff must allege "(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." Houlahan v. World Wide Ass'n of Specialty Programs & Schools, 677 F. Supp. 2d 195, 199 (D.D.C. 2010) (internal quotations and citations omitted). The "usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it." Id. at 201 (internal quotations and citations omitted). A plaintiff cannot state a claim for abuse of process if he does not allege "an improper use of the judicial machinery." Thorp v. District of Columbia, 319 F. Supp. 3d 1, 22 (D.D.C. 2018) (internal quotations and citations omitted) (concluding neither an arrest nor a seizure of property could form the basis for an abuse of process claim because neither constitutes use of the judicial

---

[3] The Court need not address the sufficiency of Plaintiff's allegations as to the remaining elements of his malicious prosecution claim. Where one necessary element fails, the claim fails.

machinery). An application for a warrant constitutes use of the judicial machinery. Id. But, the Court must determine whether Plaintiff alleges any FBI agents committed an act in the use of the judicial machinery to obtain a result "other than such as would be proper in the regular prosecution of the charge." Id.; Houlahan, 677 F. Supp. 2d at 201. At this juncture, Defendant does not challenge the sufficiency of Plaintiff's allegations regarding the first element of an abuse of process claim, the existence of an ulterior motive. (Dkt. 38 at 38 n.26)

Plaintiff does not allege facts to show that any FBI agents used the judicial machinery to obtain a result other than such as would be proper in the regular prosecution of the charge. Although Plaintiff alleges the FBI sought and obtained four FISA warrants in furtherance of Crossfire Hurricane, (id. at ¶¶ 33–34, 39), Plaintiff does not allege that the FBI used the warrants to pressure Plaintiff to take or refrain from taking some action. Houlahan, 677 F. Supp. 2d at 201. Notably, the FBI obtained these warrants before the FBI opened the Crossfire Razor investigation into Plaintiff. (Id. at ¶ 32) Additionally, although Plaintiff alleges he was coerced into entering a plea agreement under the threat that his son would be prosecuted if he did not cooperate, as noted, Plaintiff alleges the SCO made these threats. (Id. at ¶ 128) Actions by SCO agents are not actionable because the United States is entitled to sovereign immunity for claims based on actions by the SCO. Thus, even if these allegations were true, which the court need not determine for these purposes, the allegations do state an actionable claim.

Since Plaintiff fails to allege sufficient facts to state the abuse of process claim, the Court declines to determine whether the claim is time-barred under the FTCA.

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED**:

1. Defendant United States of America's Motion to Dismiss, (Dkt. 38), is **GRANTED**.

2. Plaintiff's Amended Complaint, (Dkt. 34), is **DISMISSED WITHOUT PREJUDICE**. Plaintiff may filed an amended complaint that seeks to resolve the deficiencies identified in this Order to the extent that such amended pleading would not run afoul of Fed. R. Civ. P. 11. Any such amended complaint shall be filed on or before January 6, 2025.

3. The Clerk is directed to **LIFT THE STAY** and **REOPEN** this case.

**DONE** and **ORDERED** in Tampa, Florida this 10th day of December 2024.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Party